**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RAS DATA SERVICES, INC.,[1] | ) | Case No. 25-11837 |
| | ) | |
| Debtor. | ) | Honorable Michael B. Slade |
| | ) | |
| | ) | **Hearing Date:** August 6, 2025 |
| | ) | **Hearing Time:** 11:00 a.m. |

<u>**AMENDED NOTICE OF EMERGENCY MOTION**</u>

PLEASE TAKE NOTICE that on August 6, 2025, at 11:00 a.m. CST, we will appear before the Honorable Deborah L. Thorne, or any judge sitting in that judge's place, **either** in courtroom 682 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, 60604 **or** electronically as described below, and present the **EMERGENCY MOTION OF DEBTOR (A) FOR AUTHORITY TO (I) PAY CERTAIN PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION, (II) PAY AND HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS, AND (III) CONTINUE EMPLOYEE BENEFIT PROGRAMS; (B) TO OBTAIN RELATED RELIEF; AND (C) FOR SHORTENED AND LIMITED NOTICE THEREOF,** a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is **160 9362 1728.** No password is required. The meeting ID can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

By: /s/ Steven B. Chaiken
Proposed Counsel for Debtor

---

[1] The last four digits of the federal employer identification number of RAS Data Services, Inc. are '4032.

HOWARD L. ADELMAN, ESQ. (ARDC# 0015458) – hadelman@ag-ltd.com
ADAM P. SILVERMAN, ESQ. (ARDC #6256676) – asilverman@ag-ltd.com
STEVEN B. CHAIKEN, ESQ. (ARDC #6272045) – schaiken@ag-ltd.com
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515) – abrougham@ag-ltd.com
NICHOLAS R. DWAYNE, ESQ. (ARDC #6308927) – ndwayne@ag-ltd.com
TEVIN D. BOWENS, ESQ. (ARDC #6338559) – tbowens@ag-ltd.com
Adelman & Gettleman, Ltd.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050
**Proposed Counsel for Debtor**

## CERTIFICATE OF SERVICE[2]

The undersigned, an attorney, certifies that he served a copy of this amended notice and the attached motion on each entity shown on the below list at the address shown and by the method indicated on the list on August 4, 2025, at or before 11:59 p.m.

By: /s/ Steven B. Chaiken
Proposed Counsel for Debtor

---

[2] In addition to the service effected by the undersigned attorney, a third-party vendor has been instructed to file a copy of this amended notice and the attached motion, via overnight delivery, upon the Debtor's 20 largest unsecured creditors. A certificate of service by the vendor will subsequently be filed on the docket. Additionally, the notice and motion will be emailed to the Debtor's 20 largest creditors on August 4, 2025. The Debtor's vendor also sent a copy of this motion and an initial notice stating the emergency motion would be heard at 9:00 a.m. on August 6th. The Debtor is resending the motion along with this amended notice identifying 11:00 a.m. as the correct time for the hearing.

1415077_4

## **SERVICE LIST**

### ***VIA CM/ECF***

Adam G. Brief – Ustpregion11.es.ecf@usdoj.gov
Office of the U.S. Truste, Region 11

Michael K Desmond - mdesmond@sgrlaw.com, kokeefe@fslegal.com

### ***VIA OVERNIGHT DELIVERY***

#### *20 Largest Creditors*

American Industrial Transportation
620 North Second Street
St. Charles, MO 63301

Amrize
6211 Ann Arbor Road
Dundee, MI 48131

Atel Equipment Services
505 Montgomery Street
San Francisco, CA 94111

BNSF Railway
3115 Solutions Center
Chicago, IL 60677

CIT Rail
30 South Wacker Drive
Suite 2900
Chicago, IL 60606

Enkay Leasing
600 Kenilworth Avenue
Hamilton, ON L8N 3J4
CANADA

Evergy
1200 Main St.
Kansas City, MO 64105

Indiana Harbor Belt
2721 161st Street
Hammond, IN 46323

Infinity Transportation
201 17th Street NW
Suite 410
Atlanta, GA 30363

Ingredion
5 Westbrook
Corporate Center
Westchester, IL 60154

INSTAR
2001 Route 46
Suite 506
Parsippany, NJ 07054

Modern Rail Capital
1 South Wacker Drive
Suite 3110
Chicago, IL 60606

Nucor Logistics LLC
300 Pike Street
Cincinnati, OH 60606

Oklahoma Gas & Electric
321 North Harvey Avenue
Oklahoma City, OK 73101

Primient
2200 East El Dorado Street
Decatur, IL 62521

1415077_4

Progress Rail
1616 Burlington Pike
Suite D
Florence, KY 41042

Residco
Three Chase Plaza
Suite 2200
Chicago, IL 60602

Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902

Valley Railcar
PO BOX 249
Retsof, NY 14539

Wheeling & Lake Erie Railroad
100 East First Street
Brewster, OH 44613

1415077_4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RAS DATA SERVICES, INC.,[1] | ) | Case No. 25-11837 |
| | ) | |
| Debtor. | ) | Honorable Michael B. Slade |
| | ) | |
| | ) | **Hearing Date:** August 6, 2025 |
| | ) | **Hearing Time:** 11:00 a.m. |

**EMERGENCY MOTION OF DEBTOR (A) FOR AUTHORITY TO (I) PAY CERTAIN
PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION, (II)
PAY AND HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS, AND (III)
CONTINUE EMPLOYEE BENEFIT PROGRAMS; (B) TO OBTAIN RELATED
RELIEF; AND (C) FOR SHORTENED AND LIMITED NOTICE THEREOF**

NOW COMES RAS DATA SERVICES, INC., an Illinois corporation (the "**Debtor**"), as

debtor and debtor in possession, by and through its proposed undersigned counsel and, pursuant

to sections 363, 507, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et*

*seq.* (the "**Bankruptcy Code**"), moves this Court (a) for authority to (i) pay certain prepetition

employee wages, salaries and other compensation; (ii) pay and honor employee medical and other

benefits; and (iii) continue employee benefit programs; (b) to obtain related relief; and (c) for

shortened and limited notice thereof (the "**Motion**"). In support of the Motion, the Debtor

respectfully states as follows:

**I.       JURISDICTION AND VENUE**

1.       The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  Venue

lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O).

---

[1] The last four digits of the federal employer identification number of RAS Data Services, Inc. are
'4032.

1

2.      The statutory predicates for the relief requested herein are sections 363, 365, 507, 1107, and 1108 of the Bankruptcy Code. The applicable Rules are Rule 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.    BACKGROUND

1.      On August 1, 2025 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing this case (the "**Chapter 11 Case**"). Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business under the jurisdiction of this court as debtor in possession in accordance with 11 U.S.C. § 1108.

2.      Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Case.[2]

3.      The factual background relating to the commencement of the Chapter 11 Case is set forth in the *Declaration of Sandor Jacobson in Support of Chapter 11 Petition and First-Day Motions* filed on August 1, 2025 (the "**First Day Declaration**") and incorporated herein by reference.

## III.    RELIEF REQUESTED

4.      The Debtor currently employs approximately thirty-one (31) individuals (the "**Employees**" and each an "**Employee**"). The skills, training, and institutional knowledge of the Employees are essential to the Debtor's ability to effectively administer its business during the Chapter 11 Case and to maximize the value of the Debtor's assets.

---

[2] Prior the Petition Date, the Debtor conferred with the office of the United States Trustee and requested the expedited appointment of a committee of unsecured creditors in the Chapter 11 Case.

5.      As of the Petition Date, there are amounts accrued and owing under or related to the Debtor's compensation and benefit programs. All or most of the Employees are dependent on their compensation and benefits to pay their daily living expenses and provide for their households.

6.      The Employees (and their families) would be exposed to significant financial harm if the payment of compensation (including obligations related to benefits) and other programs benefiting the Employees were to be interrupted. Should their compensation and other benefits be suspended or terminated, the Employees will likely be required to find work elsewhere. And given the Debtor's reliance on the Employees, the viability of the Chapter 11 Case would suffer irreparable harm if the Debtor lost or had to replace the Employees.

7.      Accordingly, to ensure retention of its Employees and maintain employee morale, by this Motion, the Debtor requests that the Court enter an order, pursuant to sections 363(b)(1), 507(a)(4), 507(a)(5), 1107(a), and 1108 of the Bankruptcy Code, authorizing, but not directing, the Debtor to pay certain prepetition wage and salary claims of the Employees, to pay and honor all employee benefits, and to continue employee benefit programs after the Petition Date, consistent with the Debtor's ordinary course of business prior to the Petition Date.

8.      The Debtor requests authority to pay outstanding wages, salary and/or commissions accruing prior to and including the Petition Date in the estimated total gross amount of approximately $100,000.00 (collectively, the "**Prepetition Wage Claims**"); to pay other prepetition claims arising in connection with, and otherwise maintain in effect, as applicable, the Debtor's employee medical benefits, health and other insurance, accrued prepetition vacation time, reimbursable expenses, and accrued prepetition contributions to employee benefit plans as detailed further below (the "**Employee Benefit Programs**," and together with the Prepetition Wage Claims

and all related withholdings and taxes and all costs incident thereto, the "**Prepetition Employee**

**Obligations**").[3]

    A.    <u>**Wages and Salaries**</u>

    9.    As stated above, the Debtor employs approximately thirty-one (31) individuals.

Approximately twenty-six (26) of the Employees are salaried ("**Salaried Employees**"), with the

balance of approximately five (5) Employees paid on an hourly basis ("**Hourly Employees**").

Nearly all Employees regularly work at least forty (40) hours per week, while a handful of the

Houry Employees work part time.[4]

    10.    None of the Employees are party to a collective bargaining agreement or similar

labor agreement.

    11.    The Debtor provides overtime pay to Hourly Employees in accordance with

applicable state and federal law. Overtime hours are paid at the rate of 1.5 times the hourly base

rate for any hours in excess of forty (40) hours per week.

    12.    Other than Robert Gordon, President of the Debtor, and Stephen Calomino,

Manager – Operations Admin & Client Reporting and son of the Debtor's principal Michael

Calomino, the Debtor does not believe any of the Employees are "insiders" as defined in Section

101(31) of the Bankruptcy Code. Prior to the filing of the Chapter 11 Case, the Debtor made a

payment to Robert Gordon and a payment to Stephen Calomino to cover the wages earned or to

---

[3] To protect the confidentiality of employee information, the names, addresses, and specific wage claims of individual employees have not been disclosed herein. Such information will be provided to the Court and/or the United States Trustee (or other interested parties, provided sufficient guaranties of confidentiality are in place), upon request.

[4] Employee data, including total employees, wages and salaries, are approximated as of the Petition Date.

be earned through and including August 1, 2025. As such, the Debtor is not seeking in this Motion to pay any prepetition wages for any "insiders".

13.     The Debtor pays its Employees every two weeks by direct deposit into their bank accounts.  Employees are paid every other Friday for the two-week period that ends on the Friday of the week preceding their payday.

14.     During the three (3) months leading up to the Petition Date (pay periods spanning May 16 through July 25, 2025), the average payroll per period was approximately $125,710.00.

15.     Hearne & Associates, P.C. ("**H&A**"), the Debtor's professional accounting firm, processes the Debtors' payroll and provides a mechanism for paying employee wages and benefits, and calculating all proper employer and employee withholdings from the payroll. H&A also remits tax withholdings directly to the applicable taxing authorities.

16.     Employees were last paid on July 25, 2025, for the two-week pay period ending July 18, 2025. The next payroll is scheduled to be made on August 8, 2025, for compensation accruing between July 19, 2025 and August 1, 2025. As this pay period straddles the Petition Date, it includes fourteen (14) days of work performed prior to the Petition Date (i.e. July 19, 2025 through and including August 1, 2025).

17.     As set forth above, the Debtors' estimate that approximately $100,000.00 constitutes Prepetition Wage Claims.

18.     No single Employee is owed prepetition wages in excess of the $17,150 priority provided under section 507(a)(4) of the Bankruptcy Code.

19.     The Debtor seeks authority to satisfy all Prepetition Wage Claims in the amounts finally determined using the Debtor's customary and ordinary methods. Payment of these amounts is critical to the continued operation of its business.

5

**B.**     **Social Security, Income Taxes, and Other Withholdings and Deductions**

20.     Attendant to the payment of the Debtor's payroll obligations, the Debtor is also obligated to withhold and pay federal, state, and local withholding taxes for itself and the Employees.

21.     As part of its payroll processing services, H&A calculates the appropriate withholdings for each of the Employee's paychecks and remits them to the applicable taxing authorities.

22.     Less than ten (10) of the Employees work primarily out of the Debtor's headquarters located in Darien, Illinois, and the rest of the Employees work remotely. While most of the Employees reside in Illinois, there are approximately ten (10) Employees that reside outside of Illinois in various states. As such, the Debtor is required to remit withholding taxes to multiple taxing authorities.

23.     As part of its request to pay Prepetition Employee Obligations, the Debtor seeks authorization to pay all employer and employee federal, state, and local withholding and payroll-related taxes relating to prepetition periods, including all withholding taxes, Social Security taxes, Medicare taxes, and all other miscellaneous withholdings. The Debtor estimates the amount of the employer-side prepetition withholding and payroll-related taxes to be approximately $8,000.00.

24.     Additionally, the Debtor has been authorized, from time to time, to make deductions from Employees' wages, including for contributions to various benefit programs (many of which are described below). To the extent any of these are considered property of the Debtor's estate, the Debtor requests permission to allow such deductions to continue, and to be paid to their designated recipients, consistent with and in the ordinary course of business.

**C.**     **Employee Benefit Programs**

6

25.     The Debtor offers eligible Employees access to health, dental, vision, life, disability and worker's compensation insurance and other benefits, as described below. Certain of the benefits require payments by the Debtor and may be unpaid as of the Petition Date because certain obligations may have accrued in whole or in part prior to the Petition Date, but do not become payable in the ordinary course of the Debtor's business until after the Petition Date.

### 1.   Health Insurance

26.     Full-time Employees may enroll in a health insurance plan (for themselves, spouses and dependent children) and have a choice between two different Preferred Provider Organizations (PPOs). The health insurance program is administered by Blue Cross Blue Shield of Illinois ("**BCBS**").

27.     The Debtor pays one 100% of the monthly premium for the health insurance, except for certain Employees who have elected to obtain greater benefits and/or opt into an increased benefit plan than the amount for which the Debtor agreed to pay. In such instances, the applicable Employee is responsible for paying the difference. The Debtor withholds the attributable amounts from the applicable Employees paychecks. On average, the amount withheld from Employees for the Employee portion of the premiums is approximately $1,900.00 per pay period. The total monthly premium for which the Debtor is responsible for paying is approximately $31,000.00.

### 2.   Dental

28.     As part of the BCBS health plan, Employees may also obtain dental coverage. The Debtor pays one 100% of the monthly premium for the dental insurance for its Employees, except as noted below.

29.     A few Employees have added their spouse or children to the dental plan. In those instances, the Employees are responsible for paying the attributable increased portion of the

premiums. The Debtor withholds the attributable amounts from the applicable Employees paychecks. On average, the amount withheld from Employees for the Employee portion of the dental insurance premiums is approximately $250.00 per pay period. The total monthly premium for the month of June was approximately $2,115.00.

### 3.    Vision

30.    The Debtor also offer vision coverage to all full-time Employees through VSP Vision Care. The Debtor pays 100% of the monthly premium for vision insurance for its Employees, except as provided below.

31.    A few Employees have added their spouse or children to the vision plan. In those instances, the Employees are responsible for paying the attributable increased portion of the premiums. The Debtor withholds the attributable amounts from the applicable Employees paychecks. On average, the amount withheld from Employees for the Employee portion of the vision insurance premiums is less than $10.00 per pay period. The total monthly premium for vision insurance in the aggregate for all participating Employees is approximately $200.00.

### 4.    Term Life and Accidental Death and Dismemberment Insurance

32.    The Debtor provides group term-life coverage and accidental death and dismemberment ("**AD&D**") coverage to all eligible full-time Employees through Northwestern Mutual. The policy for life insurance coverage and AD&D coverage is $100,000.00 per Employee. In the event of a qualified disability, the eligible Employee will receive up to a certain percentage of the $100,000.00 benefit amount depending on the type of injury.

33.    The Debtor pays 100% of the premiums for this coverage, which averaged approximately $745.00 per month over the last three months.

### 5.    Short-Term and Long-Term Disability

8

34. The Debtor offers group short-term and long-term disability coverage to Employees through Unum Life Insurance Company. It is a voluntary program in which the Employees are solely responsible for payment of the premiums.

35. The Debtor is not responsible for paying any portion of the premiums for disability insurance, though the Debtor withholds the required premium amounts from the applicable Employees and remits same to the carrier. The average aggregate amount deducted from Employees for short-term and long-term disability premiums per pay period is approximately $650.00.

### 6. Worker's Compensation

36. The Debtor also has a workers' compensation policy with Acuity Insurance. The Debtor has paid the necessary premium to maintain this policy through December 31, 2025.

### 7. Maintenance of Employee Insurance Benefits

37. As a fundamental component of the Employee Benefit Programs, the Debtors intend to maintain employee health, dental, life, disability, workers' compensation, and similar insurance for their Employees ("**Employee Insurance Benefits**") during the Chapter 11 Case.[5] To the extent there are any claims relating to Employee Insurance Benefits which arose prior to the Petition Date and remain unpaid, the Debtor requests authority to pay such claims, consistent with and in the ordinary course of their business. The Debtor seeks authority to pay all obligations related to Employee Insurance Benefits incurred prior to the Petition Date, as well as any health insurance coverage obligations that arose prepetition even in the event such amounts exceed the statutory limits provided in section 507(a)(5) of the Bankruptcy Code.

---

[5] To the extent mandated by the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 *et seq*. and other state and federal laws, and consistent with their ordinary business practices prior to the Petition Date, the Debtors also desire to maintain Employee Insurance Benefits for eligible former employees who have left the service of the Debtors prior to the Petition Date.

**D.    Paid Time Off**

38.    In addition to wages and salaries, the Debtor provides eligible Employees (i.e. regular full time Employees) paid time off ("**PTO**") for vacations and other time off, in addition to paid time off for certain holidays. Employees are provided with four (4) weeks of PTO. PTO must be taken between January 1 and December 31 and, generally, does not carry over into the following year.

39.    As of the Petition Date, the Employees have accrued unpaid PTO in the approximate amount of $73,420.00.  The Debtor intends to honor any accrued, unpaid PTO.

**E.    Reimbursable Business Expenses**

40.    The Debtor reimburses certain Employees for reasonable business expenses incurred in the performance of their respective duties, such as mileage, parking and tolls, airfare, lodging, and meal expenses while performing company business. The Debtor requests authority to reimburse all unpaid business expenses incurred by its Employees prior to the Petition Date (estimated to be in a total amount of less than $2,000.00), consistent with and in the ordinary course of the Debtor's business.

**F.    Simple IRA Plan**

41.    All Employees are entitled to contribute to a Simple IRA Plan sponsored by the Debtor. Employees may make pre-tax contributions through salary reductions, and the Debtor provides a 3% matching contribution paid on the last payroll of each month. The Debtor's matching contribution depends on the month and how many payroll periods fall within the given month. The Debtor's total matching contribution amount is estimated to be between $5,000.00 and $10,000.00 in any given month.

42. The Debtor requests authority to make deposits of the prepetition Employee earnings to the retirement plan and to continue making the requisite matching contributions, consistent with and in the ordinary course of business.

## IV. BASIS FOR RELIEF REQUESTED

43. Ample authority exists to pay prepetition employee obligations where doing so will benefit a debtor's estate. The benefit of paying the Prepetition Employee Obligations in the Chapter 11 Case can be measured against the adverse impact to the Debtor's estates if the Employees do not remain in the Debtor's employ.

44. The authority to pay Prepetition Employee Obligations is found in section 1108 of the Bankruptcy Code, which vests debtors in possession with authority to continue operating their businesses. Sometimes this authority and the concomitant duty to maximize estate value may be fulfilled only through the pre-plan payment of certain unsecured claims. *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003); *In re CoServ, L.L.C.*, 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002); *cf. In re Commercial Mortg. & Fin., Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting that a debtor in possession "has the discretionary authority to exercise [its] business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

45. Additionally, the Court may authorize payment of the Prepetition Employee Obligations under section 363(b)(1) of the Bankruptcy Code, which provides that, after notice and a hearing, a debtor in possession may "use . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In *In re Kmart Corp.*, the Seventh Circuit Court of Appeals suggested that section 363(b)(1) of the Bankruptcy Code is an appropriate mechanism for payment of certain necessary prepetition debts, provided such payments will ultimately benefit all

11

creditors. *In re Kmart Corp.*, 359 F.3d 866, 874 (7th Cir. 2004). A debtor's business judgment as to the use, sale, or lease of estate property is appropriate if supported by "sound business reasons." *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991).

46.     Paying the Prepetition Employee Obligations is supported by sound business reasons. The Debtor relies on the services of the Employees as detailed above. Missed or reduced paychecks would likely induce significant numbers of the Employees to find work elsewhere, at a time when the Debtor needs them the most. And replacing the Employees, in whole or in part, is not a viable option, considering their familiarity with the operations and affairs of the Debtor.

47.     Further, the objective of the Chapter 11 Case is to effectuate a prompt going concern sale. Failing to fulfill the Prepetition Employee Obligations would cause irreparable harm to and jeopardize the success of this objective. Consequently, in addition to satisfying the "sound business reasons" standard for motions under section 363 of the Bankruptcy Code generally, payment of the Prepetition Employee Obligations also satisfies the more specific "benefit to all creditors" standard articulated in *Kmart*. *See* 359 F.3d at 874.  Paying the Prepetition Employee Obligations will greatly help the Debtor in maintaining necessary operations and activities while the Debtor seeks to implement a going concern sale to maximize the potential recovery for the benefit of all creditors.

48.     The *Kmart* court cautioned that "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *Id*. at 872. Payment of the Prepetition Employee Obligations will not violate the priorities under the Bankruptcy Code because the Bankruptcy Code itself prioritizes employee wage and benefit claims over most other claims.

49.    Sections 507(a)(4) and (5) of the Bankruptcy Code require certain claims for prepetition wages, salaries, vacation, and employee benefit plan contributions be accorded priority in payment, up to $17,150 per employee. 11 U.S.C. § 507(a)(4)-(5). By this Motion, the Debtor does not seek to pay any single Employee more than the $17,150 limit. The relief sought herein, therefore, does not "rearrange priorities among creditors" in any meaningful way. *Kmart*, 359 F.3d at 872.

50.    Courts in this jurisdiction regularly authorize chapter 11 debtors in possession to pay prepetition employee wages and benefits in instances where employee retention is critical to the success of their bankruptcy cases. *See, e.g.*, *In re St. Margaret's Health – Peru, et al.,* No. 23-11641 (Bankr. N.D.Ill. Sep. 13, 2023), ECF No. 40; *In re Arro Corporation, f/k/a Arro Packaging Company,* No. 19-35238 (Bankr. N.D.Ill Dec. 20, 2019), ECF No. 35; *In re Caesars Entm't Operating Co.*, No. 15-01145 (Bankr. N.D. Ill. Mar. 6, 2015), ECF No. 617; *In re Balmoral Racing Club, Inc., et al.*, No. 14-45711 (Bankr. N.D. Ill. Jan. 8, 2015), ECF No. 70; *In re ITR Concession Co.*, No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014), ECF No. 175; *In re SGK Ventures, LLC*, No. 13-37603 (Bankr. N.D. Ill. Sept. 26, 2013), ECF No. 26; *In re Edison Mission Energy*, No. 12-49219 (Bankr. N.D. Ill. Jan. 17, 2013), ECF No. 319.

51.    For the foregoing reasons, the Debtor respectfully requests it be granted authority to pay the Prepetition Employee Obligations, if and when they are due and owing, after the Petition Date, consistent with the Debtor's prepetition practices.

## V.    SATISFACTION OF BANKRUPTCY RULE 6003

52.    Bankruptcy Rule 6003 empowers a court to grant relief in the first twenty-one (21) days after the filing of a bankruptcy petition "to the extent that relief is necessary to avoid

immediate and irreparable harm." Accordingly, the Debtor submits, to the extent Bankruptcy Rule 6003 applies to the relief granted herein, its requirements are satisfied.

## VI.   WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

53.   Because the Debtor, its estate, and its creditors will suffer immediate and irreparable harm if all Prepetition Employee Obligations are not timely paid, and in light of the relatively small expenditure required to do so, the Debtor requests the notice provisions of Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h) be excused, to the extent they are applicable to the relief sought herein.

## VII.   NOTICE

54.   Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or email to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the 20 largest unsecured creditors of the Debtor pursuant to Bankruptcy Rule 1007(d); and (c) all other parties who have requested notice and service of pleadings via the Court's CM/ECF system in the Chapter 11 Case.

55.   Bankruptcy Rule 2002(a)(2) provides that, "unless the court for cause shown shortens the time or directs another method of giving notice," a motion seeking to use property of the estate other than in the ordinary course of business must be served upon "the debtor, the trustee, all creditors and indenture trustees" on 21 days' notice. Fed. R. Bankr. P. 2002(a)(2). Likewise, this Court's Local Rule 9013-1 requires that a notice of motion must be served at least 7 days before the date of presentment. L.R. 9013-1(D). Both of these requirements, however, may be modified at the Court's discretion. *See* Fed. R. Bankr. P. 2002(m) (authorizing the Court to "enter orders designating the manners in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules"); *see also* Fed. R. Bankr. P. 2002(a)(2).

56.     As discussed in more detail above, if the Debtor was required to adhere strictly to the notice requirements of the federal and local bankruptcy rules, the Employees would not timely receive their anticipated and needed compensation. Given the critical and time-sensitive nature of the relief requested herein, the Debtor submits that "cause" exists to shorten and limit the notice requirements applicable to the Motion, and to deem the notice period and parties set forth above and in the attached certificate of service to be adequate and sufficient under the circumstances.

WHEREFORE, RAS Data Services, Inc., debtor and debtor in possession herein, respectfully requests the entry of an order in accordance with the foregoing recommendations in the form filed herewith and made a part hereof without further notice, and for such other and further relief as is just.

Respectfully Submitted,

RAS DATA SERVICES, INC.

By: /s/ Steven B. Chaiken
        Proposed Counsel for Debtor

HOWARD L. ADELMAN, ESQ. (ARDC# 0015458) – hadelman@ag-ltd.com
ADAM P. SILVERMAN, ESQ. (ARDC #6256676) – asilverman@ag-ltd.com
STEVEN B. CHAIKEN, ESQ. (ARDC #6272045) – schaiken@ag-ltd.com
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515) – abrougham@ag-ltd.com
NICHOLAS R. DWAYNE, ESQ. (ARDC #6308927) – ndwayne@ag-ltd.com
TEVIN D. BOWENS, ESQ. (ARDC #6338559) – tbowens@ag-ltd.com
Adelman & Gettleman, Ltd.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050
**Proposed Counsel for Debtor**