**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RAS DATA SERVICES, INC.,[1] | ) | Case No. 25-11837 |
| | ) | |
| Debtor. | ) | Honorable Michael B. Slade |
| | ) | |

**ORDER: (a) APPROVING SALE PROCESS; (b) APPROVING PROCEDURES FOR
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; (c) EXCUSING PAGE LIMIT; (d) GRANTING
SHORTENED NOTICE; AND (e) SCHEDULING A PUBLIC AUCTION
AND A SALE APPROVAL HEARING**

Upon the motion (the **"Motion"**) of RAS Data Services, Inc, debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the **"Chapter 11 Case"**), pursuant to sections 105, 363, and 365 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of: (i) an order (the "**Sale Procedures Order**"): (a) establishing procedures for the sale of all, or substantially all, of the Debtor's assets (the "**Asset Sale**"); (b) establishing procedures relating to the assumption and assignment of executory contracts and unexpired leases; (c) excusing the 15-page limit under the Court's local rules (the "**Local Rules**"); (e) shortening notice of the Motion; and (f) scheduling a public auction and sale approval hearing; and (ii) an order (the "**Sale Approval Order**"): (x) approving the sale of the Debtor's assets free and clear of claims, liens, and encumbrances; (y) approving the assumption and assignment of executory contracts and unexpired leases; and (z) granting related relief; it appearing that the relief requested in the Sale Motion is in the best interest of the Debtor's estate and their creditors; this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; the Sale Motion

---

[1] The last four digits of the federal employer identification number of RAS Data Services, Inc. are 4032.

and the opportunity to object being a core proceeding pursuant to 28 U.S.C. § 157; adequate notice

of the Sale Motion having been given to all parties entitled thereto for consideration and entry of

the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1.      The Sale Motion is hereby granted in the manner and to the extent provided herein,

with this Order serving as the Sale Procedures Order.

2.      The bidding procedures set forth in the *Approved Bidding Procedures* attached

hereto as **Exhibit A** and expressly made a part hereof and incorporated herein (the "**Approved

Bidding Procedures**") are hereby approved.[2] The Debtor is hereby permitted to revise the

Approved Bidding Procedures after consultation with the Consultation Parties, or further Order of

Court.

3.      All persons or entities who submit a Qualified Bid for any of the Sale Assets shall

be deemed to have read and understood the terms and conditions of the Approved Bidding

Procedures and must comply with, and will be bound by, such Approved Bidding Procedures.

4.      The Debtor is hereby authorized and empowered to take such steps and perform

such actions as may be necessary to implement and effect the sale process contemplated by, and

consistent with, the Approved Bidding Procedures and this Sale Procedures Order.

5.      The Debtor is authorized, but not directed, to terminate the Asset Sale process (a

"**Sale Process Termination**") if, in consultation with the Consultation Parties, the Debtor

determines the continuation of the process is unlikely to result in a net benefit to the bankruptcy

estate under the circumstances. Notice of a Sale Process Termination must promptly be filed on

the Court's docket and served upon all Customers, Potential Bidders that submitted letters of

---

[2] Capitalized terms not otherwise defined herein have the respective meanings set forth in the Approved Bidding
Procedures.

intent, and Qualified Bidders. Upon a Sale Process Termination, the Debtor reserves the right to seek authority to use the funds allocated under the *Order Granting Motion of the Debtor to Use Funds to Pursue Sale and for Shortened Notice Thereof*, ECF No. 109, to fund expenses, including both ordinary and non-ordinary course operational and professional expenses, that the Debtor, in its business judgment, deems reasonably necessary to facilitate the transition of Customers to new service providers and to propose and consummate a Chapter 11 plan of liquidation.

6.      The Court shall conduct a hearing to consider the approval of the Asset Sale (the "**Sale Approval Hearing**") and entry of the Sale Approval Order, on December 18, 2025, at 1:00 P.M. prevailing Central time, at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Courtroom 642, Chicago, Illinois 60604, or other time or other place as the Debtor shall notify all Qualified Bidders.

7.      All objections to the sale of the Sale Property or entry of the Sale Approval Order must: (a) be in writing; (b) state with specificity the nature and legal bases for such objections; and (c) be filed with the Court no later than 12:00 P.M. (prevailing Central time) on Wednesday, December 17, 2025 (the "**Sale Objection Deadline**").   Notwithstanding the foregoing sentence, the Sale Objection Deadline does not apply to (x) Non-MSA Assignment Objections (as defined below, and which are subject to the separate deadlines set forth herein); (y) Adequate Assurance Objections (also as defined below, and which may be raised at any time up to and including the Sale Approval Hearing); or (z) objections premised solely on the conduct of the Auction (which may be raised at any time up to and including the Sale Approval Hearing).

8.      The procedures for consensual assumption and assignment of MSAs under the Approved Bidding Procedures are hereby approved. The procedures for assumption and

assignment of executory contracts and unexpired leases of the Debtor that are (a) not MSAs, and (b) are otherwise identified for assignment in the Prevailing Bidder's asset purchase agreement (each a "**Non-MSA Assignable Contract**"), will not be governed by the Approved Bidding Procedures, and will instead be governed by the procedures set forth in the body of this Order.

9.      No later than the first business day immediately following the Bid Deadline, the Debtor shall file a notice (the "**Assumption Notice**") with the Court and serve same, by facsimile, overnight delivery, or such other form of notice authorized by the recipient (including CM/ECF and/or email), to any non-Debtor party to a Non-MSA Assignable Contract. The notice shall be substantially in the form attached hereto as **<u>Exhibit B</u>** hereto and made a part hereof, and shall (a) state the cure amounts that the Debtor believes are necessary to assume and assign such Non-MSA Assignable Contracts pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount(s)**"); (b) notify the non-Debtor party that such party's Non-MSA Assignable Contract may be assumed and assigned to a purchaser of the Sale Property to be identified at the conclusion of the Auction (the **"Proposed Assumption/Assignment"**); (c) identify the names of any Qualified Bidders; (d) provide the terms of payment of the Cure Amounts; and (e) provide adequate assurance information as submitted by the Qualified Bidders in connection with their bids. In addition, if the Debtor identifies additional Non-MSA Assignable Contracts that might be assumed by the Debtor and assigned to the Prevailing Bidder not set forth in the original Assumption Notice, the Debtor shall promptly send a supplemental notice (a "**Supplemental Assumption Notice**") to the applicable counterparties to such additional Non-MSA Assignable Contracts.

10.      The deadline for a non-Debtor party to a Non-MSA Assignable Contract (a "**Non-MSA Counterparty**") to file and serve an objection (a "**Non-MSA Assignment Objection**") to the Cure Amount or Proposed Assumption/Assignment of such Non-MSA Assignable Contract

will be 5:00 prevailing Central time on December 15, 2025 ("**Non-MSA Assignment Objection Deadline**").

11.     Notwithstanding the provisions of foregoing paragraph, a Non-MSA Counterparty identified for the first time in a Supplemental Assumption Notice will not be subject to the Non-MSA Assignment Objection Deadline, and will not be required to file or serve a Non-MSA Objection prior to the Sale Approval Hearing. Instead, any such Non-MSA Counterparties may raise their objections prior to, or at, at the Sale Approval Hearing

12.     Unless a Non-MSA Counterparty either timely files and serves a Non-MSA Assignment Objection as provided herein (or, in the case of a Non-MSA Counterparty identified for the first time in a Supplemental Assumption Notice, objects at the Sale Approval Hearing), then such Non-MSA Counterparty:

   a.   Will be forever barred from objecting to its Cure Amount and from asserting any additional cure or other amounts with respect to its Non-MSA Assignable Contract, and the Debtor shall be entitled to rely solely upon the Cure Amount; and

   b.   Will be deemed to have consented to the assumption, assignment, and/or transfer of such Non-MSA Assignable Contract, and will be forever barred and estopped from asserting or claiming against the Debtor, the Prevailing Bidder, the Back-Up Bidder, or any other assignee thereof, that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Non-MSA Assignable Contract. Notwithstanding the foregoing, failure to file and serve a Non-MSA Assignment Objection will not bar a Non-MSA Counterparty from any objections premised solely on adequate assurance under section 365 of the Bankruptcy Code (an "**Adequate Assurance**

**Objection**"), which may be raised at any time prior to, or at, the Sale Approval

Hearing.

13.    If an objection challenges a Cure Amount, the objection must set forth the cure

amount being claimed by the objecting party (the "**Claimed Cure Amount**") with the appropriate

documentation in support thereof. Upon receipt of a Non-MSA Assignment Objection, the Debtor

is authorized, but not directed, in consultation with the Consultation Parties, to resolve any Non-

MSA Assignment Objection by mutual agreement with the objecting party to any Non-MSA

Assignable Contract without further order of the Court. In the event that the Debtor and any

objecting party are unable to consensually resolve any Non-MSA Assignment Objection prior to

the Sale Approval Hearing, the Court will resolve any such Non-MSA Assignment Objection at

the Sale Approval Hearing. In addition, the Court shall resolve any Adequate Assurance

Objections at the Sale Approval Hearing.

14.    The Sale Approval Hearing may be adjourned, from time to time, without further

notice to creditors or other parties in interest by announcement of said adjournment in open court.

15.    Pursuant to Bankruptcy Rules 2002(a) and 6004, the Debtor be and is hereby

ordered, to serve copies of this Order, including its exhibits, within three (3) business days after

the entry thereof, by first-class mail and/or CM/ECF, upon: (a) each of the Consultation Parties;

(b) all creditors of the Debtor, as reflected in the creditor matrix maintained in the Chapter 11 Case,

other than employees whose prepetition claims were paid in full pursuant to the Court's order

entered as Docket No. 41; (c) all currently known counterparties to the Debtor's executory

contracts and unexpired leases (collectively, the "**Executory Contracts / Unexpired Leases**"),

including without limitation the Customers; (d) the United States Trustee's Office for Region 11;

(e) the Office of the Attorney General of Illinois; (f) all equity security holders of the Debtor; and

(g) all other entities that have filed requests for notices pursuant to Rule 2002 of the Bankruptcy Rules. Notice provided in accordance with this Order is hereby found to be adequate and sufficient notice of the relief sought in the Sale Motion, including the sale of the Sale Property and the assumption and assignment of executory contracts and unexpired leases.

16.    Except as otherwise provided in this Sale Procedures Order, the Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate after consultation with the Consultation Parties, to: (a) determine which Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, and thus, determine the Prevailing Bid and the Back-Up Bid; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of these Approved Bidding Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate. Nothing contained herein shall prejudice or impair rights under Section 363(k) of the Bankruptcy Code. The Debtor further reserves all rights to modify or impose, at or prior to the Auction, additional terms and conditions on the sale of the Sale Property, to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to the Auction, the Sale Approval Hearing or the sale of the Sale Property which in its business judgment, and after consultation with the Consultation Parties, are reasonably necessary to preserve the bankruptcy estate or maximize the value thereof.

17.    The limited objection filed at Docket No. 132 by the Infinity Lessors (as defined therein) is withdrawn without prejudice. The Infinity Lessors reserve all of their rights with respect to any of their objections, including to object to entry of the Sale Approval Order, or to any other approval of use or payment of the Sale Property proceeds.

18.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Sale Procedures Order shall be effective immediately upon its entry.

19.     The fifteen-page limit under Local Rule 9090-3(F) is excused with respect to the Motion.

20.     The fourteen-day notice period under Local Rule 9090-3(D) is hereby excused for cause shown, and the notice period of the Motion is deemed adequate and sufficient under the circumstances.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Sale Procedures Order.

Dated: October 9, 2025                          ENTER:

_____
UNITED STATES BANKRUPTCY JUDGE

*This order prepared by:*
Adam P. Silverman, Esq. (ARDC #6256676)
Alexander F. Brougham, Esq. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Telephone No. (312) 435-1050
asilverman@ag-ltd.com
abrougham@ag-ltd.com

# Exhibit A to

*Order: (a) Approving Sale Process; (b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Excusing Page Limit; (d) Granting Shortened Notice; and (e) Scheduling a Public Auction and a Sale Approval Hearing*:

# Approved Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RAS DATA SERVICES, INC.,[1] | ) | Case No. 25-11837 |
| | ) | |
| Debtor. | ) | Honorable Michael B. Slade |
| | ) | |

**APPROVED BIDDING PROCEDURES**

TO:    ALL PARTIES IN INTEREST AND POTENTIAL BIDDERS FOR THE ASSETS OF RAS DATA SERVICES, INC:

PLEASE TAKE NOTICE that set forth below are the bidding procedures (the "**Approved Bidding Procedures**") to be employed with respect to the prospective sale of the business and assets of RAS Data Services, Inc. (the "**Debtor**"), debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "**Chapter 11 Case**") pending in the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**"). Upon the motion filed by the Debtor on September 29, 2025, the Bankruptcy Court authorized a sale process and these Approved Bidding Procedures pursuant to an order dated _____, 2025 [Docket No. ____] (the "**Sale Procedures Order**"). The Debtor intends to seek entry of the Sale Approval Order (as defined below) to the Qualified Bidder(s) (as defined below) submitting the highest and best offer(s) to purchase the Sale Property (as defined below), as determined by the Debtor, after consultation with their investment banker, Livingstone Partners, LLC ("**Livingstone**"); Tucker Ellis LLP, counsel to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "**Committee**"); and the financial advisor to the Committee, Oxford Restructuring Advisors LLC ("**Oxford**," and collectively with Livingstone and counsel to the Committee, the "**Consultation Parties**").

*[continued on following page]*

---

[1] The last four digits of the federal employer identification number of RAS Data Services, Inc. are 4032.

1

## Summary of Events and Dates under Approved Bidding Procedures[2]

| Date | Event |
|---|---|
| [date] | Entry of Sale Procedures Order |
| Thursday, October 16, 2025 | Assumption/Assignment Rider Deposited in Data Room |
| Thursday, October 23, 2025 | Letter of Intent Deadline |
| Monday, October 27, 2025 | Mailing of Customer Feedback Requests and Filing of Form APA |
| Friday, November 7, 2025 | Customer Feedback Deadline |
| Monday, November 10, 2025 | Delivery of Summaries of Customer Feedback to Potential Bidders |
| Friday, November 14, 2025 | Filing of Stalking Horse APA (if any) |
| Friday, November 21, 2025 | Bid Deadline |
| Tuesday, December 2, 2025 | Auction |
| Monday, December 15, 2025 | Filing of Proposed Sale Approval Order |
| Wednesday, December 17, 2025 | Sale Objection Deadline |
| Thursday, December 18, 2025 | Sale Approval Hearing |
| December 22, 2025 | Prevailing Bid Closing |

### (1)    The Debtor's Business and Assets to be Sold

The Debtor is a railcar-management company that essentially serves as an intermediary between its customers, who are owners of freight railcars, on the one hand (collectively, the "**Customers**," and each a "**Customer**"), and parties with whom such owners do business or incur obligations (including without limitation railroads, repair shops, railcar lessees, and taxing authorities) (each a "**Vendor/Lessee**"), on the other. The terms governing the business relationship of the Debtor and the Customers are set forth in railcar management service agreements between them (collectively, the "**MSAs**," and each an "**MSA**"). The nature and operations of the Debtor's business are described in more detail in the *Declaration of Sandor Jacobson in Support of Chapter 11 Petition and First-Day Motions* filed in the Chapter 11 Case as Docket No. 6.

The Debtor is offering for sale all of its interests in real and personal property, in bulk (the "**Sale Property**"). The sale of the Sale Property (the "**Asset Sale**") shall be subject to the Sale Approval Order and the representations, warranties, covenants and other terms and conditions contained in the Form APA (as defined below), and except as provided therein, on an "**AS IS, WHERE IS**" basis, with all faults of any kind or nature, including latent or patent defects, and without other representations and warranties, express, implied or statutory, written or oral of any kind, nature or description.

---

[2] This summary is included for purposes of convenience only, and in the event of any ambiguity or contradiction, the specific terms of these Bidding Procedures govern.

(2)      **Notice of Approved Bidding Procedures**

Pursuant to the Sale Procedures Order, a copy of that order (including these Approved Bidding Procedures), has been served by first-class mail and/or CM/ECF, upon: (a) each of the Consultation Parties; (b) all creditors of the Debtor, as reflected in the creditor matrix maintained in the Chapter 11 Case, other than employees whose prepetition claims were paid in full pursuant to the Court's order entered as Docket No. 41; (c) all currently known counterparties to the Debtor's executory contracts and unexpired leases (collectively, the "**Executory Contracts / Unexpired Leases**"), including without limitation the Customers; (d) the United States Trustee's Office for Region 11; (e) the Office of the Attorney General of Illinois; (f) all equity security holders of the Debtor; and (g) all other entities that have filed requests for notices pursuant to Rule 2002 of the Bankruptcy Rules.

(3)      **Confidentiality Agreement**

Parties interested in bidding on the Sale Property (each a "**Potential Bidder**") that desire to conduct due diligence on any of the Sale Property will be required to complete and execute a confidentiality agreement in form and substance acceptable to the Debtor (the "**Confidentiality Agreement**"), if they have not already done so.

(4)      **Due Diligence**

Potential Bidders that have executed a Confidentiality Agreement will be granted access to the Debtor's electronic data room (the "**Data Room**") and to additional nonpublic information regarding the Debtor. All due diligence requests must be directed to Livingstone. The Debtor and Livingstone will make commercially reasonable efforts to address all commercially reasonable requests for additional information and due diligence access.

The due diligence period and the Data Room shall be open until the Bid Deadline (as defined below). After the Bid Deadline, the Debtor shall have no obligation to furnish due diligence information. The Debtor may, in its discretion, following consultation with the Consultation Parties, extend a Potential Bidder's time to conduct due diligence.  The Debtor will use commercially reasonable efforts to facilitate any acquisition planning and coordination with the Prevailing Bidder (as defined below).

Following entry of the Sale Procedures Order, unredacted copies of all MSAs in the Debtor's possession will be deposited into the Data Room.

(5)      **Letters of Intent**

In order to participate in the bidding process, each Potential Bidder must timely deliver to the Debtor an executed, non-binding, letter of intent (a "**Letter of Intent**") that includes:

(a)      The identity of the Potential Bidder and an email address at which the Potential Bidder consents to receive delivery of any and all notices from the Debtor in connection with the bidding process and Asset Sale;

3

(b)      The purchase price (including all cash and non-cash consideration) anticipated to be bid by the Potential Bidder in the event that all Customers, other than those customers that have been indicated as non-continuing customers in due diligence information in the Debtor's data room ("Non-Continuing Customers"), consent to the assignment of their respective MSAs to the Potential Bidder subject to the terms set forth in the Assumption/Assignment Rider (as defined below);

(c)      If the Potential Bidder desires to acquire less than substantially all of the Sale Property, a preliminary description of the Sale Property the Potential Bidder desires to exclude from the Asset Sale;

(d)      A cover letter to be provided to Customers setting forth (i) the Potential Bidder's qualifications to operate the Debtor's business; (ii) its experience in the railcar management industry (or similar industries); and (iii) any other facts demonstrating the Potential Bidder's ability to continue performing under all of the MSAs, other than those of Non-Continuing Customers, after the closing of the Potential Bidder's contemplated transaction (a "**Cover Letter**"); and

(e)      An acknowledgement by the Potential Bidder of the existence of the automatic stay with respect to the Debtor's interests in its contractual relationships with Customers, and an agreement by the Potential Bidder that it will not interfere with such interests in connection with the Asset Sale or otherwise.

A Letter of Intent is timely delivered to the Debtor only if it is delivered, in writing, via physical delivery or email, to Livingstone Partners LLC, 443 N. Clark, Chicago, IL 60654, Attn: Joseph Greenwood, Adam Green, and David Bergal, greenwood@livingstonepartners.com, green@livingstonepartners.com, and bergal@livingstonepartners.com; and the Debtor's counsel, Adelman & Gettleman, Ltd., 53 W. Jackson Boulevard, Chicago, IL 60604, Attn: Adam Silverman and Alex Brougham, asilverman@ag-ltd.com and abrougham@ag-ltd.com (collectively, the "**Debtor Delivery Addresses**"), so as to be actually received no later than 5:00 p.m. (prevailing Central time) on Thursday, October 23, 2025 (the "**Letter of Intent Deadline**"). Any Potential Bidder that fails to timely deliver a complete Letter of Intent by the Letter of Intent Deadline may be precluded from participating further in the bidding process, subject to the commercially reasonable discretion of the Debtor after consultation with the Consultation Parties. Any Potential Bidder submitting a Letter of Intent is solely responsible for meeting the Letter of Intent Deadline and verifying that its Letter of Intent was timely delivered to the Debtor. Any deliverables by Potential Bidders under these Approved Bidding Procedures shall be transmitted by the Potential Purchaser to the Debtor, using the Debtor Delivery Addresses (subject to varying deliverable deadlines as set forth herein).

As soon as practicable after the Letter of Intent Deadline, Livingstone will: (a) circulate all timely delivered Letters of Intent to the Consultation Parties, and (b) confirm receipt of each timely delivered Letter of Intent to the applicable Potential Bidder.

(6)     **Assumption/Assignment Rider**

No later than October 16, 2025, the Debtor will deposit into the Data Room the form of a rider intended to be executed by the Debtor, the Prevailing Bidder, and the applicable Customer in connection with the consensual assumption and assignment of each Customer's MSA (the "**Assumption/Assignment Rider**"). The Assumption/Assignment Rider would, upon execution by the parties identified in the foregoing sentence, modify and amend the applicable MSA as of the date of the closing of the Asset Sale with select new terms, including the following:

(a)     At the Customer's option, payments by the Customer to the Prevailing Bidder, other than management fees, would either (i) be held in trust pending payment to Vendor/Lessees, or (ii) be made directly by the Customer to its Vendor/Lessees.

(b)     The term of the MSA would expire on the later of (i) the expiration date set forth in the MSA or (ii) six (6) months after the date of the closing of the Asset Sale.

(c)     The following consideration (collectively, the "**Cure Consideration**") would constitute a complete cure of any defaults under the MSA and complete compensation for any actual pecuniary loss resulting from any such defaults, thereby satisfying the requirements of subsections 365(b)(1)(A)-(B) of the Bankruptcy Code:

(A)     The Cure Distribution (as defined below) applicable to the Customer; and

(B)     A reservation of the Customer's entitlement to assert a general unsecured claim in the Chapter 11 Case for any portion of the Customer's claim against the Debtor not satisfied by payment of the Cure Distribution, and to participate in any distribution to creditors to the extent such claim is allowed, in accordance with the priorities established by the Bankruptcy Code.

(d)     The Customer would consent to the assumption and assignment of its MSA as modified and amended by the Assumption/Assignment Rider.

As used in these Approved Bidding Procedures, the term "**Cure Distribution**" refers to a *pro rata* distribution of the proceeds of the Asset Sale among those Customers that enter into Assumption/Assignment Riders prior to the closing of the Asset Sale, net of the following anticipated deductions, whose allowance and/or approval remains subject to further Court order, including the Sale Approval Order: (a) ordinary and necessary closing costs, including any fees payable to Livingstone as investment banker and, as applicable, any Cure Amounts (as defined in the Sale Procedures Order) required to be paid by the Debtor; (b) any amount that may be needed to replenish "Pre-Petition Funds" spent by the Debtor pursuant to that certain *Order Authorizing Maintenance of Existing Bank Accounts, Continued Use of Existing Cash Management System, Continued Use of Existing Business Forms, and Continued Use of Existing Books and Records* filed as Docket No. 62; (c) any and all actual and necessary administrative expenses incurred by the Debtor's estate prior to the closing of the Asset Sale, up to the maximum amount budgeted

7076918.1

therefor in that certain *Order Granting Motion of the Debtor to Use Funds to Pursue Sale and for Shortened Notice Thereof* filed as <u>Docket No. 109</u> (the "**Sale Budget Order**"); (d) an estimated amount reserved for the benefit of the estate; (e) any other administrative expenses incurred, or reserved for, in connection with the Chapter 11 Case as may be approved by the Court; and (f) to the extent not included in the foregoing items (a), (b), (c), (d), and (e), any remaining "Replenishment Obligation" as defined in the Sale Budget Order. It is expressly contemplated by these Approved Bidding Procedures that the Cure Distribution will not occur contemporaneously with the closing of the Asset Sale, but will instead occur at a later date as set forth in the Sale Approval Order. Cure Distributions will be prorated based on the amount of each participating Customer's claim against the Debtor arising from defaults under the Customer's MSA.

### (7) Customer Feedback Requests and Responses

On or before Monday, October 27, 2025 the Debtor must cause to be sent, via overnight mail to each of the Customers at the respective addresses set forth in the Debtor's Schedule G (and where addresses are available, by electronic mail), a customer feedback request (a "**Customer Feedback Request**") that includes:

(a)     The identity of each Potential Bidder that timely delivered a Letter of Intent to the Debtor;

(b)     A copy of the Assumption/Assignment Rider

(c)     The Cover Letters provided by the Potential Bidders; and

(d)     A form for the Customer to complete and return to the Debtor (each a "**Customer Feedback Response**"), in which the Customer will specify on a non-binding basis, with respect to each Potential Bidder that submitted a Letter of Intent, whether the Customer is, or is not, willing to have its MSA, as amended by the Assumption/Assignment Rider, assumed and assigned to such Potential Bidder upon closing, if such Potential Bidder is the Prevailing Bidder.

The proposed purchase prices set forth in Letters of Intent will be confidential and will not be disclosed to any person or entity other than: (a) the senior management of the Debtor; (b) counsel to the Debtor; (c) counsel to the Committee; (d) Livingstone; and (e) Oxford. For the avoidance of doubt, such proposed purchase prices must not be disclosed to other Potential Bidders, Customers, Vendors, or members of the Committee, or other creditors of the Debtor.

Customer Feedback Requests will not include, and the Consultation Parties must not disclose to Customers or their representatives, the proposed purchase prices set forth in Letters of Intent.

The deliveries of the Customer Feedback Requests, the Assumption/Assignment Riders, and the Customer Feedback Responses provided hereunder are not intended to effect modifications, assumptions, or assignments of the MSAs, which will remain subject to Court approval under the Sale Approval Order.

6

Customers must return their completed Customer Feedback Responses via physical delivery or email, to the Debtor, using the Debtor Delivery Addresses, so as to be actually received at the applicable Debtor Delivery Addresses no later than 5:00 p.m. (prevailing Central time) on Friday, November 7, 2025 (the "**Customer Feedback Deadline**"). As soon as practicable after the Customer Feedback Deadline, Livingstone will circulate all Customer Feedback Responses to the Consultation Parties.

On or before Monday, November 10, 2025, the Debtor must deliver to each of the Potential Bidders that submitted a Letter of Intent a summary of the Customer Feedback Response selected by each Customer with respect to the applicable Potential Bidder.

In the interest of preserving the fairness and transparency of the Asset Sale, Potential Bidders and Customers are instructed not to negotiate modifications to their MSAs or the Assumption/Assignment Rider prior to the conclusion of the Auction. Customers *should not* submit mark-ups or redlines of the Assumption/Assignment Riders as part of Customer Feedback Responses

**(8)    Form APA**

On or before Monday, October 27, 2025, the Debtor, in consultation with the Consultation Parties, must file with the Court a form of asset purchase agreement proposed to be used by bidders in connection with the Asset Sale (the "**Form APA**"), and deliver a copy of the Form APA to each Potential Bidder that submitted a Letter of Intent.

**(9)    Optional Stalking Horse Designation**

The Debtor, in its commercially reasonable business judgment and in consultation with the Consultation Parties, is authorized to designate one or more stalking-horse bidders for the Sale Property (each a "**Stalking Horse**"). Should the Debtor designate a Stalking Horse, the Debtor must file with the Court a proposed asset purchase agreement (the "**Stalking Horse APA**") setting forth, at a minimum, (a) the identity of the Stalking Horse, (b) any break-up fee, bid protection, or similar terms used to induce the Stalking Horse to serve as such; and (c) all other material terms proposed to be approved by the Court in connection with the Stalking Horse's participation as a bidder. The Stalking Horse APA must be filed with the Court no later than Friday, November 14, 2025. Neither the Court's approval of these Approved Bidding Procedures nor the designation of a Stalking Horse by the Debtor constitutes the Court's approval of the Stalking Horse, the Stalking Horse APA, or any terms thereunder. The Debtor may, however, on appropriate notice and in consultation with the Consultation Parties, file a motion seeking to modify these Approved Bidding Procedures to approve the Stalking Horse, inducements such as a break-up fee or bid protection, and/or other or further procedures to facilitate the participation of the Stalking Horse.

**(10)    Criteria for Consideration to be Deemed a Qualified Bid**

By submitting a bid, a party that submits a bid for Sale Property (each a "**Bidder**") shall be irrevocably and conclusively deemed to acknowledge and represent that: (a) it has had the opportunity to conduct its due diligence on the Debtor and the Sale Property prior to making its

7

bid; (b) other than the representations, warranties and covenants in the Form APA, it has relied solely upon its own independent review, investigation, and/or inspection of any documents and information as to the Debtor and the Sale Property in making its bid; (c) it has completed all due diligence it deems reasonable and necessary under the circumstances; and (d) it waives the right to conduct further due diligence from and after the Bid Deadline. For clarity, the deadline for completing due diligence shall be the Bid Deadline.

Only those bids that are in material compliance (in the Debtor's commercially reasonable discretion, after consultation with the Consultation Parties) with these Approved Bidding Procedures (each a "**Qualified Bid**," and each Bidder submitting a Qualified Bid, a "**Qualified Bidder**") will be eligible to participate in the Auction. To be considered a Qualified Bid, a bid must comply with all of the following provisions of this section:

(a)      The bid must be delivered, in writing, via physical delivery or e-mail, to the Debtor, using the Debtor Delivery Addresses, so as to be actually received no later than 5:00 p.m. (prevailing Central time) on Friday, November 21, 2025 (the "**Bid Deadline**"). Bids received after the Bid Deadline may be precluded or considered to be Qualified Bids in the commercially reasonable discretion of the Debtor, after consultation with the Consultation Parties. No later than 5:00 p.m. (prevailing Central time) on November 22, 2025, Livingstone will (i) circulate any bid it receives to the Consultation Parties, and (ii) confirm receipt of such bid to the applicable Bidder. Any Bidder submitting a bid shall be solely responsible for meeting the Bid Deadline and verifying that its bid was actually and timely received.

(b)      The bid must include: (i) an executed Asset Purchase Agreement ("**APA**") substantially similar to the Form APA; and (ii) a redlined version of the APA marked to show changes to the Form APA.

(c)      The bid must include an earnest money deposit equal to ten percent (10.0%) of the purchase price set forth in the bid in immediately available U.S. funds (each, a "**Deposit**"). Prior to the Bid Deadline, the Deposit is to be tendered via wire or ACH transfer to a depository account designated by the Debtor, using instructions to be provided by the Debtor upon request.

The Deposit shall be conclusively deemed subject to the exclusive jurisdiction of the Bankruptcy Court upon receipt. Such Deposit shall be applied to the cash purchase price for a Bidder that submits the Prevailing Bid (including a Back-Up Bidder that is required to consummate the transaction contemplated hereunder with the Debtor). In the event of a Prevailing Bidder Failure to Close (as defined below), or the failure of a Back-Up Bidder's failure to close as required under these Approved Bidding Procedures, such bidder(s) shall forfeit the Deposit.

(d)      The bid must be accompanied by information about the Bidder's financial qualifications and ability to consummate its bid, including such Bidder's current financial statements (audited if they exist) or other similar financial information acceptable to the Debtor after consultation with the Consultation Parties ("**Bidder's Financial**

8

**Qualifications**"). To the extent reasonably requested by the Debtor, after consultation with the Consultation Parties, each Bidder may be required to supplement or explain the Bidder's Financial Qualifications no later than one (1) business day prior to the Auction upon written request by the Debtor to facilitate the Debtor' evaluation of such Bidder's ability to close on the Asset Sale. The Bidder's Financial Qualifications, any supplemental information related thereto, and any explanation thereof, may be disclosed to the Consultation Parties, subject to the confidentiality provisions of the Sale Procedures Order. At the commercially reasonable discretion of the Debtor after consultation with the Consultation Parties, any Qualified Bidder making a Qualified Bid may be required to further supplement the Bidder's Financial Qualifications in order to be permitted to increase its Qualified Bid at the Auction. Failure of the Qualified Bidder to supplement the Bidder's Financial Qualifications, in the discretion of the Debtor after consultation with the Consultation Parties, may result in such Qualified Bidder being precluded from increasing the amount of its Qualified Bid at the Auction.

(e)      The bid must: (i) represent that the Bidder is prepared to immediately initiate all actions necessary to obtain all other applicable regulatory approvals, if any, for the submitted bid; and (ii) provide to the Debtor its good faith estimate of the time within which such approvals will be obtained.

(f)      Each bid must include a written commitment by the Bidder to serve as a Back-Up Bidder in the event that such Bidder's bid is not selected as the Prevailing Bid but is the next highest or otherwise best bid as determined by the Debtor, after consultation with the Consultation Parties.

(g)      The bid must (unless otherwise determined by the Debtor, after consultation with the Consultation Parties):

  (i)      Remain irrevocable until the docketing of the Sale Approval Order;

  (ii)      If approved at the Sale Approval Hearing as either the Prevailing Bid or the Back-Up Bid, remain irrevocable until the earlier of: (A) the Prevailing Bid Closing (as defined below); (B) fourteen (14) days following the entry of the Sale Approval Order; or (C) in the case of the Back-Up Bid, receipt of the Declination Notice (as defined below);

  (iii)      Clearly state that all consideration to be paid shall be cash and cash equivalents, and if applicable, any assumed liabilities;

  (iv)      Not contain any financing contingency, regulatory contingency, release of liability contingency, indemnification contingency, or be subject to further due diligence review, board approval, or the receipt of any non-governmental consents;

  (v)      With the exception of MSAs, identify each and every one of the Executory Contracts / Unexpired Leases whose assumption and assignment is sought by the Bidder, and provide evidence of the Bidder's ability to comply with section 365 of

the Bankruptcy Code with respect to such Executory Contracts / Unexpired Leases; and

(vi)    not request or entitle the Bidder to any termination or break-up fee, expense reimbursement, or similar type of payment, with the sole exception of a Stalking Horse APA.

(h)    The bid must disclose (i) the identity of the Bidder and each entity participating in connection with such bid, and the complete terms of such participation, and (ii) any other agreements, term sheets or other written or oral understandings between the Bidder and its affiliates, on one hand, and any current or former insider (as defined in 11 U.S.C. § 101(31)) of the Debtor, on the other hand (the "**Insider Disclosure**"). Further, if the Bidder is a joint venture or a special purpose entity, the Bidder shall disclose each member and/or joint venturer of the Bidder.

**The Debtor reserves the right to communicate with any Bidder to facilitate the curing of any deficiencies in a bid that is not initially deemed to be a Qualified Bid.**

(11)    **Auction and Selection of Prevailing Bid and Back-up Bid**

An open-outcry auction sale of the Sale Property in accordance with these Approved Bidding Procedures (the "**Auction**") will be held at 10:00 a.m. (Central time) on Tuesday, December 2, 2025, at the offices of Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, Illinois 60604, or at such later time or other place as the Debtor shall advise all Qualified Bidders and the Consultation Parties. The Auction will be conducted in the presence of a certified court reporter, who will transcribe the proceedings for purposes of creating and preserving a record of the Auction.

For a Qualified Bidder to participate in the Auction, the Qualified Bidder must appear in person at the Auction or through a duly authorized representative, unless alternative arrangements are made in advance with the Debtor and its counsel. If multiple Qualified Bids are received, each Bidder shall have the right to continue to improve its Qualified Bid at the Auction; provided however, that the Debtor shall not be obligated to consider any increases to a Qualified Bid which is inconsistent with the Bidder's Financial Qualifications and the Bidder's ability to consummate the transaction contemplated hereby.

Any Qualified Bidder shall be required to confirm on the record at the Auction that it has not engaged in any collusion or other conduct having a chilling effect on the sale with respect to the Approved Bidding Procedures, the Sale Property, or the Auction.

Any Qualified Bidder shall be required to ratify its Insider Disclosure on the record at the Auction.

Bidding will commence with the announcement of the opening bid and will proceed with subsequent open-outcry overbids in an amount equal to Fifty Thousand Dollars ($50,000.00), but

the Debtor may modify such increment(s) at the Auction, in consultation with the Consultation Parties.

The prevailing bid at the Auction shall be the bid(s) determined by the Debtor, in consultation with the Consultation Parties, to be the highest or otherwise best offer for the Sale Property (the "**Prevailing Bid**"), with the Qualified Bidder(s) submitting such Prevailing Bid being deemed the "**Prevailing Bidder**." Additionally, after consultation with the Consultation Parties, the Debtor may (but is not required to) determine the second-highest-or-best offer for the Sale Property (the "**Back-Up Bid**"), with the Qualified Bidder(s) submitting such Back-Up Bid being deemed the "**Back-Up Bidder**." At the Debtor's option, the Debtor may accept the Back-Up Bid in lieu of the Prevailing Bid if the Prevailing Bid does not close on the designated closing date.

Within twenty-four (24) hours of the conclusion of the Auction, (a) the Prevailing Bidder shall increase its Deposit to twenty-five percent (25%) of the cash consideration set forth in the Prevailing Bid, and (b) the Debtor will file a notice on the Court's docket identifying the Prevailing Bidder and the Back-Up Bidder (if any).

To determine the Prevailing Bid and the Back-Up Bid, the Debtor may evaluate one or more bids for the Sale Property that, when taken together, and after considering the risks and expenses associated with consummating bids in multiple lots, collectively constitute a higher or otherwise better bid than other bids received.

The Debtor, upon consultation with the Consultation Parties, reserves the right to work with: (a) Potential Bidders to aggregate two or more bids into a single consolidated bid prior to the Bid Deadline and/or (b) Qualified Bidders to aggregate two or more Qualified Bids into one or more transaction(s) which may collectively constitute the highest or otherwise best bid.

If only one Qualified Bid is received by the Bid Deadline, and the Debtor (in consultation with the Consultation Parties) deems acceptance of such Qualified Bid to be in the best interest of its estate under the circumstances, the Debtor reserves the right to cancel the Auction and request the entry of a Sale Approval Order authorizing the sale contemplated by the Qualified Bid.

### (12)    Sale Approval Hearing

Any Qualified Bids that are accepted by the Debtor at the Auction as the Prevailing Bid and the Back-Up Bid will be subject to approval by the Bankruptcy Court. Please be advised that the hearing to approve such bids will be held before the Honorable Michael B. Slade, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Courtroom 642, Chicago, Illinois 60604 (the "**Sale Approval Hearing**") at [XXX] (prevailing Central time) on December 18, 2025, or such later time and place as the Debtor shall notify the Consultation Parties and all Qualified Bidders.

At the Sale Approval Hearing, the Debtor shall request entry of one or more Orders approving the consummation of the sale contemplated hereby, in form and substance agreeable

11

among the Debtor, the Consultation Parties, and the Prevailing Bidder, or the party submitting the Back-Up Bid, as the case may be (collectively, the "**Sale Approval Order**"). The Debtor must file with the Court a proposed Sale Approval Order no later than Monday, December 15, 2025.

All objections to the sale of the Sale Property or entry of the Sale Approval Order must: (a) be in writing; (b) state with specificity the nature and legal bases for such objections; and (c) be filed with the Court no later than 12:00 p.m. (prevailing Central time) on Wednesday, December 17, 2025 (the "**Sale Objection Deadline**"). Notwithstanding the foregoing sentence, the Sale Objection Deadline does not apply to (x) Non-MSA Assignment Objections (as defined in the Sale Procedures Order, and which are subject to separate deadlines set forth therein); (y) Adequate Assurance Objections (also as defined in the Sale Procedures Order, and which, pursuant thereto, may be raised at any time up to and including the Sale Approval Hearing); or (z) objections premised solely on the conduct of the Auction (which may be raised at any time up to and including the Sale Approval Hearing).

### (13)    Return of Deposits

Except as otherwise set forth herein, as soon as practicable (but in no event later than five (5) business days) upon entry on the docket of the Sale Approval Order, the Debtor shall return to each unsuccessful Qualified Bidder (other than the Prevailing Bidder and the Back-Up Bidder) the Deposit submitted by such Qualified Bidder.

Upon the completion of the Prevailing Bid Closing or the submission of a Declination Notice to the Back-Up Bidder, the Debtor shall return to the Back-Up Bidder the Deposit submitted by the Back-Up Bidder.

### (14)    Closing

Upon entry on the docket of the Sale Approval Order, the Prevailing Bidder and the Debtor shall consummate the Court-approved transaction on Monday, December 22, 2025, or such other date as agreed between Purchaser and Debtor, in consultation with the Consultation Parties (the "**Prevailing Bid Closing**").

At the Prevailing Bid Closing, the Deposit of the Prevailing Bidder will be applied against the purchase price to be paid by the Prevailing Bidder.

### (15)    Failure of Prevailing Bidder to Close

If the Prevailing Bidder fails to close on or before the Prevailing Bid Closing and the Debtor is otherwise able to consummate the sale (a "**Prevailing Bidder Failure to Close**"), the Deposit of the Prevailing Bidder, shall be conclusively and irrevocably forfeited to, and become property of, the Debtor.

In the event of a Prevailing Bidder Failure to Close, the Back-Up Bidder shall be required to consummate the transactions contemplated in the Back-Up Bid at the purchase price so offered (a "**Back-Up Bid Closing**") without further act, deed, or order of the Bankruptcy Court, within

12

fourteen (14) days following receipt of a notice from the Debtor of a Prevailing Bidder Failure to Close, unless the Debtor provides written notice to the Back-Up Bidder of their intent not to accept the Back-Up Bid (a "**Declination Notice**"). In the event of a closing of the transaction under the Back-Up Bid, the Deposit of the Back-Up Bidder shall be applied against the purchase price to be paid by the Back-Up Bidder. If, in the event of a Prevailing Bidder Failure to Close, and absent a Declination Notice, the Back-Up Bidder fails to close timely and in accordance with the terms of the Back-Up Bid, the Deposit of the Back-Up Bidder shall be forfeited to, and become property of, the Debtor.

The Back-Up Bidder shall be obligated to hold open the Back-Up Bid until the completion of the earlier of: (A) the Prevailing Bid Closing; (B) fourteen (14) days following the entry on the docket of the Sale Approval Order; or (C) receipt of a Declination Notice.

(16)     **Reservation of Rights and Highest and Best Bids**

Except as otherwise provided in the Sale Procedures Order, the Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate after consultation with the Consultation Parties, to: (a) determine which Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, and thus, determine the Prevailing Bid and the Back-Up Bid; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of these Approved Bidding Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate. Nothing contained herein shall prejudice or impair rights under Section 363(k) of the Bankruptcy Code. The Debtor further reserves all rights to modify or impose, at or prior to the Auction, additional terms and conditions on the sale of the Sale Property, to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to the Auction, the Sale Approval Hearing or the sale of the Sale Property which in its business judgment, and after consultation with the Consultation Parties, are reasonably necessary to preserve the bankruptcy estate or maximize the value thereof. The Debtor, after consultation with the Consultation Parties, may also consider factors other than the purchase price in determining the highest and best bid, including, but not limited to, each Bidder's: financial wherewithal, assumption of the Debtor's liabilities, and ability to close in accordance with these Approved Bidding Procedures.

(17)     **Sale Termination**

Without limiting any reservations of rights contained herein, the Debtor reserves the right, at any time prior to the Sale Approval Hearing, to terminate the Asset Sale process contemplated by these Approved Bidding Procedures (a "**Sale Process Termination**"), if, in consultation with the Consultation Parties, the Debtor determines in its commercially reasonable business judgment that continuation of the Asset Sale process is unlikely to result in a net benefit to the Debtor's bankruptcy estate under the circumstances. Reasons for a Sale Process Termination may include, without limitation, failure to receive Letters of Intent or Qualifying Bids that, if ultimately consummated, would generate proceeds greater than or equal to the anticipated administrative expenses of continuing the Asset Sale process. In the event of a Sale Process Termination, the

Debtor will file a notice (the "**Notice of Sale Termination**") on the Court's docket, and serve the Notice of Sale Termination on all Customers, Potential Bidders who timely submitted Letters of Intent, and Qualified Bidders, as the case may be.

<u>(18)</u>     <u>**Miscellaneous**</u>

Nothing contained in these Approved Bidding Procedures or in the Sale Procedures Order shall create any rights in any other person or Bidder (including without limitation rights as third-party beneficiaries or otherwise) other than the rights expressly granted to the Prevailing Bidder or the Back-Up Bidder under the Sale Procedures Order, these Approved Bidding Procedures, and the Auction.

Except as provided in the Sale Procedures Order and these Approved Bidding Procedures, the Bankruptcy Court shall retain authority and jurisdiction to hear and determine all matters arising from or relating to the implementation of the Sale Procedures Order.

Dated: _____, 2025

*These Approved Bidding Procedures Prepared by*:

ADELMAN & GETTLEMAN, LTD.
Adam P. Silverman, Esq.
Alexander F. Brougham, Esq.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
312-435-1050
asilverman@ag-ltd.com
abrougham@ag-ltd.com

14

# <u>Exhibit B</u> to

## *Order: (a) Approving Sale Process; (b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Excusing Page Limit; (d) Granting Shortened Notice; and (e) Scheduling a Public Auction and a Sale Approval Hearing*:

## Assumption Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RAS DATA SERVICES, INC.,[1] | ) | Case No. 25-11837 |
| | ) | |
| Debtor. | ) | Honorable Michael B. Slade |
| | ) | |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

TO NON-DEBTOR PARTIES TO CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES:

THESE PROCEDURES ARE NOT APPLICABLE TO RAILCAR MANAGEMENT AGREEMENTS (OR "MSAs"). COUNTERPARTIES TO MSAs SHOULD DISREGARD THIS NOTICE AND INSTEAD REFER TO THE SEPARATE PROCEDURES ESTABLISHED BY THE SALE PROCEDURES ORDER (AS DEFINED BELOW).

**PLEASE TAKE NOTICE AS FOLLOWS:**

1.     **Chapter 11 Case** - On _____, 2025, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division entered an order (the "**Sale Procedures Order**")[2] in the above-captioned Chapter 11 case (the "**Chapter 11 Case**") of RAS Data Services, Inc. (the "**Debtor**") approving, among other things, the process for fixing the cure amounts related to the Debtor's potential assumption, assignment and/or transfer of certain executory contracts, unexpired leases and other agreements (the "**Executory Contracts / Unexpired Leases**") in connection with the sale of all or substantially all the Debtor's assets and business as a going concern (the "**Asset Sale**").

2.     **Notice of Proposed Assignment and Cure Amount** - Set forth on Exhibit A is a list of certain Executory Contracts / Unexpired Leases that the Debtor ***may potentially seek to have assumed and assigned to the Prevailing Bidder or Back-Up Bidder at the Sale Approval Hearing***.  **PARTIES RECEIVING THIS NOTICE SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES LISTED IN EXHIBIT A.**  Exhibit A also contains the cure amounts the Debtor's books and records reflect are necessary to assume and assign such Executory Contracts / Unexpired Leases pursuant to section 365 of the Bankruptcy Code (each a "**Cure Amount**").  The Debtor believes that the

---

[1] The last four digits of the federal employer identification number of RAS Data Services, Inc. are 4032.

[2] Capitalized terms used but not otherwise defined herein have the respective meanings set forth in the Sale Procedures Order or Approved Bidding Procedures, as the case may be.

payment of each Cure Amount will cure any and all defaults and pecuniary losses under the corresponding Executory Contract / Unexpired Lease. If the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Prevailing Bidder or Back-Up Bidder not set forth in this Notice, the Debtors will promptly send a supplemental notice (a "**Supplemental Assumption Notice**") to the non-Debtor parties to such additional executory contracts and unexpired leases.

3.        **Assumption and Cure Objections** - Any objection of a non-Debtor party to an Executory Contract / Unexpired Lease to the Cure Amount set forth in Exhibit A to this Notice or to the proposed assumption and assignment of such Executory Contract / Unexpired Lease (excluding Adequate Assurance Objections, which are defined and addressed in paragraph 6 below) (a "**Cure Amount/Assumption Objection**") must (a) be in writing, and (b) provide the basis for the objection, including any cure amount claimed to be due, with supporting documentation. To be considered a timely Cure Amount/Assumption Objection, the Cure Amount/Assumption Objection must be filed with the Clerk of the U.S. Bankruptcy Court, Northern District of Illinois, Eastern Division, by **5:00 p.m. prevailing Central time on December 15, 2025**. Notwithstanding the foregoing, counterparties to Executory Contracts / Unexpired Leases identified for the first time in a Supplemental Assumption Notice may raise Cure Amount / Assumption Objections at any time prior to, or at, the Sale Approval Hearing (as defined below).

4.        **Assumption and Cure Objection Hearing** - The Court will resolve any and all timely filed Cure Amount/Assumption Objections at the hearing to consider approval of the Asset Sale, to be held on at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Courtroom 642, Chicago, Illinois 60604, or such other time as may be ordered by the Court (the "**Sale Approval Hearing**"). **Please be advised that if you do file an objection you and/or your attorney will be expected to attend the Sale Approval Hearing or the Court may grant the relief sought in the Sale Motion over such written objection.** Appearance by Zoom may be permitted in accordance with the Court's local rules and procedures.

5.        **If No Cure Amount/Assumption Objection is Timely Filed** - If a Cure Amount/Assumption Objection is not timely raised by the applicable deadline with respect to any Executory Contract / Unexpired Lease, then (a) the Debtor will be authorized, but not directed, to assume and assign such Executory Contract / Unexpired Lease, subject only to any obligation of the Debtor, the Prevailing Bidder, the Back-Up Bidder, or any other assignee to provide adequate assurance of future performance pursuant to 11 U.S.C. § 365; (b) the Cure Amount set forth in this Notice will constitute the final determination of the total cure amount required to be paid by the Debtor on such Executory Contract/ Unexpired Lease pursuant to 11 U.S.C. § 365 for purposes of the Sale Approval Order; and (c) the non-Debtor party to such Executory Contract / Unexpired Lease will be: (i) forever barred and estopped from objecting to the Cure Amount or seeking any additional cure payments on such Executory Contract/ Unexpired Lease, whether from the Debtor, the Prevailing Bidder, any Back-Up Bidder, or any other assignee; (ii) deemed to have waived any right to terminate such Executory Contract / Unexpired Lease as a result of any default which may have occurred under such Executory Contract / Unexpired Lease prior to the assumption date to the extent such Executory Contract / Unexpired Lease is identified as a Sale Asset by the Prevailing Bidder or Back-Up Bidder; (iii) deemed to have agreed that the Sale Procedures Order applies and is enforceable with respect to the assumption and assignment of such

2

Executory Contract / Unexpired Lease; (iv) deemed to have agreed that all defaults under such Executory Contract / Unexpired Lease arising or continuing prior to the assumption date have been fully cured and satisfied; and (v) deemed to have consented to the assumption, assignment and transfer of such Executory Contract / Unexpired Lease to the Prevailing Bidder, Back-Up Bidder or any assignee thereof on all matters, except for any obligation of the Debtor, the Prevailing Bidder, the Back-Up Bidder, or any other assignee to provide adequate assurance of future performance under 11 U.S.C. § 365, as hereinafter provided.

6.      **Adequate Assurance** – Attached to this Notice as Exhibit B is information submitted by one or more bidders to provide adequate assurance of future performance under your Executory Contract / Unexpired Lease pursuant to 11 U.S.C.§ 365(f)(2)(B). Please be advised that the Cure Amount/Assumption Objection Deadline will not apply to any objections of a non-Debtor party to an Executory Contract / Unexpired Lease based on adequate assurance of future performance by the Prevailing Bidder or any Back-Up Bidder ("**Adequate Assurance Objections**"). Adequate Assurance Objections may be raised at or before the Sale Approval Hearing; any failure to do so shall be deemed to constitute a full waiver and release of all such objections.

7.      **Requests for Copies and Information** - Copies of the Sale Motion, the Sale Procedures Order, and other information and publicly filed documents relevant to the assumption and assignment of Executory Contracts / Unexpired Leases may be obtained by (a) accessing the Court's docket at https://ecf.ilnb.uscourts.gov/, or (b) written request directed to the Debtor's counsel at the mailing or email addresses noted below.

8.      **Notice** - This Notice is made expressly subject to the Sale Motion, the Sale Procedures Order, and the underlying bidding procedures. To the extent that this Notice is inconsistent with the terms of the Sale Procedures Order, the Sale Procedures Order shall control. Notwithstanding the reference to any contract as an "Executory Contract / Unexpired Lease" in this Notice, the Debtors reserve all of their rights with respect to whether or not any contract is an "executory contract" or "unexpired lease" pursuant to the Bankruptcy Code. The inclusion of any document on Exhibit A shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code.

Dated: _____, 2025          RAS Data Services, Inc.,
                                                          Debtor and Debtor-in-Possession

                                                          By: /s/ DRAFT_____
                                                                One of its attorneys

Adam P. Silverman, Esq. (ARDC #6256676)
Alexander F. Brougham, Esq. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Phone: (312) 435-1050
asilverman@ag-ltd.com
abrougham@ag-ltd.com

3