**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 25-11837 |
| RAS DATA SERVICES, INC., | ) | |
| | ) | Hon. Michael B. Slade |
| Debtor. | ) | |
| | ) | |

**SECOND AMENDED JOINT PLAN OF LIQUIDATION OF**
**DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated: May 18, 2026

**ADELMAN & GETTLEMAN, LTD.**

Adam P. Silverman
Alexander Brougham
Tevin D. Bowens
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel: (312) 435-1050
asilverman@ag-ltd.com
abrougham@ag-ltd.com
tbowens@ag-ltd.com

**TUCKER ELLIS LLP**

Thomas R. Fawkes
Brian J. Jackiw
Jason J. Ben
233 S. Wacker Dr., Suite 6950
Chicago, Illinois 60606
Tel: (312) 624-6300
thomas.fawkes@tuckerellis.com
brian.jackiw@tuckerellis.com
jason.ben@tuckerellis.com

*Counsel for Debtor and Debtor in Possession,*
*RAS Data Services, Inc.*

*Counsel to the Official Committee of*
*Unsecured Creditors*

> **Plan Pr.**
> **A-3**

1476328_1

# TABLE OF CONTENTS

ARTICLE I Definitions .................................................................................................... 1
   1.1    "503(b)(9) Claims" ..................................................................................... 1
   1.2    "Administrative Claim" .............................................................................. 1
   1.3    "Administrative Claims Bar Date" ............................................................ 1
   1.4    "Advisory Committee" ............................................................................... 1
   1.5    "Allowed Claim" or "Allowed . . . Claim" ............................................... 1
   1.6    "Avoidance Action" ................................................................................... 2
   1.7    "Ballot" ...................................................................................................... 2
   1.8    "Bankruptcy Code" .................................................................................... 2
   1.9    "Bankruptcy Court" .................................................................................... 2
   1.10   "Bankruptcy Rules" ................................................................................... 2
   1.11   "Bar Date Order" ........................................................................................ 2
   1.12   "Beneficiaries" ........................................................................................... 2
   1.13   "Business Day ............................................................................................ 2
   1.14   "Buyer" ...................................................................................................... 2
   1.15   "Case" ......................................................................................................... 2
   1.16   "Cash" ........................................................................................................ 2
   1.17   "Causes of Action" .................................................................................... 2
   1.18   "Chief Restructuring Officer" .................................................................... 3
   1.19   "Claim" ....................................................................................................... 3
   1.20   "Class" ........................................................................................................ 3
   1.21   "Committee" ............................................................................................... 3
   1.22   "Confirmation Date" .................................................................................. 3
   1.23   "Confirmation Hearing" ............................................................................. 3
   1.24   "Confirmation Order" ................................................................................. 3
   1.25   "De Minimis Distribution" ......................................................................... 3
   1.26   "Debtor" ..................................................................................................... 3
   1.27   "Disclosure Statement" .............................................................................. 3
   1.28   "Disputed Claim" or "Disputed . . . Claim" .............................................. 4
   1.29   "Distribution" ............................................................................................. 4
   1.30   "Effective Date" ......................................................................................... 4
   1.31   "Enforcement Proceeding" ......................................................................... 4
   1.32   "Erroneous Payment Claim Bar Date" ....................................................... 4
   1.33   "Erroneous Payment Claims" ..................................................................... 4
   1.34   "Equity Security" ....................................................................................... 5
   1.35   "Equity Security Holder" ........................................................................... 5
   1.36   "Estate" ....................................................................................................... 5
   1.37   "Exculpated Party" ..................................................................................... 5
   1.38   "Executory Contract" ................................................................................. 5
   1.39   "Final Order" .............................................................................................. 5
   1.40   "General Bar Date" ..................................................................................... 5
   1.41   "General Unsecured Claim" ....................................................................... 5
   1.42   "Governmental Bar Date" .......................................................................... 5
   1.43   "Holder" ..................................................................................................... 5
   1.44   "Impaired" .................................................................................................. 6
   1.45   "Independent Director" ............................................................................... 6

1.46 &ldquo;**Infinity**&rdquo; ................................................................................................................ 6
1.47 &ldquo;**Infinity Adversary Proceeding**&rdquo; ........................................................................ 6
1.48 &ldquo;**Infinity Claims**&rdquo; .................................................................................................... 6
1.49 &ldquo;**Infinity Contingent Payment**&rdquo; .......................................................................... 6
1.50 &ldquo;**Infinity Fixed Payment**&rdquo; .................................................................................... 6
1.51 &ldquo;**Infinity Remaining Claim**&rdquo; ................................................................................ 6
1.52 &ldquo;**Infinity Trust Claim**&rdquo; ........................................................................................ 6
1.53 &ldquo;**Initial Distribution**&rdquo; ............................................................................................ 6
1.54 &ldquo;**Insider**&rdquo; .................................................................................................................... 6
1.55 &ldquo;**Interest**&rdquo; ................................................................................................................... 6
1.56 &ldquo;**Lien**&rdquo; .......................................................................................................................... 7
1.57 &ldquo;**Liquidating Trust**&rdquo; .............................................................................................. 7
1.58 &ldquo;**Liquidating Trust Agreement**&rdquo; ........................................................................ 7
1.59 &ldquo;**Liquidating Trust Assets**&rdquo; ................................................................................ 7
1.60 &ldquo;**Liquidating Trustee**&rdquo; .......................................................................................... 7
1.61 &ldquo;**Liquidating Trustee's Expenses**&rdquo; ..................................................................... 7
1.62 &ldquo;**MSA**&rdquo; ......................................................................................................................... 7
1.63 &ldquo;**Net Trust Proceeds**&rdquo; ............................................................................................ 8
1.64 &ldquo;**Net Sale Proceeds**&rdquo; ............................................................................................... 8
1.65 &ldquo;**Original Budget Order**&rdquo; ...................................................................................... 8
1.66 &ldquo;**Other Administrative Claim**&rdquo; ........................................................................... 8
1.67 &ldquo;**Owner**&rdquo; ..................................................................................................................... 8
1.68 &ldquo;**Owner Trust Claim**&rdquo; ........................................................................................... 8
1.69 &ldquo;**Person**&rdquo; ..................................................................................................................... 8
1.70 &ldquo;**Petition Date**&rdquo; ....................................................................................................... 8
1.71 &ldquo;**Plan**&rdquo; .......................................................................................................................... 8
1.72 &ldquo;**Plan Proponents**&rdquo; ................................................................................................. 8
1.73 &ldquo;**Pre-Petition-Date Professionals**&rdquo; ...................................................................... 8
1.74 &ldquo;**Priority Claim**&rdquo; ...................................................................................................... 8
1.75 &ldquo;**Priority Tax Claims**&rdquo; ............................................................................................ 8
1.76 &ldquo;**Professional Fee Claims**&rdquo; ................................................................................... 9
1.77 &ldquo;**Professional**&rdquo; or &ldquo;**Professional Persons**&rdquo; ................................................... 9
1.78 &ldquo;**Pro Rata**&rdquo; ................................................................................................................ 9
1.79 &ldquo;**Released Party**&rdquo; ..................................................................................................... 9
1.80 &ldquo;**Releases**&rdquo; .................................................................................................................. 9
1.81 &ldquo;**Reserved Cash**&rdquo; ..................................................................................................... 9
1.82 &ldquo;**Sale**&rdquo; ........................................................................................................................... 9
1.83 &ldquo;**Sale Order**&rdquo; ............................................................................................................. 9
1.84 &ldquo;**Schedules**&rdquo; ............................................................................................................... 9
1.85 &ldquo;**Secured Claim**&rdquo; .................................................................................................... 10
1.86 &ldquo;**SOFA**&rdquo; ..................................................................................................................... 10
1.87 &ldquo;**Subsequent Distribution**&rdquo; ................................................................................. 10
1.88 &ldquo;**Unsecured Claim**&rdquo; ............................................................................................... 10
1.89 &ldquo;**U.S. Trustee**&rdquo; ........................................................................................................ 10
1.90 &ldquo;**UST Fees**&rdquo; ............................................................................................................... 10
1.91 &ldquo;**Victim Recovery Funds**&rdquo; .................................................................................... 10
1.92 **Rules of Interpretation and Computation of Time** ........................................... 10

ARTICLE II Unclassified Claims..................................................................................11
ARTICLE III Designation of Classified Claims and Interests .........................................11
   3.1   **Class 1 Claims**.................................................................................11
   3.2   **Class 2 Claims**.................................................................................11
   3.3   **Class 3 Claims**.................................................................................11
   3.4   **Class 4 Claims**.................................................................................11
   3.5   **Class 5 Interests**.............................................................................11
ARTICLE IV Impairment of Classes ...............................................................................11
   4.1   **Impaired Classes of Claims Entitled to Vote.** ..............................11
   4.2   **Classes Deemed to Accept the Plan.** ...........................................11
   4.3   **Classes Deemed to Reject the Plan.** ............................................11
   4.4   **Cram Down.** ..................................................................................12
   4.5   **Elimination of Vacant Classes**.....................................................12
ARTICLE V Treatment of Claims and Interests ...............................................................12
   5.1   **Allowed Other Administrative Claims and Allowed Professional Fee Claims.**...... 12
   5.2   **Priority Tax Claims.**......................................................................13
   5.3   **Class 1 Claims.**.............................................................................13
   5.4   **Class 2 Claims.**.............................................................................13
   5.5   **Class 3 Claims.**.............................................................................16
   5.6   **Class 4 Claims.**.............................................................................17
   5.7   **Class 5 Interests.**..........................................................................17
ARTICLE VI Treatment of Executory Contracts ..............................................................18
   6.1   **Contracts Deemed Rejected.** .......................................................18
   6.2   **Bar Date for Rejection Damages.**................................................18
   6.3   **Insurance Policies.** .......................................................................18
ARTICLE VII Objections to Claims; Provisions Governing Distributions .....................19
   7.1   **Objections to Claims.** ...................................................................19
   7.2   **Beneficiaries Subject to Avoidance Actions.**..............................19
   7.3   **Estimation.** ...................................................................................19
   7.4   **Means of Cash Payment.** ..............................................................19
   7.5   **Delivery of Distributions.**............................................................19
   7.6   **Tax Identification Numbers and OFAC Certifications.** ..............19
   7.7   **Undeliverable Distributions** ........................................................20
   7.8   **Withholding and Reporting Requirements.** ................................20
   7.9   **Time Bar to Cash Payments.**........................................................21
   7.10   **Interest.** .........................................................................................21
   7.11   **De Minimis Distributions.** ...........................................................21
   7.12   **Setoffs.** .........................................................................................21
   7.13   **Settlement of Claims and Controversies.** ...................................21
ARTICLE VIII Owner Trust Claims .................................................................................22
   8.1   **Bar and Waiver to Assert Owner Trust Claims.**.........................22
   8.2   **Disallowance of Owner Trust Claims.**........................................22
   8.3   **Debtor's Reservation of Rights.** ..................................................22
ARTICLE IX Means of Implementation of the Plan.........................................................22
   9.1   **Liquidating Trust.** ........................................................................22
   9.2   **Vesting of Assets.** ........................................................................23
   9.3   **[Intentionally Deleted]** ................................................................23

| | | |
|---|---|---:|
| 9.4 | **Liquidating Trust Asset Administration** | 23 |
| 9.5 | **Case Administration** | 23 |
| 9.6 | **Advisory Committee.** | 24 |
| 9.7 | **Liquidating Trustee's Professionals.** | 24 |
| 9.8 | **Quarterly Reports and Tax Returns.** | 24 |
| 9.9 | **Transfer, Prosecution, Preservation, and Resolution of Causes of Action.** | 24 |
| 9.10 | **Officers and Directors of the Debtor.** | 26 |
| 9.11 | **Dissolution of the Debtor.** | 26 |
| 9.12 | **Termination of Committee.** | 26 |
| 9.13 | **Filing of Additional Documents.** | 26 |
| 9.14 | **Notices.** | 26 |
| 9.15 | **Cancellation of Notes, Instruments, and Debentures.** | 28 |
| 9.16 | **Insurance Preservation.** | 28 |
| 9.17 | **Plan Implementation Transactions.** | 28 |
| ARTICLE X | Conditions Precedent to Confirmation and Effective Date | 28 |
| 10.1 | **Acceptance or Rejection of the Plan** | 28 |
| 10.2 | **Conditions Precedent to Confirmation Date of the Plan.** | 28 |
| 10.3 | **Conditions Precedent to the Effective Date of the Plan.** | 29 |
| 10.4 | **The Confirmation Order.** | 29 |
| ARTICLE XI | Effect of Plan Confirmation | 29 |
| 11.1 | **Binding Effect.** | 29 |
| 11.2 | **No Discharge of Claims.** | 29 |
| 11.3 | **Injunction** | 30 |
| 11.4 | **Terms of Existing Injunctions or Stays.** | 30 |
| 11.5 | **Exculpation.** | 30 |
| 11.6 | **Injunction Related to Exculpation.** | 31 |
| 11.7 | **Debtor Release.** | 31 |
| ARTICLE XII | Modification, Revocation or Withdrawal of the Plan | 32 |
| 12.1 | **Modification of Plan.** | 32 |
| 12.2 | **Revocation, Withdrawal, or Non-Consummation.** | 32 |
| ARTICLE XIII | Miscellaneous Provisions | 33 |
| 13.1 | **Payment of Statutory Fees.** | 33 |
| 13.2 | **Section 1146 Exemption.** | 33 |
| 13.3 | **Business Day.** | 33 |
| 13.4 | **Severability** | 33 |
| 13.5 | **Conflicts** | 33 |
| 13.6 | **Further Assurances** | 33 |
| 13.7 | **Filing of Additional Documents** | 33 |
| 13.8 | **Successors and Assigns.** | 33 |
| 13.9 | **Section Headings.** | 34 |
| 13.10 | **Further Information.** | 34 |
| 13.11 | **Governing Law.** | 34 |
| ARTICLE XIV | Jurisdiction | 34 |
| 14.1 | **Retention of Jurisdiction.** | 34 |

# SECOND AMENDED JOINT PLAN OF LIQUIDATION OF DEBTOR AND
# OFFICIAL COMMITTEE OF UNSECURED CREDITORS

RAS Data Services, Inc., as debtor and debtor-in-possession and the Official Committee of Unsecured Creditors, hereby submit this *Second Amended Joint Plan of Liquidation of Debtor and Official Committee of Unsecured Creditors* (the "**Plan**") pursuant to, *inter alia*, section 1123 of the Bankruptcy Code:

## ARTICLE I
## Definitions

The following terms, when used in the Plan shall, unless the context otherwise requires, have the following meanings, respectively[1]:

1.1 "**503(b)(9) Claims**" means any claims for the sale of goods to the Debtor that were received by the Debtor in the 20-day period prior to the Petition Date that are entitled to Administrative Claim treatment under section 503(b)(9) of the Bankruptcy Code, each of which were subject to the Bar Date Order and the General Bar Date.

1.2 "**Administrative Claim**" means a Claim of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, and includes: (a) any actual and necessary costs and expenses incurred by the Debtor after the Petition Date with respect to preserving the Estate and operating the Debtor's business; (b) any Professional Fee Claims approved by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code; (c) all UST Fees; and (d) 503(b)(9) Claims.

1.3 "**Administrative Claims Bar Date**" means thirty (30) calendar days from the Effective Date, unless such date falls on a day which is not a Business Day, in which case, the Administrative Claims Bar Date means the next successive day which is a Business Day.

1.4 "**Advisory Committee**" means the committee created pursuant to the Liquidating Trust Agreement, which shall provide advice and consultation to the Liquidating Trustee in the manner set forth in the Liquidating Trust Agreement, provided however, that no person who is listed in question 3 or 4 of the SOFA, or who is otherwise subject to a Cause of Action by the Debtor or Liquidating Trustee, as determined in the discretion of the Committee or Liquidating Trustee, as applicable, shall be eligible to serve on the Advisory Committee.

1.5 "**Allowed Claim**" or "**Allowed . . . Claim**" means a Claim, proof of which is filed by the applicable bar date established by the Bar Date Order or this Plan, or that has been, or is hereafter, scheduled by the Debtor as liquidated in amount and not disputed or contingent, and to which no objection to allowance thereof has been filed by the Debtor, Liquidating Trustee, or any party in interest, in each instance, within any applicable period fixed by the Bankruptcy Court, or as to which a Final Order allowing such Claim has been entered.

---

[1] Capitalized terms used within a specific defined term below but not ascribed meaning within such defined term means and refer to the definitions ascribed to them as applicable in the Plan.

1.6     "**Avoidance Actions**" means Causes of Action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced before or after the Confirmation Date to prosecute such Avoidance Actions. For clarity, Avoidance Actions consist of but are not limited to Causes of Action against (a) Persons listed on questions 3 and 4 of the SOFA, or (b) the parties who may be encompassed by the *Global Notes, Statement of Limitations and Specific Disclosures, and Reservation of Rights Regarding Debtor's Schedules and Statement of Financial Affairs*, filed concurrently therewith, as all such documents have been or may be supplemented or amended from time to time.

1.7     "**Ballot**" means the form distributed to each Holder of an impaired Claim who is entitled to vote on the Plan on which the Holder of such Claim is to indicate acceptance or rejection of the Plan.

1.8     "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

1.9     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or any court having jurisdiction over this Case or a proceeding arising in, or arising under or related to this Case.

1.10     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect.

1.11     "**Bar Date Order**" means that certain *Order Granting Motion for Entry of an Order (I) Setting Deadlines for Filing Proofs of Claim and (II) Approving Form, Manner, and Sufficiency of Notice* (Docket No. 159).

1.12     "**Beneficiaries**" means all Holders of Claims (including Professionals) that are to receive: (i) a Distribution from the Liquidating Trust on account of being the Holder of an Allowed Claim; or (ii) disbursement from the Trust of Reserved Cash that is required to be turned over to the Holder of an Erroneous Payment Claim thereof pursuant to a Final Order as set forth in section 5.5 of this Plan, if applicable.

1.13     "**Business Day**" means any day, other than as Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.14     "**Buyer**" means AllTranstek, L.L.C., as purchaser of substantially all of the Debtor's assets as approved pursuant the Sale Order.

1.15     "**Case**" means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled *In re RAS Data Services, Inc.*, Case No. 25-11837, currently pending before the Bankruptcy Court.

1.16     "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.17     "**Causes of Action**" means any claim, cause of action, chose in action, action, suit, demand, and any other debt, obligation, right, damage, remedy, controversy, agreement, promise,

2

lien, variance, trespass, power, privilege, license, franchise, judgment, third-party claim, subrogation claim, guaranty claim, contribution claim, reimbursement claim, indemnity claim, counterclaim, right of setoff or recoupment, crossclaim, claim objection, defense to claim, and liability whatsoever of any kind or character relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity belonging to the Estate; (b) any claim pursuant to sections 362, 502, and 510 of the Bankruptcy Code and any analogous provisions of applicable state law belonging to the Estate; (c) any claim, right or cause of action related to any and all Avoidance Actions; (d) any claim or defense including, but not limited to fraud, mistake, duress, and usury and any other defenses belonging to the Estate pursuant to section 558 of the Bankruptcy Code; and (e) any claim, right, or cause of action against any Insiders, officers, directors, recipient of a fraudulent transfer, and/or related entities.

1.18 "**Chief Restructuring Officer**" means Sandor Jacobson, appointed on or about July 11, 2025, and includes his capacity as Chief Executive Officer, Secretary, and Treasurer as appointed on the same date.

1.19 "**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.20 "**Class**" means a class of Holders of Claims as described in the Plan.

1.21 "**Committee**" means the Official Committee of Unsecured Creditors appointed in this Case on August 15, 2025, pursuant to section 1102 of the Bankruptcy Code (Docket No. 69).

1.22 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.23 "**Confirmation Hearing**" means the date on which the Bankruptcy Court holds a hearing pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

1.24 "**Confirmation Order**" means the order confirming this Plan.

1.25 "**De Minimis Distribution**" means any Distribution in an amount less than fifty dollars ($50.00).

1.26 "**Debtor**" means RAS Data Services, Inc., inclusive of its capacity as debtor in possession.

1.27 "**Disclosure Statement**" means the *Disclosure Statement with Respect to Second Amended Joint Plan of Liquidation of Debtor and Official Committee of Unsecured Creditors* associated with this Plan: (a) filed by the Debtor and the Committee; and (b) approved by the Bankruptcy Court on a preliminary or conditional basis prior to solicitation of acceptances of the Plan, and for which the Debtor will seek approval on a final basis at the Confirmation Hearing.

1.28 "**Disputed Claim**" or "**Disputed . . . Claim**" means:

a Claim that has not been listed by the Debtor in its Schedules or has been listed in the Schedules at zero, or has been listed in the Schedules as contingent, unliquidated or disputed and for which no proof of Claim has been timely filed with the Bankruptcy Court; or

if a proof, or request for payment, of such Claim has been filed: (i) a Claim for which no corresponding Claim is listed on the Debtor's books and records or in its Schedules or (ii) a Claim for which a corresponding Claim is listed in the Debtor's books and records, but the nature or amount of the Claim as asserted in the filed proof of Claim varies from the nature and amount of such Claim as it is listed on in the Debtor's books and records or its Schedules; or

a Claim otherwise subject to a formal objection filed in the Case, a request for estimation filed in the Case, or otherwise disputed (in writing delivered to the Holder of such Claim) by the Debtor, Liquidating Trustee, or any party-in-interest, in accordance with applicable law; and (ii) which such written objection has not been withdrawn, resolved or overruled by a Final Order of the Bankruptcy Court.

For the avoidance of doubt, the Debtor, the Committee and the Liquidating Trustee reserve the right to object to any Claim not otherwise allowed by Final Order of the Court in accordance with the Plan, the Liquidating Trust Agreement, the Bankruptcy Code and the Bankruptcy Rules.

1.29 "**Distribution**" means the Cash or other value distributed to Holders of Allowed Claims or Beneficiaries, as applicable, pursuant to the Plan and/or the Liquidating Trust Agreement.

1.30 "**Effective Date**" means a date selected by the Plan Proponents, which shall be a Business Day after the Confirmation Date on which all conditions specified in Section 10.3 herein have been satisfied (or waived in accordance therewith); provided, however, that if a stay of the Confirmation Order is in effect on such day, then the Effective Date shall be the first day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

1.31 "**Enforcement Proceeding**" means a civil or criminal proceeding brought by the state or federal government against the Debtor, its former chief executive officer, or any individual acting in concert with them based on their pre-Petition Date conduct for which, *inter alia*, restitution or similar compensatory relief is sought for Holders of Claims, including Owners, incurring financial losses resulting from such conduct.

1.32 "**Erroneous Payment Claim Bar Date**" means twenty-one (21) days from the Effective Date, unless such date falls on a day which is not a Business Day, in which case, the Erroneous Payment Claim Bar Date means the next successive day which is a Business Day.

1.33 "**Erroneous Payment Claims**" means Claims listed on *Schedule 1.33* attached to this Plan and hereby expressly incorporated herein and made a part hereof. Notwithstanding anything to the contrary in this Plan, the designation of an Erroneous Payment Claim in *Schedule*

4

*1.33* does not constitute an admission by the Plan Proponents or an adjudication by the Bankruptcy Court that any funds comprising an Erroneous Payment Claim are not property of the Estate or that such funds were paid in error.

1.34 "**Equity Security**" shall have the meaning provided by section 101(16) of the Bankruptcy Code.

1.35 "**Equity Security Holder**" shall have the meaning provided by section 101(17) of the Bankruptcy Code.

1.36 "**Estate**" means the estate of the Debtor created in this Case pursuant to section 541 of the Bankruptcy Code.

1.37 "**Exculpated Party**" means, collectively, and in each case in its capacity as such: (a) the Debtor and its Estate; (b) the Committee and its individual members; (c) the Debtor's and the Committee's Professionals; (d) the Independent Director; (e) the Chief Restructuring Officer; (f) Livingstone Partners LLC; and (g) with respect to each of the foregoing entities in clauses (a) through (f) each such entity's current and former affiliates, direct and indirect subsidiaries, and direct and indirect equity holders and/or partners, and each of their respective current and former directors, officers, equity holders, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, trustees, investment bankers, and other professional advisors, provided, however, that Michael Calomino is expressly excluded from the definition of Exculpated Party and shall not be deemed to be an Exculpated Party.

1.38 "**Executory Contract**" means an executory contract or unexpired lease, the assumption, rejection and assignment of which are governed by, *inter alia*, section 365 of the Bankruptcy Code.

1.39 "**Final Order**" means an order or judgment as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending, excluding the right to seek relief pursuant to Federal Rule of Civil Procedure 60, as incorporated into the Bankruptcy Rules pursuant to Bankruptcy Rule 9024.

1.40 "**General Bar Date**" means January 5, 2026, the bar date by which a proof of Claim must be filed, except for: (a) claims of governmental units; (b) claims resulting from a subsequent amendment to the Schedules; and (c) claims based on the Debtor's rejection of an Executory Contract, as established by the Bar Date Order.

1.41 "**General Unsecured Claim**" means any Unsecured Claim, arising prior to the Petition Date, that is not a Professional Fee Claim, Other Administrative Claim, Priority Tax Claim, Priority Claim, Infinity Claim, Erroneous Payment Claim, or Interest.

1.42 "**Governmental Bar Date**" means January 29, 2026, the bar date by which a proof of Claim of a governmental unit must be filed, as established by the Bar Date Order.

1.43 "**Holder**" means any Person owning or otherwise having a legal or equitable right to assert and enforce a Claim or Interest.

1.44 "**Impaired**" means any Class, or any Claim or Interest in a Class, that is impaired within the meaning of section 1124 of the Bankruptcy Code. Under the Plan, Classes 2, 3, 4, and 5 are Impaired.

1.45 "**Independent Director**" means Michael L. Gesas, who was appointed as the sole independent director of the Debtor on or about July 28, 2025.

1.46 "**Infinity**" means, collectively, Infinity Transportation 2024, LLC, Infinity Transportation 2023, LLC, Infinity Transportation 2022, LLC, Infinity Transportation 2020-1, LLC, Infinity Transportation 2020-2, LLC, Infinity Transportation 2019-1, LLC, Infinity Transportation 2019-2, LLC, Infinity Transportation 2018-1, LLC, Infinity Transportation 2018-2, LLC, Infinity Transportation 2016-1, LLC, Infinity Transportation III LLC, Infinity Rail Canada Portfolio 6, ULC, Infinity Rail Canada Portfolio 7, ULC, Arc Rail 2013-1, LLC, Arc Rail Canada Four, ULC, Arc Rail Canada Sub One, ULC, Arc Rail Canada Two, ULC, Arc Rail Canada Five, ULC, Arc Rail Canada Three, ULC, and Infinity Transportation Equipment Leasing, LLC.

1.47 "**Infinity Adversary Proceeding**" means the adversary proceeding initiated by Infinity against the Debtor pending before the Bankruptcy Court as Adv. No. 25-00244.

1.48 "**Infinity Claims**" means all Claims and Causes of Action of Infinity that were asserted by, or that could have been asserted by, Infinity in the Case, including without limitation all Infinity Trust Claims.

1.49 "**Infinity Contingent Payment**" means the definition ascribed to it in section 5.4.2 of the Plan.

1.50 "**Infinity Fixed Payment**" means the definition ascribed to it in section 5.4.2 of the Plan.

1.51 "**Infinity Remaining Claim**" means the definition ascribed to it in section 5.4.2 of the Plan.

1.52 "**Infinity Trust Claim**" means all claims or Causes of Action of Infinity that have been asserted in, or that could have been asserted in, the Infinity Adversary Proceeding asserting that: (a) the Debtor holds property in trust for the benefit of Infinity and that such property is not property of the Estate; or (b) Infinity is entitled to a constructive trust over property of the Estate; or (c) Infinity is entitled to any Distribution from the Estate greater than that provided by this Plan to Holders of Allowed Class 4 Claims.

1.53 "**Initial Distribution**" shall mean the date that is no later than thirty-five (35) days after the Effective Date, on which the Debtor or Liquidating Trustee, as applicable, shall make a Distribution to all Allowed Claims after allocating for Reserved Cash.

1.54 "**Insider**" shall have the meaning provided by section 101(31) of the Bankruptcy Code.

1.55 "**Interest**" means the legal, equitable, contractual and other rights of the Holders of any Equity Security in the Debtor, including the rights of any entity to purchase or demand the

issuance of any Equity Securities, including: (a) conversion, exchange, voting, participation and dividend rights; (b) liquidation preferences; (c) stock options, warrants and put rights; and (d) share-appreciation rights.

1.56 "**Lien**" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.57 "**Liquidating Trust**" means a common law grantor trust to be established pursuant to the Plan, the Liquidating Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the Beneficiaries. The Liquidating Trust shall liquidate and distribute the Liquidating Trust Assets, in accordance with this Plan and the Liquidating Trust Agreement.

1.58 "**Liquidating Trust Agreement**" means the agreement to be executed by no later than the Effective Date among the Debtor, the Committee and the Liquidating Trustee, which shall govern the obligations of the Liquidating Trustee with respect to oversight of the distribution of the Net Trust Proceeds of the Liquidating Trust Assets, as further set forth in the Liquidating Trust Agreement and this Plan.

1.59 "**Liquidating Trust Assets**" means those assets to be transferred to and vested in the Liquidating Trust pursuant to this Plan and the Confirmation Order, plus all proceeds, earnings and replacements arising from or relating to these assets and all other assets acquired by the Liquidating Trust at any time. The Liquidating Trust Assets shall include (but not be limited to): (a) all Cash remaining in the Estate; (b) all Causes of Action, including the right to prosecute same and all proceeds thereof; (c) all pending litigation claims, regardless of venue, in which the Debtor is a plaintiff; (d) all other remaining tangible and intangible personal property of the Debtor; (e) all rights of the Debtor under the Plan, the Confirmation Order and all other orders entered by the Bankruptcy Court in the Case on or prior to the Confirmation Date; and (f) all books and records related to the Estate that are in the Debtor's possession, custody and control as of the Confirmation Date not otherwise sold to the Buyer.

1.60 "**Liquidating Trustee**" means John B. Pidcock of Oxford Restructuring Advisors, or any successor designated by the Advisory Committee, subject to approval by the Bankruptcy Court, to serve as custodian for the Liquidating Trust and to oversee the liquidation and distribution of the Liquidating Trust Assets held therein for the benefit of the Beneficiaries, pursuant to the Plan, the Confirmation Order and the Liquidating Trust Agreement.

1.61 "**Liquidating Trustee's Expenses**" means the reasonable fees, costs and expenses incurred by the Liquidating Trustee and any Professionals retained by him or her in connection with the performance of his or her duties and responsibilities under the Plan and Liquidating Trust Agreement, as well as any other reasonable and necessary costs of administration of the Liquidating Trust, including UST Fees incurred during the post-Confirmation Date period and the reasonable fees, costs and expenses of Debtor and its Professionals for work performed at the direction of the Liquidating Trustee in furtherance of the Plan or to support the efforts of the Liquidating Trustee, all of which may be paid from the Liquidating Trust Assets.

1.62 "**MSA**" means a master services agreement (whether denominated "Master Services Agreement" or otherwise), under which the Debtor agreed to provide management services related to railcars, whether or not such agreement is in existence as of the date of this Plan.

1.63 "**Net Trust Proceeds**" means the Cash proceeds received by the Liquidating Trustee from time to time from the liquidation or other disposition of the Liquidating Trust Assets, net of (a) the reasonable or necessary costs of such sale or other disposition, and (b) Reserved Cash.

1.64 "**Net Sale Proceeds**" means the Cash proceeds of the Sale.

1.65 "**Original Budget Order**" means that certain *Order Granting Motion of the Debtor to Use Funds to Purse Sale and for Shortened Notice Thereof* entered by the Bankruptcy Court on September 12, 2025 (Docket No. 109).

1.66 "**Other Administrative Claim**" means an Administrative Claim that is not a Professional Fee Claim.

1.67 "**Owner**" means any party to an MSA other than the Debtor.

1.68 "**Owner Trust Claim**" means any Claim or Cause of Action asserted, or that could be asserted, by an Owner other than Infinity, that is substantially similar to the Infinity Trust Claims, including without limitation any Claim or Cause of Action contending that property is not property of the Estate, should be subject to a constructive trust, or should be entitled to a Distribution greater than that provided to Holders of Allowed Class 4 Claims, as a result of an MSA or the course of dealing thereunder.

1.69 "**Person**" shall include an "entity," as defined by section 101(15) of the Bankruptcy Code.

1.70 "**Petition Date**" means the date of the filing of the Debtor's Case, or August 1, 2025.

1.71 "**Plan**" means this *Second Amended Plan of Liquidation of Debtor and the Official Committee of Unsecured Creditors* as set forth herein or as it may be modified or amended.

1.72 "**Plan Proponents**" means the Debtor and the Committee.

1.73 "**Pre-Petition-Date Professionals**" means those professional firms employed by the Debtor prior to the Petition Date to provide restructuring advisory and/or legal services, consisting of Adelman & Gettleman Ltd., Plante Moran, PLLC, and Goldstine Skrodzki, Russian, Nemec and Hoff, Ltd.

1.74 "**Priority Claim**" means a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the Bankruptcy Code. With respect to the Claims of employees or former employees of the Debtor, such Claims shall constitute Priority Claims only to the extent permissible under sections 507(a)(4) and (a)(5) of the Bankruptcy Code or prior order of the Bankruptcy Court.

1.75 "**Priority Tax Claims**" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.76 "**Professional Fee Claims**" means Claims of Professional Persons for compensation for services rendered in this Case prior to the Confirmation Date pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.77 "**Professional**" or "**Professional Persons**" means persons, including attorneys, accountants, investment bankers, financial advisors and other professional advisors retained by the Debtor, the Committee or the Liquidating Trustee, or to be compensated pursuant to, sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.78 "**Pro Rata**" means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included, provided, however, that the calculation of Pro Rata shall take into account any Distributions made, or withheld but allocated, on account of a particular Allowed Claim.

1.79 "**Released Party**" means, collectively, and in each case in its capacity as such: (a) all Professionals; (b) the Pre-Petition-Date Professionals; (c) the Chief Restructuring Officer; and (d) the Independent Director.

1.80 "**Releases**" means the mutual releases more fully described in Section 11.7 of the Plan.

1.81 "**Reserved Cash**" means all Cash remaining in the Estate on the Effective Date that is reserved or earmarked under this Plan for payment of Allowed Administrative Claims, Allowed Priority Tax Claims, the Infinity Fixed Payment, Allowed Erroneous Payment Claims, Disputed Claims, and estimated fees, costs, and expenses (in the initial amount of $200,000.00) of the Liquidating Trust and its Professionals.

1.82 "**Sale**" means the sale of substantially all of the Debtor's assets to Buyer as more fully described in that certain Asset Purchase Agreement by and between Debtor and Buyer dated as of December 23, 2025 and approved pursuant to the Sale Order.

1.83 "**Sale Order**" means that certain *Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Interests Including Liens, Claims, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (Docket No. 169) entered by the Bankruptcy Court on December 23, 2025.

1.84 "**Schedules**" means the Schedules of Assets and Liabilities (Docket No. 80) filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules including the *Global Notes, Statement of Limitations and Specific Disclosures, and Reservation of Rights Regarding Debtor's Schedules and Statement of Financial Affairs*, filed concurrently therewith, as they have been or may be supplemented or amended from time to time.

9

1.85 "**Secured Claim**" means any Claim that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or any Claim that is subject to a Lien.[2]

1.86 "**SOFA**" means the Debtor's Statement of Financial Affairs (Docket No. 82) filed in the Case by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules including the *Global Notes, Statement of Limitations and Specific Disclosures, and Reservation of Rights Regarding Debtor's Schedules and Statement of Financial Affairs*, filed concurrently therewith, as they have been or may be supplemented or amended from time to time.

1.87 "**Subsequent Distribution**" means any Distribution made after the Initial Distribution.

1.88 "**Unsecured Claim**" means a Claim not secured by a Lien on property of the Estate or which is otherwise not a Secured Claim (including any Claim that is not subject to a right of setoff against Debtor or its Estate under section 553 of the Bankruptcy Code).

1.89 "**U.S. Trustee**" means the United States Trustee.

1.90 "**UST Fees**" means all fees and charges properly assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.91 "**Victim Recovery Funds**" means any Cash received by the Estate or the Liquidating Trust, or otherwise payable by a governmental unit to the Debtor, the Estate, the Liquidating Trustee, or the Liquidating Trust, pursuant to a court order directing such Cash to be distributed in accordance with the Plan on account of losses suffered by Holders of Claims arising from actions of the Debtor, its former chief executive officer, or any person acting in concert therewith. For the avoidance of doubt: (a) recoveries obtained by the Debtor, the Committee, or the Liquidating Trustee as a result of the prosecution of Causes of Action pursuant to this Plan and the Liquidating Trust Agreement shall not constitute Victim Recovery Funds, nor shall such Causes of Action constitute Enforcement Proceedings; and (b) nothing contained in this Plan is intended to preclude Holders of Claims from pursuing, enforcing, or collecting on account of their own rights in, an Enforcement Proceeding.

1.92 **Rules of Interpretation and Computation of Time**. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to any entity as a Holder of a Claim or Interest includes the

---

[2] There are no Secured Claims with conventional Liens in the Case.

entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
### Unclassified Claims

Section 1123(a)(1) of the Bankruptcy Code provides that Administrative Claims and Priority Tax Claims are not to be classified under a plan. Accordingly, Allowed Administrative Claims (consisting of Allowed Professional Fee Claims and Allowed Other Administrative Claims) and Allowed Priority Tax Claims are not classified under the Plan.

## ARTICLE III
### Designation of Classified Claims and Interests

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Claims and Interests are classified as follows:

3.1    **Class 1 Claims** shall consist of all Allowed Priority Claims.

3.2    **Class 2 Claims** shall consist of all Allowed Infinity Claims.

3.3    **Class 3 Claims** shall consist of all Allowed Erroneous Payment Claims.

3.4    **Class 4 Claims** shall consist of all Allowed General Unsecured Claims.

3.5    **Class 5 Interests** shall consist of the Interests of Equity Security Holders.

## ARTICLE IV
### Impairment of Classes

4.1    **Impaired Classes of Claims Entitled to Vote**. Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Classes 2, 3, and 4 are Impaired, and Holders of Allowed Claims in that Class shall be entitled to vote to accept or reject this Plan.

4.2    **Classes Deemed to Accept the Plan**. Class 1 is unimpaired by this Plan and Holders of such Allowed Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. The votes of the Holders of these Claims will therefore not be solicited.

4.3    **Classes Deemed to Reject the Plan**. Holders of Interests in Class 5 will not receive or retain any distribution under the Plan on account of their Interests. Pursuant to section 1126(g)

11

of the Bankruptcy Code, Class 5 is Impaired and is conclusively presumed to have rejected this Plan, and the votes of Equity Security Holders holding Class 5 Interests will therefore not be solicited.

4.4 **Cram Down**. The Plan Proponents will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b)(2)(C) of the Bankruptcy Code with respect to Class 5, which is deemed to have rejected the Plan.

4.5 **Elimination of Vacant Classes**. Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V
### Treatment of Claims and Interests

5.1 **Allowed Other Administrative Claims and Allowed Professional Fee Claims.**

5.1.1 **Applications for Administrative Claims**. All Persons requesting allowance and payment of Administrative Claims shall file with the Bankruptcy Court an application, in accordance with section 503(a) of the Bankruptcy Code, for allowance of such Administrative Claim, along with all documentation supporting such claim, no later than the Administrative Claims Bar Date. Objections to such applications for payment (whether by Persons requesting payment of Other Administrative Claims or Professional Persons requesting payment of Professional Fee Claims), if any, must be written, filed with the Bankruptcy Court and served on the applicable parties within twenty-one (21) days after such application is filed. Failure by a Person to timely file a request for allowance of an Other Administrative Claim shall result in such Other Administrative Claim being disallowed and expunged in its entirety, with the affected Holder having been deemed to waive its right to a Distribution from the Estate or the Liquidating Trust. Failure by a Professional to timely file a request for allowance of a Professional Fee Claim, unless otherwise excused by the Court for good cause shown, shall result in such Professional Fee Claim being disallowed and expunged in its entirety, with the affected Professional having been deemed to waive its right to a Distribution from the Estate and the Liquidating Trust.

5.1.2 **Payment**. Each Allowed Administrative Claim (to the extent not already paid pursuant to any order entered by the Bankruptcy Court) shall be paid by the Debtor or the Liquidating Trustee (as applicable): (a) in full, in Cash, in such amount as such Administrative Claim is allowed by the Bankruptcy Court on or before the Effective Date or the date upon which such Administrative Claim is allowed or (b) upon such other terms as may be agreed upon between the Holder of such Administrative Claim and the Debtor or the Liquidating Trustee (as applicable). All UST Fees due and owing shall be paid on the Effective Date. The Liquidating Trust and Liquidating Trustee shall be liable for the payment of all UST Fees, if any, after the Effective Date. The Liquidating Trust and Liquidating Trustee shall provide the United States Trustee with post-confirmation quarterly reports that shall include all of their respective disbursements for that quarter.

5.2     **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid by the Liquidating Trustee in accordance with the Liquidating Trust Agreement (and in accordance with sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code), either: (a) in full, in Cash, within forty-five (45) days of the Effective Date; or (b) over time in accordance with section 1129(a)(9)(C)(ii) of the Bankruptcy Code, in the Liquidating Trustee's discretion.

5.3     **Class 1 Claims**.

5.3.1     Classification: Class 1 consists of all Allowed Priority Claims against the Debtor.

5.3.2     Treatment: On the later of the date of any Distribution, or the date on which a Priority Claim becomes an Allowed Priority Claim or is otherwise payable, each Holder of an Allowed Priority Claim shall receive (a) Cash in an amount equal to the unpaid portion of the Allowed Priority Claim, or (b) such other treatment as may be agreed to between the Holder of an Allowed Priority Claim and the Debtor.

5.3.3     Voting: Class 1 is unimpaired and is deemed to accept the Plan. Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

5.4     **Class 2 Claims**.

5.4.1     Classification: Class 2 consists of all Allowed Infinity Claims against the Debtor.

5.4.2     Treatment: Infinity shall have an Allowed Claim in the aggregate amount of $10,580,272.00. Notwithstanding that the Debtor will not receive a discharge of its obligations under this Plan, Infinity shall be paid, and will be deemed to have accepted, in full satisfaction of the Allowed Infinity Claims, the following treatment:

(a)     Infinity shall receive Cash in the amount of $5,600,000, payable as follows: (i) within five (5) business days of the Effective Date, an amount equal to $3,000,000; and (ii) upon the Initial Distribution to Allowed Holders of General Unsecured Claims in Class 4 (and if applicable, Class 3 Claims who receive "Treatment A" under section 5.5.3 of this Plan as part of such Initial Distribution), an amount equal to $2,600,000 (payments required under subsections (a)(i) and (a)(ii) of this section 5.4.2 are collectively referred to herein as the "**Infinity Fixed Payment**").

(b)     Subject to and conditioned upon Infinity's receipt of the Infinity Fixed Payment, Infinity shall be deemed to have a remaining Claim in the amount of $4,980,272 (the "**Infinity Remaining Claim**"). On account of the Infinity Remaining Claim, Infinity shall receive Cash at the time of any Distribution, solely on account of its Remaining Claim, payable as follows:  (i) subject to and expressly conditioned upon, and solely to the extent of, Class 3 Claims receiving "Treatment A" under section 5.5.3 of this Plan, Infinity shall be entitled to participate in a Distribution limited to the extent of its Pro Rata share, *pari passu* with Holders of Allowed Class 3 Claims receiving such "Treatment A" and Holders of Allowed Class 4 Claims, relating and limited exclusively to any Cash comprising Erroneous Payment Claims receiving such "Treatment A" and becoming property of the Estate; and (ii) subject to and conditioned upon, and solely to the

13

extent of, any Distribution of Victim Recovery Funds, Infinity shall be entitled to participate in such Distribution or payment, as the case may be, Pro Rata and *pari passu* with Holders of Allowed Class 3 Claims receiving "Treatment A" under section 5.5.3 of this Plan and Holders of Allowed Class 4 Claims, of any Victim Recovery Funds (payments required under subsections (b)(i) and (b)(ii) of this section 5.4.2, if any, are collectively referred to herein as the "**Infinity Contingent Payment**"). No representations have been made by the Debtor, the Committee, or any Professional Persons to Infinity regarding the likelihood of an Infinity Contingent Payment, and Infinity acknowledges such payment may never occur, and in such event, there shall be no Infinity Contingent Payment and this Plan shall remain otherwise effective pursuant to its other terms and conditions.

(c)     The calculation of Pro Rata shares as set forth in section 5.4.2(b) of this Plan shall be based upon and take into account: (i) the amount of the Infinity Remaining Claim; (ii) any payments made to Holders of Allowed Class 3 Claims receiving "Treatment A" under section 5.5.3 of this Plan, or otherwise reserved for such payments; and (iii) any payments made to Holders of Allowed Class 4 Claims or otherwise reserved for such payments;.

(d)     Except for the treatment provided for this section 5.4.2, Infinity shall irrevocably and unconditionally be deemed to have waived the Infinity Claim and the right to any further Distributions from the Estate or the Liquidating Trust, and shall in no event participate in any other Distributions, including but not limited to Distributions made on account of recoveries of Causes of Action.

5.4.3     Release by Infinity: Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, and subject only to receipt by Infinity of the Infinity Fixed Payment and the other distributions and rights to which Infinity is entitled under this Plan, and to the fullest extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the rights and payment to Infinity as set forth in this Plan constitute satisfaction in full of the Infinity Claims, and Infinity hereby releases the Debtor, its Estate, the Committee and its members, and the Released Parties from any and all Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, and other rights and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted, based on, relating to, or arising from, the Infinity Claims, the Debtor or the Estate, the conduct of the Debtor's business, the business relationship between the Debtor and Infinity, the conduct of the Pre-Petition-Date Professionals, the formulation, preparation, solicitation, negotiation, filing, or pursuit of confirmation and consummation of the Plan and Disclosure Statement, or the filing and prosecution of the Case; provided, however, that the foregoing provisions of these releases shall not operate to waive or release any rights, including without limitation rights of payment, in favor of Infinity expressly set forth in and preserved by the Plan, *e.g.*, the right to participate in Claims receiving "Treatment A" under section 5.5.3 of the Plan and any right to participate in any Victim Recovery Funds. Infinity further acknowledges that any Person coming within the purview of this release may plead release and satisfaction, among other affirmative defenses, as a defense to any action brought by Infinity falling within the terms of this release. This provision does not release the Debtor, the Committee and its members, the Released Parties, or the Liquidating Trust from their respective obligations under this Plan.

14

5.4.4 <u>Release by the Debtor, the Estate, the Committee and its Members, and the Released Parties</u>: Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, the Committee and its members, and the Released Parties hereby release Infinity, its affiliates, subsidiaries, and its and their parents, officers, directors, employees, agents, and professionals, from any and all Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, and other rights and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted, based on, relating to, or arising from: the business and contractual relationship between the Debtor and Infinity; the Case; the conduct of Infinity pre- or post-petition vis-à-vis the Debtor, its Estate, the Committee and its members, or the Released Parties; or the filing or prosecution of the Infinity Claims and the Infinity Adversary Proceeding; including, without limitation, all Causes of Action and Avoidance Actions. This provision does not release Infinity from its obligations under the Plan.

5.4.5 <u>Withdrawal of Motion to Convert</u>: If, within five (5) Business Days after the Confirmation Date, the *Infinity Lessors' Motion for Entry of an Order: Converting Debtor's Chapter 11 Case to Case Under Chapter 7; and (b) Approving Shortened Notice*, Docket No. 215, has not yet been denied or withdrawn, Infinity shall file a notice of withdrawal of such motion on the docket of the Case.

5.4.6 <u>Dismissal of Infinity Adversary Proceeding</u>: Within five (5) Business Days after receipt of the Infinity Fixed Payment, Infinity shall take all actions necessary to cause dismissal of the Infinity Adversary Proceeding, with prejudice, with all parties to the Infinity Adversary Proceeding to bear their own costs, expenses, and legal fees.

5.4.7 <u>Release of Restricted Funds</u>. On the Effective Date, this Plan shall constitute and satisfy the requirements of a written agreement between the Debtor, the "Infinity Lessors" (as defined in the Original Budget Order), and the Committee removing all restrictions and prohibitions precluding the Debtor from using or distributing the "Restricted Funds" (as defined in the Original Budget Order) without further act, deed, or order of the Bankruptcy Court.

5.4.8 <u>Bankruptcy Rule 9019 Settlement</u>. The terms of Section 5.4 of this Plan are intended to constitute compromise of a controversy as set forth in sections 7.13 and 11.7 of this Plan.

5.4.9 <u>Payments to Infinity</u>. The Debtor or the Liquidating Trustee (as applicable) shall pay the Infinity Fixed Payment and the Infinity Contingent Payment as lump sums, rather than allocating each such payment among the various entities constituting Infinity. The Infinity Fixed Payment and the Infinity Contingent Payment shall be directed to Infinity Transportation Equipment Leasing, LLC, Attn: Ellen Stewart, Accounting Director, 201 17th Street, Suite 401, Atlanta, GA 30363, or to such other payee or address as Infinity may direct in a written notice to the Debtor or the Liquidating Trustee.

5.4.10 <u>Enforcement Proceeding Rights</u>. Nothing contained in this Plan is intended to preclude Infinity from pursuing, enforcing, or collecting on account of its own rights in, an Enforcement Proceeding.

5.4.11 <u>Voting</u>: Class 2 is impaired. Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

5.5 **Class 3 Claims**.

5.5.1 <u>Classification</u>: Class 3 consists of all Erroneous Payment Claims against the Debtor.

5.5.2 <u>Erroneous Payment Claim Process</u>. Any Holder of an Erroneous Payment Claim seeking allowance of an Erroneous Payment Claim must file a motion with the Court on or before the Erroneous Payment Claims Bar Date. Said motion shall: (a) provide proper service to all parties of record in the Bankruptcy Case; (b) comply with applicable Bankruptcy Rules and local rules of the Bankruptcy Court; (c) attach as exhibits all documents supporting the Erroneous Payment Claim; and (d) explain in sufficient detail the legal and factual basis for why funds paid to or held by the Estate on account of such Erroneous Payment Claims are not property of the Estate or are otherwise subject to a constructive trust in favor of such Holder, and should receive "Treatment B" as set forth in section 5.5.3 of this Plan. At the initial hearing on such motion, the Bankruptcy Court shall set a briefing schedule thereon, and to the extent appropriate, schedule a trial on the matter. Any party in interest, including the Liquidating Trustee, may oppose such motion and may be heard at any hearings or trials on the matter. Failure by a Holder of an Erroneous Payment Claim to file a motion in compliance with this section 5.5.2 shall be deemed an unconditional and irrevocable waiver of such Holder's right to assert an Erroneous Payment Claim, with such Erroneous Payment Claim being provided "Treatment A" as set forth in section 5.5.3 of this Plan.

5.5.3 <u>Treatment</u>: Cash in an amount equal to each of the Erroneous Payment Claims shall constitute Reserved Cash until such time as a Final Order is entered adjudicating the rights of the applicable Holder of an Erroneous Payment Claim pursuant to section 5.5.2 of this Plan, whereupon the applicable Holder's Erroneous Payment Claim shall receive either "Treatment A" or "Treatment B," as follows:

> **Treatment A (Estate/Liquidating Trustee Prevails):** To the extent funds alleged to have been paid erroneously to the Debtor in an Erroneous Payment Claim are deemed by a judgment and Final Order to be property of the Estate; not subject to a constructive trust for the benefit of the Holder of such Erroneous Payment Claim; or not otherwise payable to the Holder of such Erroneous Payment Claim, then in such event, the applicable amount of Reserved Cash shall be deemed property of the Estate without further act or deed, and the Holder of such Erroneous Payment Claim will be considered to have the equivalent of a General Unsecured Claim in the allowed amount of such Erroneous Payment Claim, if any, and receive Cash, in an amount equal to its Pro Rata share, *pari passu* with the Infinity Contingent Payment and Allowed Class 4 Claims, in accordance with this Plan, from the Net Trust Proceeds, after satisfaction of Allowed Administrative Claims,

Allowed Priority Tax Claims, Allowed Class 1 Claims, and the Infinity Fixed Payment.

**Treatment B (Holder(s) of Erroneous Payment Claims Prevail):** To the extent funds alleged to have been paid erroneously to the Debtor in an Erroneous Payment Claim are deemed by a judgment and Final Order to be property of the Holder of such Erroneous Payment Claim and not property of the Estate in the Debtor's possession on or after the Petition Date, as applicable, or subject to a constructive trust for the benefit of the Holder of such Erroneous Payment Claim and such funds were in the Debtor's possession on or after the Petition Date, as applicable, the Holder of such Erroneous Payment Claim shall receive Cash in the amount specified in such Final Order within ten (10) Business Days of such Final Order becoming a Final Order.

5.5.4   Voting: Class 3 is impaired. Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

5.6   **Class 4 Claims**.

5.6.1   Classification: Class 4 consists of all Allowed General Unsecured Claims against the Debtor. Reference is also made to Article VIII of this Plan with respect to any Holder of a General Unsecured Claim and Owner Trust Fund Claims.

5.6.2   Treatment: Allowed Class 4 Claims shall be paid Pro Rata, *pari passu* with the Infinity Contingent Payment (if any) and Allowed Class 3 Claims receiving "Treatment A," from the Net Trust Proceeds, after satisfaction of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, the Infinity Fixed Payment, and Allowed Class 3 Claims receiving "Treatment B." For the avoidance of doubt, the Infinity Remaining Claim is only included in Pro Rata Distributions of: (a) funds distributed as a result of Allowed Class 3 Claims receiving "Treatment A," or (b) Victim Recovery Funds.

5.6.3   Voting: Class 4 is impaired. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.7   **Class 5 Interests**.

5.7.1   Classification: Class 5 consists of all Equity Securities held in the Debtor

5.7.2   Treatment: Holders of Class 5 Interests shall not receive a distribution under the Plan, and their Equity Securities shall be canceled and extinguished as of the Effective Date.

5.7.3   Voting: Class 5 is impaired and deemed to reject the Plan. Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE VI
### Treatment of Executory Contracts

6.1 **Contracts Deemed Rejected**. Other than as explicitly set forth herein, each Executory Contract of the Debtor that has not expired by its own terms or been assumed (or assumed and assigned to Buyer) prior to the Confirmation Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Confirmation Date.

6.2 **Bar Date for Rejection Damages**. All proofs of claim with respect to Claims arising from the rejection of Executory Contracts pursuant to Section 6.1 of this Plan shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court by no later than twenty-one (21) days after the Confirmation Date. Claims arising from the rejection of Executory Contracts pursuant to Section 6.1 of this Plan, for which the Holder thereof fails to timely file a proof of claim, shall be released, discharged and forever barred from assertion against the Debtor, its Estate or its property, the Liquidating Trust, or the Liquidating Trust Assets.

6.3 **Insurance Policies**. Notwithstanding anything to the contrary in this Plan or the Confirmation Order, unless any insurance policies have been expressly rejected, or assumed and assigned to Buyer, pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), any insurance policies of the Debtor in which the Debtor is or was an insured party (including any policies covering directors' or officers' conduct), or any related insurance agreement issued prior to the Petition Date, shall continue in effect after the Effective Date pursuant to the respective terms and conditions and shall be treated as if assumed. All rights of the Debtor under any insurance policies shall automatically become vested in the Liquidating Trust without necessity for further approvals or orders. To the extent that any insurance policies or related insurance agreements are deemed executory contracts, then, unless such policies have been rejected pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), notwithstanding anything to the contrary in this Plan, this Plan shall constitute a motion to assume, assume and assign, permit "ride through," or ratify such insurance policies or insurance agreements. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption is in the best interests of the Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed upon by the parties prior to the Effective Date, no payments shall be required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any insurance policy or insurance agreement assumed, or assumed and assigned, pursuant to this Section 6.3. **Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to this Case, this Plan, or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for any insured Claims or Causes of Action.** Without limiting the generality of the foregoing, all directors' and officers' liability insurance policies in effect as of the Confirmation Date shall be deemed assumed and shall not be rejected.

# ARTICLE VII
## Objections to Claims; Provisions Governing Distributions

7.1 **Objections to Claims**. The Liquidating Trustee shall have standing to file objections to Claims, even if such Claims were scheduled by the Debtor as undisputed, liquidated, or non-contingent. If the Liquidating Trustee has objected to a Claim, Distributions to the affected Holder will be withheld only with respect to the amount actually in dispute, and such objection shall not affect payments or distributions under the Plan on the undisputed portion of the Claim.

7.2 **Beneficiaries Subject to Avoidance Actions**. The Liquidating Trustee may, as otherwise allowed pursuant to section 502(d) and (h) of the Bankruptcy Code in his or her discretion, withhold Distributions to Beneficiaries who are the subject of: (a) a filed Avoidance Action, or (b) a demand letter threatening initiation of an Avoidance Action, in each case, until such time as the Avoidance Action or demand letter has been fully and finally resolved.

7.3 **Estimation**. The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor, Committee, or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4 **Means of Cash Payment**. Cash payments, made pursuant to the Plan and the Liquidating Trust Agreement, shall be in U.S. dollars and, at the option and in the sole discretion of the Liquidating Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Liquidating Trustee.

7.5 **Delivery of Distributions**. Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules, unless superseded by the address set forth on a timely filed proof of Claim or some other writing filed with the Bankruptcy Court and served upon the Liquidating Trustee and/or the Debtor.

7.6 **Tax Identification Numbers and OFAC Certifications**. Notwithstanding anything in the Plan to the contrary, prior to making Distributions hereunder, the Liquidating Trustee shall require all Holders to furnish to him or her: (a) their Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service on a Form W-9 and (b) a certification that the Holder is not a person or entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control ("**OFAC**") sanctions regulations and/or the list

of Specially Designated Nationals and Blocked Persons (collectively, the "**Pre-Distribution Certifications**"). Pre-Distribution Certification forms will be mailed to the address for each Holder (and, if counsel has filed an appearance on behalf of a Holder in the Case, to the address of the Holder's counsel) prior to Distributions being made, and Holders shall have thirty (30) days from the date of mailing to return the executed Pre-Distribution Certifications. **Any Holder that fails to return the executed Pre-Distribution Certifications within such thirty (30) day period shall be deemed to have forfeited its right to receive Distributions and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Liquidating Trustee receiving its executed Pre-Distribution Certifications.** Any Distributions that are forfeited pursuant to this provision will be returned to the Liquidating Trustee and become property of the Liquidating Trust, for redistribution pursuant to this Plan.

      7.7    **Undeliverable Distributions**

      7.7.1    **Holding of Undeliverable Distributions.** If any Distribution to any Holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable. All Holders ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

      7.7.2    **Failure to Claim Undeliverable Distributions. Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Liquidating Trustee within ninety (90) days after the date of the initial Distribution made by the Liquidating Trustee to such Holder, shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against the Debtor, its Estate or the Liquidating Trust.** If, after ninety days, Distributions remain unclaimed, unclaimed Distributions will become forfeited Distributions and such amounts shall be made available for distribution to other Liquidating Trust Beneficiaries or for Liquidating Trustee's Expenses.

      7.8    **Withholding and Reporting Requirements**. In connection with the Plan, the Liquidating Trust Agreement and all Distributions thereunder, the Debtor and the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state or local or non-U.S. taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor and the Liquidating Trustee, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution, and (b) the Liquidating Trustee reserves the option, in his or her discretion, to not make a Distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements

satisfactory to the Liquidating Trustee for the payment and satisfaction of such tax obligations or has, to the Liquidating Trustee's satisfaction, established an exemption therefrom.

7.9 **Time Bar to Cash Payments**. Checks issued by the Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within forty-five (45) days from and after the date of issuance thereof. Requests for reissuance of any check that has become null and void shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim within sixty (60) days of the check becoming null and void. After such sixty (60) day period has elapsed, all Claims relating to such voided checks shall be discharged and forever barred. In the case of checks issued on account of Allowed Claims but not negotiated within forty-five (45) days of issuance and for which no request for reissuance is made before sixty (60) days after issuance, the amounts at issue shall be considered to be a forfeited Distribution.

7.10 **Interest**. Unless otherwise required by applicable bankruptcy law (or under this Plan), or specifically provided for herein, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim in accordance with section 502(b)(2) of the Bankruptcy Code. The amount of all prepetition Unsecured Claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise explicitly provided in the Plan, in section 506(b) of the Bankruptcy Code, or by Final Order, no Holder of a prepetition Claim shall be entitled to or receive interest or fees relating to such Claim.

7.11 **De Minimis Distributions**. The Liquidating Trustee will not make any De Minimis Distributions, and reserves the right to reserve such De Minimis Distributions until such time as the Holder of such Claim is entitled to a Distribution of at least fifty dollars ($50.00).

7.12 **Setoffs**. Consistent with applicable law, the Liquidating Trustee may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Debtor or its Estate may hold against the Holder of such Allowed Claim, regardless of whether the applicable Claim was designated in the Schedules as subject to setoff; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor, its Estate, or the Liquidating Trust of any such claims, rights, and Causes of Action that the Debtor, its Estate, or the Liquidating Trustee may possess against such Holder. Any setoff alleged by a Holder of a Claim that is opposed by the Debtor, Liquidating Trustee, or party in interest shall be resolved upon objection to such Claim.

7.13 **Settlement of Claims and Controversies**. Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have against the Debtor with respect to any Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, its Estate, the Liquidating Trust, and Holders of Claims and is fair, equitable and reasonable.

## ARTICLE VIII
## Owner Trust Claims

8.1 **Bar and Waiver to Assert Owner Trust Claims.** Upon the Confirmation Date, each Owner shall absolutely, irrevocably, and unconditionally be forever barred from asserting, and deemed to have waived and forever relinquished its right to assert, an Owner Trust Claim (but not a General Unsecured Claim) on account of any Claim such Owner may have against the Debtor or its Estate, or the Liquidating Trust or Liquidating Trustee, together with any assertion of ownership over, or entitlement to, a constructive trust encompassing any property, including property of the Estate or Liquidating Trust. Funds held by the Debtor prepetition, and by the Estate or the Liquidating Trustee (as applicable) postpetition, are deemed to constitute, and to have constituted at all relevant times, property of the Debtor, the Estate, or the Liquidating Trustee (as applicable). Any Owner Trust Claims filed after the Confirmation Date shall be deemed null and void and may be dismissed summarily by the Bankruptcy Court. This section 8.1 shall have no preclusive effect upon Erroneous Payment Claims or Holders thereof.

8.2 **Acknowledgement of Disallowance of Owner Trust Claims.** In addition to, and without limiting, the bar and waiver set forth in the preceding section 8.1, any Holder of an Owner Trust Claim who accepts a distribution under the Plan is deemed to have acknowledged that: (a) any Owner Trust Claim it has asserted or could have asserted prior to the Confirmation Date, or it may subsequently seek to assert, whether through a proof of claim, motion, adversary proceeding, or otherwise, shall be deemed disallowed to the extent it asserts an Owner Trust Claim (without bearing upon its claim as a Class 4 General Unsecured Creditor); (b) it accepts a Pro Rata, *pari passu*, Distribution as treatment of its Claim as a Class 4 General Unsecured Claim under this Plan to the extent such Claim is allowed; and (c) it has irrevocably relinquished and waived any assertion of ownership over, or entitlement to, a constructive trust encompassing any property currently in the possession of the Debtor or to be transferred to the Liquidating Trust under the Plan.

8.3 **Debtor's Reservation of Rights.** In the event an Owner Trust Claim is filed (whether by proof of claim, motion, adversary proceeding, or otherwise) prior to the Confirmation Date, the Plan Proponents reserve all rights to, but shall not be obligated to, withdraw this Plan and, upon proper notice, seek confirmation of the original plan of liquidation filed by them as Docket No. 251, as it may be modified in whole or in part. In such case, all terms and conditions of this Plan, including but not limited to the settlement with Infinity set forth in section 5.4 of this Plan, shall be null and void, and Distributions under any subsequent plan of liquidation may be suspended for an unknown period of time subject to ongoing litigation and appeals.

## ARTICLE IX
## Means of Implementation of the Plan

9.1 **Liquidating Trust**. The Liquidating Trust shall be established as of the Effective Date for the benefit of all Beneficiaries and shall be governed by the Liquidating Trust Agreement. John B. Pidcock shall be designated as Liquidating Trustee. The Liquidating Trustee will owe a fiduciary duty, consistent with the duties of trustees under Illinois law, to beneficiaries of the Liquidating Trust.

9.2    **Vesting of Assets**. On the Effective Date, all assets of the Debtor and its Estate (including the Liquidating Trust Assets) shall be transferred to and vest in the Liquidating Trust and be deemed contributed thereto, subject to the terms of the Plan. For the avoidance of doubt, all Liquidating Trust Assets shall be held by the Liquidating Trust solely in trust for the benefit of the Beneficiaries and shall not be deemed property of the Debtor. Nothing in the Plan, however, shall preclude payment of: (a) UST Fees to the extent unpaid on the Confirmation Date; and (b) the Liquidating Trustee's Expenses in accordance with this Plan and the Liquidating Trust Agreement from any other assets held by the Liquidating Trust. The Debtor is hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of its property to the Liquidating Trust, subject to oversight from the Liquidating Trustee, as applicable.

9.3    **[Intentionally Deleted]**

9.4    **Liquidating Trust Asset Administration**. The Liquidating Trustee, with advice and consultation from the Advisory Committee, shall administer the Liquidating Trust Assets pursuant to the Plan and the Liquidating Trust Agreement from and after the Effective Date. As more fully set forth in the Liquidating Trust Agreement, the Liquidating Trustee shall be responsible for, *inter alia*, liquidating the Liquidating Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Causes of Action, making distributions of the Net Trust Proceeds to the Beneficiaries of the Liquidating Trust in accordance with the Plan, maintaining and administering reserves for Disputed Claims and Claims of Holders that may be the subject of Avoidance Actions, paying Liquidating Trustee's Expenses, preparing and filing post-Effective Date operating reports, filing post-Effective Date tax returns (with all funding required for the preparation and filing of such returns to be pre-paid by the Debtor prior to the Effective Date) and all other activities typically related to trust administration.

9.5    **Case Administration**. From and after the Effective Date and continuing through the date that a final decree closing the Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidating Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Case. In addition to the foregoing, for all matters arising in, arising under or related to the Case, the Liquidating Trustee shall: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Debtor (including, without limitation, bank statements, cancelled checks, invoices, proofs of delivery, and other documents necessary to conduct due diligence on, and prosecute, Avoidance Actions); (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (e) have exclusive standing (including derivative standing to pursue Causes of Action on behalf of the Debtor) to commence Causes of Action, and to continue prosecuting and resolving, as successor-in-interest to the Debtor, any other Causes of Action that were pending as of the Effective Date, regardless of venue; (f) be entitled to request the Bankruptcy Court to enter a final decree closing the Case; and (g) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in this Case.

9.6 **Advisory Committee**. For purposes of implementation of the Plan, the Advisory Committee shall be created on the Confirmation Date and consist of up to three (3) Persons eligible to serve on the Advisory Committee. The Advisory Committee shall exercise such rights and duties as are set forth in the Liquidating Trust Agreement. Each member of the Advisory Committee shall serve until the earlier of: (a) his or her death or resignation; (b) his or her removal pursuant to the Liquidating Trust Agreement; and (c) the termination of the Liquidating Trust.

9.7 **Liquidating Trustee's Professionals**. Upon the acceptance by the Liquidating Trustee of his or her appointment in accordance with this Plan and the Liquidating Trust Agreement, the Liquidating Trustee may, without the need for Bankruptcy Court approval, retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary, with advice and consultation with the Advisory Committee, in accordance with the Liquidating Trust Agreement, to aid in the performance of his or her responsibilities pursuant to the terms of the Plan and the Liquidating Trust Agreement, including, without limitation, the liquidation and distribution of assets of the Liquidating Trust. The Professionals retained by the Liquidating Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in this Case, and the Liquidating Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity.

9.8 **Quarterly Reports and Tax Returns**. The Liquidating Trustee shall prepare and file, on a quarterly basis, reports using UST Form 11-PCR, until the entry of a final decree closing the Case. The Liquidating Trustee shall also cause the filing of all applicable tax returns for the Debtor commencing with tax year 2025 and through the year in which the Case is closed.

9.9 **Transfer, Prosecution, Preservation, and Resolution of Causes of Action.**

9.9.1 **Transfer of Causes of Action**. On the Effective Date, the Debtor shall transfer to the Liquidating Trust, and the Liquidating Trustee shall hold and retain, all rights of the Debtor to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtor's Case). Potential Causes of Action may, but need not be, pursued by the Debtor prior to the Effective Date and by the Liquidating Trustee after the Effective Date. All Causes of Action, defenses, and counterclaims not expressly and specifically released in connection with the Plan, the Confirmation Order, or in any settlement agreement approved during the Case, or as otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, shall be transferred to and vest with the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Causes of Action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and prior to the Effective Date, the Debtor shall not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estate, except those Claims and Causes of Action expressly released in this Plan: (a) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, Cause of Action, defense,

or counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense or counterclaim filed a Proof of Claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing preservation of rights, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a Cause of Action, defense, or counterclaim, or potential Cause of Action, defense, or counterclaim, in the Plan, the Disclosure Statement, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Liquidating Trustee's right to commence, prosecute, defend against, settle, and realize upon any Causes of Action, defenses, or counterclaims that the Debtor had immediately prior to the Effective Date, or that the Liquidating Trust has as of the Effective Date. The Liquidating Trustee may commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in his or her sole discretion, upon consultation with the Advisory Committee, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the Liquidating Trust.

9.9.2 **Preservation of Right to Conduct Investigations.** The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

9.9.3 **Preservation of Causes of Action.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust: (a) shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtor or the Debtor's Estate, whether arising before or after the Petition Date, including, but not limited to, any Causes of Action specifically enumerated in Appendix A to the Disclosure Statement, and the Liquidating Trust's right to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date; and (b) expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action as a consequence of the confirmation of the Plan or the occurrence of the Effective Date. The Liquidating Trust may pursue Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against such Entity as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against such Person. The Liquidating Trust expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan or in a Bankruptcy Court order. For the avoidance of doubt, the Plan does not release any Causes of Action that the Plan Proponents or the Liquidating Trust have or may have in the future against any Person, except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or in a Final Order, the Liquidating Trust reserves and shall retain Causes of Action notwithstanding the assumption or rejection of any Executory Contract during the Case or pursuant to the Plan to the fullest extent permitted by law. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Person that is not released under the Plan or a separate settlement approved by Final Order shall vest in the Liquidating Trust, which shall retain and may exclusively enforce any and all such Causes of Action. The Liquidating Trust has the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court, provided however, the Liquidating Trustee must seek approval of the Bankruptcy Court to compromise any controversy in which a Claim, or Cause of Action asserted by the Liquidating Trustee, is equal to or greater than $500,000.00.

9.10 **Officers and Directors of the Debtor**. Upon the Effective Date, all officers and directors of the Debtor, including the Independent Director and the Chief Restructuring Officer, shall be automatically deemed to have resigned from such positions, without further act, notice, deed or court order. To the extent required under applicable non-bankruptcy law, the Liquidating Trustee shall be deemed an officer and/or director of the Debtor.

9.11 **Dissolution of the Debtor**. Upon the Effective Date, the Liquidating Trustee shall be authorized and empowered, in his or her reasonable discretion, to file a certificate of dissolution or other documents, if any, memorializing the Debtor's dissolution with the office of the secretary of state of Illinois, or may allow the secretary of state to involuntarily dissolve the Debtor. In the event of a dissolution (whether voluntary or involuntary), the Liquidating Trustee shall thereafter have and retain standing to assert claims or pursue matters on behalf of the Debtor to the extent necessary to preserve, protect and liquidate the Liquidating Trust Assets or otherwise necessary to administer the Liquidating Trust.

9.12 **Termination of Committee**. The Committee shall terminate automatically upon the acceptance by the Liquidating Trustee of his or her appointment in accordance with this Plan and the Liquidating Trust Agreement following the Confirmation Date. Upon termination of the Committee, the Committee shall be dissolved and its members shall be deemed released of their duties and responsibilities in connection with the Case or the Plan and its implementation, and the retention or employment of the Committee's counsel shall terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

9.13 **Filing of Additional Documents**. On or before the Confirmation Date of the Plan, the Plan Proponents shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, without limitation, the final Liquidating Trust Agreement.

9.14 **Notices**. Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight delivery service, freight prepaid, addressed to the following:

The Debtor:

 RAS Data Services
 c/o Plante Moran PLLC
 Attn: Sandor Jacobson
 10 S Riverside Plaza; 9th Floor
 Chicago, IL 60606
 Phone: (312) 928-5387
 E-Mail: sandor.jacobson@plantemoran.com

With a copy to:

 Adam P. Silverman
 Alexander F. Brougham
 Tevin D. Bowens
 Adelman & Gettleman, Ltd.
 53 W. Jackson Blvd., Suite 1050
 Chicago, Illinois 60604
 Phone: (312) 435-1050
 E-mail: asilverman@ag-ltd.com
    abrougham@ag-ltd.com
    tbowens@ag-ltd.com

 *Counsel for the Debtor*

The Committee:

 Thomas R. Fawkes
 Brian J. Jackiw
 Jason J. Ben
 Tucker Ellis LLP
 233 S. Wacker Dr., Suite 6950
 Chicago, Illinois 60606
 Phone: (312) 624-6300
 E-mail: thomas.fawkes@tuckerellis.com
    brian.jackiw@tuckerellis.com
    jason.ben@tuckerellis.com

 *Counsel for the Committee*

The Liquidating Trustee:

 John B. Pidcock
 Oxford Restructuring Advisors
 4520 Cooper Road, Suite 203
 Cincinnati, OH 45242
 Phone: (513) 235-0164

E-mail: jpidcock@oxfordrestructuring.com

**9.15 Cancellation of Notes, Instruments, and Debentures**. On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtor shall be deemed canceled, terminated, and surrendered (regardless of whether such notes, instruments, debentures, certificates or other documents are in fact surrendered for cancellation to the appropriate indenture trustee or other such Person). On the Effective Date, any indentures to which the Debtor is a party shall be deemed canceled as permitted by section 1123(a)(5) of the Bankruptcy Code.

**9.16 Insurance Preservation**. Nothing in the Plan, including any Releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other Person.

**9.17 Plan Implementation Transactions.** Debtor and the Liquidating Trustee, as appropriate, will be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

**ARTICLE X**
**Conditions Precedent to Confirmation and Effective Date**

10.1 **Acceptance or Rejection of the Plan**

10.1.1 **Acceptance by Impaired Classes**. Classes 2, 3, and 4 each will have accepted the Plan if the Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class actually voting have voted to accept the Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

10.1.2 **Elimination of Classes**. Any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, will be deemed not included in the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

10.1.3 **Nonconsensual Confirmation**. The Bankruptcy Court may confirm the Plan over the rejection by any Impaired Class if all of the requirements for consensual confirmation under section 1129(a) of the Bankruptcy Code, other than subsection 1129(a)(8) and for nonconsensual confirmation under subsection 1129(b) of the Bankruptcy Code, have been satisfied. Since Class 5, the Impaired Class of Interests, is deemed to reject the Plan, the Plan Proponents shall be deemed to have sought that the Bankruptcy Court confirm the Plan in accordance with section 1129(b)(2)(C)(ii) of the Bankruptcy Code.

10.2 **Conditions Precedent to Confirmation Date of the Plan**. The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

10.2.1 The entry of the Confirmation Order in form and substance satisfactory to the Plan Proponents; and

10.2.2  The Debtor being authorized to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with the Plan.

10.3    **Conditions Precedent to the Effective Date of the Plan**. The occurrence of the Effective Date and the consummation of the Plan are subject to satisfaction of the following conditions precedent:

10.3.1 **Confirmation Order**. The Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect, in form and substance reasonably satisfactory to the Plan Proponents.

10.3.2 **Liquidating Trust Agreement**. The Liquidating Trust Agreement shall be acceptable to the Plan Proponents in form and substance, and shall have been executed by the Debtor, the Committee and the Liquidating Trustee.

10.3.3 **UST Fees**. All UST Fees owed to the U.S. Trustee through the Effective Date shall either have been paid in their entirety, or Cash in an amount sufficient to pay such UST Fees shall be Reserved Cash.

10.3.4 **Owner Trust Claims**. No Owner Trust Claims shall have been filed in derogation of the terms and conditions of this Plan; provided, however, that this condition may be waived upon the unanimous consent of the Plan Proponents.

10.3.5 **Sufficient Reserves**. The Estate shall have Reserved Cash in an amount sufficient to consummate this Plan.

10.4    **The Confirmation Order**. If the Confirmation Order is vacated for whatever reason, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor.

### ARTICLE XI
### Effect of Plan Confirmation

11.1    **Binding Effect**. From and after the Confirmation Date, but subject to the occurrence of the Effective Date, this Plan shall be binding and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns. The provisions of the Plan, the Confirmation Order, and any associated findings of fact or conclusions of law shall bind the Debtor, any entity acquiring property under the Plan, and any Holder of a Claim, whether or not the Claim of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

11.2    **No Discharge of Claims**. The Debtor will not receive a discharge under the Plan in accordance with section 1141(d)(3)(A), 1141(d)(3)(B), and 1141(d)(3)(C) of the Bankruptcy Code.

11.3     **Injunction**

**11.3.1  Except as otherwise expressly provided in the Plan, all Persons that receive Distributions under the Plan or payment under the Sale Order and that have held, hold, or may hold Claims against or Interests in the Debtor are enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor, its Estate, Professional Persons, the Committee, the Liquidating Trust, the Liquidating Trustee, or any of their respective property on account of any Claims or Causes of Action arising from events prior to the Effective Date in any manner, that does not comply with or is inconsistent with the provisions of the Plan: (a) commencing or continuing in any manner any action or other proceeding of any kind, including any Owner Trust Claim; (b) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (d) other than with respect to resolution of a Claim, asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation, debt or liability due to the Debtor (but in any event, no such defense or right of setoff, subrogation, or recoupment of any kind may be asserted that would be deemed to constitute an Owner Trust Claim).**

**11.3.2  By accepting Distributions pursuant to the Plan or payment under the Sale Order, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.**

**11.3.3  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed.**

11.4     **Terms of Existing Injunctions or Stays. Unless otherwise provided in the Plan, all injunctions or stays provided for in the Case pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case has been closed. The Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan.**

11.5     **Exculpation. No Exculpated Party shall be subject to or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, or liability for any claim in connection with or arising out of the administration of the Case; the negotiation and pursuit of the transactions approved by the Sale Order, the Disclosure Statement, or this Plan, or the solicitation of votes for, or confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan; the Distribution of property under the Plan; any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; or the transactions in furtherance of any of the foregoing; provided, however, that no Exculpated Party shall be released and exculpated for willful misconduct or gross negligence (but in all respects such entities shall be entitled to reasonably**

rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan). Notwithstanding the foregoing, no Exculpated Party shall have liability for willful misconduct or gross negligence except as determined by a Final Order of a court of competent jurisdiction. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court with regard to the solicitation of this Plan and, therefore, are not, and on account of such solicitations shall not be, liable at any time for the violation of any applicable law, rule, order, or regulation governing the solicitation of acceptances or rejections of this Plan or such Distributions or payments made pursuant to this Plan. Nothing in this Section 11.5 shall be construed as a release of any Causes of Action against the Debtor's former or current Insiders for events occurring prior to the Petition Date.

11.6 **Injunction Related to Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities enjoined, exculpated, or otherwise limited or prohibited pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action against any Exculpated Party that are described in Section 11.5 of this Plan.

11.7 **Debtor Release. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR AND THE ESTATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, AND OTHER RIGHTS AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR AVOIDANCE CLAIMS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED, OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, DIRECTLY OR INDIRECTLY ON BEHALF OF, THE DEBTOR OR ITS ESTATE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED ON BEHALF OF THE DEBTOR OR THE ESTATE DIRECTLY OR DERIVATIVELY, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR OR THE ESTATE, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE CONDUCT OF THE PRE-PETITION-DATE PROFESSIONALS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN AND DISCLOSURE STATEMENT OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE PLAN, THE DISCLOSURE STATEMENT, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE**

31

**SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR OR THE ESTATE, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THESE RELEASES SHALL NOT OPERATE TO WAIVE OR RELEASE: (A) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THIS PLAN AND THE DISCLOSURE STATEMENT; (B) ANY CAUSES OF ACTION AGAINST ANY PERSON OR ENTITY THAT IS NOT A RELEASED PARTY; OR (C) THE RIGHT OF THE DEBTOR OR THE LIQUIDATING TRUSTEE TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR ASSUMED PURSUANT TO A FINAL ORDER.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES SET FORTH IN THIS SECTION 11.7, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT SUCH RELEASES ARE: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS SECTION 11.7; (C) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO ANY ENTITY SUBJECT TO SUCH RELEASES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED BY THIS SECTION 11.7.**

## ARTICLE XII
### Modification, Revocation or Withdrawal of the Plan

12.1    **Modification of Plan**. The Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, in their discretion, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. Upon entry of the Confirmation Order, the Plan Proponents may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified Plan.

12.2    **Revocation, Withdrawal, or Non-Consummation**. The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans

of liquidation. If the Plan Proponents revoke or withdraw the Plan, or if the Confirmation Order confirming the Plan shall not be entered or become a Final Order, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (2) prejudice in any manner the rights of the Debtor or the Committee, (3) constitute an admission of any sort by the Debtor or the Committee, or (4) constitute a release of any Causes of Action possessed or maintained by the Debtor.

## ARTICLE XIII
### Miscellaneous Provisions

13.1 **Payment of Statutory Fees**. All UST Fees shall be paid by the Debtor to the extent required by applicable law.

13.2 **Section 1146 Exemption**. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

13.3 **Business Day**. If a payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day and shall be deemed to have been completed or complied with as of the required date.

13.4 **Severability**. The provisions of this Plan shall not be severable unless such severance is agreed to by the Plan Proponents and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

13.5 **Conflicts**. To the extent that any provision of the Disclosure Statement, the Liquidating Trust Agreement, or any exhibits or schedules thereto, conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

13.6 **Further Assurances**. The Debtor, the Committee, the Liquidating Trustee, all Holders of Claims receiving Distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.7 **Filing of Additional Documents**. On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.8 **Successors and Assigns.** The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

13.9 **Section Headings**. The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

13.10 **Further Information**. Requests for further information regarding the Debtor's Case or the Plan may be directed to counsel to the Debtor or the Committee, at the contact information set forth in section 9.14 above.

13.11 **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Disclosure Statement and the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to any conflicts of law principles.

## ARTICLE XIV
### Jurisdiction

14.1 **Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, unless explicitly set forth herein to the contrary, the Bankruptcy Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Case, the Plan or the Liquidating Trust, or that relates to the following, in each case to the greatest extent permitted by applicable law:

14.1.1 to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

14.1.2 to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee after the Effective Date; provided, however, that the Liquidating Trustee shall reserve the right to commence collection actions, actions to recover receivables, adversary proceedings against any Holder of a Claim, and other similar actions in all appropriate jurisdictions, and the jurisdiction of the Bankruptcy Court over such matters shall be nonexclusive;

14.1.3 to hear and determine any timely objections to Administrative Claims, Priority Tax Claims, Priority Claims, Infinity Claims, Owner Trust Claims, Erroneous Payment Claims, General Unsecured Claims, or to proofs of Claim and Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

14.1.4 to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

14.1.5 to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

14.1.6 to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

14.1.7 to hear and determine all applications for awards of Professional Fee Claims;

14.1.8 to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan, or the extent of any Person's obligations incurred in connection with or released or exculpated under the Plan;

14.1.9 to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan;

14.1.10 to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement to be executed in connection with the Plan;

14.1.11 to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.1.12 to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

14.1.13 to enter a final decree closing the Case.

Dated this 18th day of May, 2026.

**RAS DATA SERVICES, INC.**

By: ___/s/ Adam P. Silverman___
   One of Its Attorneys

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF RAS
DATA SERVICES, INC.**

By: ___/s/ Thomas R. Fawkes___
   One of Its Attorneys

SCHEDULE 1.33

to

*Second Amended Joint Plan of Liquidation of Debtor and Official Committee of Unsecured Creditors***:**

**Erroneous Payment Claims**

**RAS Data Services, Inc., Bankr. N.D. Ill. Case No. 25-11837**
**Schedule 1.33 to** *Second Amended Joint Plan of Liquidation of Debtor and Official Committee of Unsecured Creditors*:
**Erroneous Payment Claims***

| Payor | Amount ($) | Date(s) Cash Received |
|---|---|---|
| Atel Equipment Services | 622.55 | 3/18/2025 |
| International Paper | 2,465.51 | 5/20/2025 |
| South Carolina Fuel | 169.99 | 7/2/2025 |
| South Carolina Fuel | 339.98 | 7/2/2025 |
| Phillips 66 | 975.00 | 7/2/2025 |
| Phillips 66 | 5,885.34 | 7/10/2025 |
| The Scoular Company | 2,500.51 | 7/11/2025 |
| Phillips 66 | 1,875.68 | 7/29/2025 |
| BNSF | 1,716,014.65 | 6/18/25 - 7/11/25 |
| Phillips 66 | 975.00 | 8/8/2025 |
| Phillips 66 | 1,950.00 | 8/15/2025 |
| Norfolk Southern | 41,316.36 | 9/3/2025 |
| Carmeuse Lime | 54.64 | 9/4/2025 |
| TTX | 9,000.00 | 10/23/2025 |
| TTX | 1,404.04 | 10/23/2025 |
| TTX | 4,513.43 | 10/23/2025 |
| TTX | 11,329.96 | 12/15/2025 |
| Koppers Utility & Indus. Products | 1,983.35 | 12/22/2025 |
| Phillips 66 | 22.31 | 2/2/2026 |
| Phillips 66 | 975.00 | 2/13/2026 |
| NGL Crude Transp | 13.93 | 3/2/2026 |
| **Total** | **1,804,387.23** | |

* Designation of an Erroneous Payment Claim in this Schedule 1.33 does not constitute an admission by the
Plan Proponents or an adjudication by the the Bankruptcy Court that any funds comprising an Erroneous
Payment Claim are not property of the Estate or that such funds were paid in error.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 25-11837 |
| RAS DATA SERVICES, INC., | ) | |
| | ) | Hon. Michael B. Slade |
| Debtor. | ) | |
| | ) | |

### ~~FIRST~~SECOND AMENDED JOINT PLAN OF LIQUIDATION OF DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Dated: May ~~6~~18, 2026

**ADELMAN & GETTLEMAN, LTD.**

Adam P. Silverman
Alexander Brougham
Tevin D. Bowens
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel: (312) 435-1050
asilverman@ag-ltd.com
abrougham@ag-ltd.com
tbowens@ag-ltd.com

**TUCKER ELLIS LLP**

Thomas R. Fawkes
Brian J. Jackiw
Jason J. Ben
233 S. Wacker Dr., Suite 6950
Chicago, Illinois 60606
Tel: (312) 624-6300
thomas.fawkes@tuckerellis.com
brian.jackiw@tuckerellis.com
jason.ben@tuckerellis.com

*Counsel for Debtor and Debtor in Possession,*
*RAS Data Services, Inc.*

*Counsel to the Official Committee of*
*Unsecured Creditors*

~~1464070_7~~1476328_1

## TABLE OF CONTENTS

ARTICLE I Definitions ............................................................................................................. 1
  1.1    "503(b)(9) Claims" .......................................................................................... 1
  1.2    "Administrative Claim" .................................................................................. 1
  1.3    "Administrative Claims Bar Date" ................................................................. 1
  1.4    "Advisory Committee" ................................................................................... 1
  1.5    "Allowed Claim" or "Allowed . . . Claim" .................................................. 1
  1.6    "Avoidance Action" ....................................................................................... 2
  1.7    "Ballot" ........................................................................................................... 2
  1.8    "Bankruptcy Code" ........................................................................................ 2
  1.9    "Bankruptcy Court" ....................................................................................... 2
  1.10   "Bankruptcy Rules" ....................................................................................... 2
  1.11   "Bar Date Order" ........................................................................................... 2
  1.12   "Beneficiaries" ............................................................................................... 2
  1.13   "Business Day .................................................................................................. 2
  1.14   "Buyer" ........................................................................................................... 2
  1.15   "Case" ............................................................................................................. 2
  1.16   "Cash" ............................................................................................................. 2
  1.17   "Causes of Action" ........................................................................................ 2
  1.18   "Chief Restructuring Officer" ....................................................................... 3
  1.19   "Claim" ........................................................................................................... 3
  1.20   "Class" ............................................................................................................. 3
  1.21   "Committee" ................................................................................................... 3
  1.22   "Confirmation Date" ...................................................................................... 3
  1.23   "Confirmation Hearing" ................................................................................. 3
  1.24   "Confirmation Order" .................................................................................... 3
  1.25   "De Minimis Distribution" ............................................................................ 3
  1.26   "Debtor" .......................................................................................................... 3
  1.27   "Disclosure Statement" .................................................................................. 3
  1.28   "Disputed Claim" or "Disputed . . . Claim" ................................................. 4
  1.29   "Distribution" ................................................................................................. 4
  1.30   "Effective Date" ............................................................................................. 4
  1.31   "Enforcement Proceeding" ............................................................................ 4
  1.32   "Erroneous Payment Claim Bar Date" .......................................................... 4
  1.33   "Erroneous Payment Claims" ........................................................................ 4
  1.34   "Equity Security" ........................................................................................... 5
  1.35   "Equity Security Holder" ............................................................................... 5
  1.36   "Estate" ........................................................................................................... 5
  1.37   "Exculpated Party" ........................................................................................ 5
  1.38   "Executory Contract" ..................................................................................... 5
  1.39   "Final Order" .................................................................................................. 5
  1.40   "General Bar Date" ........................................................................................ 5
  1.41   "General Unsecured Claim" ........................................................................... 5
  1.42   "Governmental Bar Date" .............................................................................. 5
  1.43   "Holder" .......................................................................................................... 5
  1.44   "Impaired" ...................................................................................................... 6
  1.45   "Independent Director" ................................................................................... 6

| 1.46 | "Infinity" | 6 |
|---|---|---|
| 1.47 | "Infinity Adversary Proceeding" | 6 |
| 1.48 | "Infinity Claims" | 6 |
| 1.49 | "Infinity Contingent Payment" | 6 |
| 1.50 | "Infinity Fixed Payment" | 6 |
| 1.51 | "Infinity Remaining Claim" | 6 |
| 1.52 | "Infinity Trust Claim" | 6 |
| 1.53 | "Initial Distribution" | 6 |
| 1.54 | "Insider" | 6 |
| 1.55 | "Interest" | 6 |
| 1.56 | "Lien" | 7 |
| 1.57 | "Liquidating Trust" | 7 |
| 1.58 | "Liquidating Trust Agreement" | 7 |
| 1.59 | "Liquidating Trust Assets" | 7 |
| 1.60 | "Liquidating Trustee" | 7 |
| 1.61 | "Liquidating Trustee's Expenses" | 7 |
| 1.62 | "MSA" | 7 |
| 1.63 | "Net Trust Proceeds" | 8 |
| 1.64 | "Net Sale Proceeds" | 8 |
| 1.65 | "Original Budget Order" | 8 |
| 1.66 | "Other Administrative Claim" | 8 |
| 1.67 | "Owner" | 8 |
| 1.68 | "Owner Trust Claim" | 8 |
| 1.69 | "Person" | 8 |
| 1.70 | "Petition Date" | 8 |
| 1.71 | "Plan" | 8 |
| 1.72 | "Plan Proponents" | 8 |
| 1.73 | "Pre-Petition-Date Professionals" | 8 |
| 1.74 | "Priority Claim" | 8 |
| 1.75 | "Priority Tax Claims" | 8 |
| 1.76 | "Professional Fee Claims" | 9 |
| 1.77 | "Professional" or "Professional Persons" | 9 |
| 1.78 | "Pro Rata" | 9 |
| 1.79 | "Released Party" | 9 |
| 1.80 | "Releases" | 9 |
| 1.81 | "Reserved Cash" | 9 |
| 1.82 | "Sale" | 9 |
| 1.83 | "Sale Order" | 9 |
| 1.84 | "Schedules" | 9 |
| 1.85 | "Secured Claim" | 910 |
| 1.86 | "SOFA" | 10 |
| 1.87 | "Subsequent Distribution" | 10 |
| 1.88 | "Unsecured Claim" | 10 |
| 1.89 | "U.S. Trustee" | 10 |
| 1.90 | "UST Fees" | 10 |
| 1.91 | "Victim Recovery Funds" | 10 |
| 1.92 | **Rules of Interpretation and Computation of Time** | 10 |

ARTICLE II Unclassified Claims.................................................................................... 11
ARTICLE III Designation of Classified Claims and Interests ........................................ 11
  3.1    **Class 1 Claims**.................................................................................. 11
  3.2    **Class 2 Claims**.................................................................................. 11
  3.3    **Class 3 Claims**.................................................................................. 11
  3.4    **Class 4 Claims**.................................................................................. 11
  3.5    **Class 5 Interests**............................................................................... 11
ARTICLE IV Impairment of Classes .............................................................................. 11
  4.1    **Impaired Classes of Claims Entitled to Vote.** ................................... 11
  4.2    **Classes Deemed to Accept the Plan.** ................................................ 11
  4.3    **Classes Deemed to Reject the Plan.** ................................................. 11
  4.4    **Cram Down.** ...................................................................................... 12
  4.5    **Elimination of Vacant Classes.** ........................................................ 12
ARTICLE V Treatment of Claims and Interests ............................................................. 12
  5.1    **Allowed Other Administrative Claims and Allowed Professional Fee Claims.**...... 12
  5.2    **Priority Tax Claims.**......................................................................... 13
  5.3    **Class 1 Claims.** ................................................................................. 13
  5.4    **Class 2 Claims.** ................................................................................. 13
  5.5    **Class 3 Claims.** ................................................................................. 16
  5.6    **Class 4 Claims.** ................................................................................. 17
  5.7    **Class 5 Interests.** .............................................................................. 17
ARTICLE VI Treatment of Executory Contracts ........................................................... ~~17~~18
  6.1    **Contracts Deemed Rejected.** ............................................................ ~~17~~18
  6.2    **Bar Date for Rejection Damages.** ..................................................... 18
  6.3    **Insurance Policies.** ........................................................................... 18
ARTICLE VII Objections to Claims; Provisions Governing Distributions ............................. ~~18~~19
  7.1    **Objections to Claims.** ....................................................................... ~~18~~19
  7.2    **Beneficiaries Subject to Avoidance Actions.**.................................. ~~18~~19
  7.3    **Estimation.** ....................................................................................... 19
  7.4    **Means of Cash Payment.** .................................................................. 19
  7.5    **Delivery of Distributions.**................................................................ 19
  7.6    **Tax Identification Numbers and OFAC Certifications.** ................... 19
  7.7    **Undeliverable Distributions** ............................................................. ~~19~~20
  7.8    **Withholding and Reporting Requirements.** ..................................... 20
  7.9    **Time Bar to Cash Payments.**............................................................ ~~20~~21
  7.10   **Interest.** ............................................................................................ 21
  7.11   **De Minimis Distributions.** ............................................................... 21
  7.12   **Setoffs.** ............................................................................................. 21
  7.13   **Settlement of Claims and Controversies.** ........................................ 21
ARTICLE VIII Owner Trust Claims ............................................................................... ~~21~~22
  8.1    **Bar and Waiver to Assert Owner Trust Claims.**.............................. ~~21~~22
  8.2    **Disallowance of Owner Trust Claims.**............................................ 22
  8.3    **Debtor's Reservation of Rights.** ...................................................... 22
ARTICLE IX Means of Implementation of the Plan....................................................... 22
  9.1    **Liquidating Trust.** ............................................................................ 22
  9.2    **Vesting of Assets.** ............................................................................ ~~22~~23
  9.3    **[Intentionally Deleted]** .................................................................... ~~22~~23

| 9.4 | **Liquidating Trust Asset Administration** | 23 |
| 9.5 | **Case Administration** | 23 |
| 9.6 | **Advisory Committee.** | ~~23~~24 |
| 9.7 | **Liquidating Trustee's Professionals.** | ~~23~~24 |
| 9.8 | **Quarterly Reports and Tax Returns.** | 24 |
| 9.9 | **Transfer, Prosecution, Preservation, and Resolution of Causes of Action.** | 24 |
| 9.10 | **Officers and Directors of the Debtor.** | 26 |
| 9.11 | **Dissolution of the Debtor.** | 26 |
| 9.12 | **Termination of Committee.** | 26 |
| 9.13 | **Filing of Additional Documents.** | 26 |
| 9.14 | **Notices.** | 26 |
| 9.15 | **Cancellation of Notes, Instruments, and Debentures.** | ~~27~~28 |
| 9.16 | **Insurance Preservation.** | ~~27~~28 |
| 9.17 | **Plan Implementation Transactions.** | 28 |
| ARTICLE X Conditions Precedent to Confirmation and Effective Date | | 28 |
| 10.1 | **Acceptance or Rejection of the Plan** | 28 |
| 10.2 | **Conditions Precedent to Confirmation Date of the Plan.** | 28 |
| 10.3 | **Conditions Precedent to the Effective Date of the Plan.** | ~~28~~29 |
| 10.4 | **The Confirmation Order.** | 29 |
| ARTICLE XI Effect of Plan Confirmation | | 29 |
| 11.1 | **Binding Effect.** | 29 |
| 11.2 | **No Discharge of Claims.** | 29 |
| 11.3 | **Injunction** | ~~29~~30 |
| 11.4 | **Terms of Existing Injunctions or Stays.** | 30 |
| 11.5 | **Exculpation.** | 30 |
| 11.6 | **Injunction Related to Exculpation.** | 31 |
| 11.7 | **Debtor Release.** | 31 |
| ARTICLE XII Modification, Revocation or Withdrawal of the Plan | | 32 |
| 12.1 | **Modification of Plan.** | 32 |
| 12.2 | **Revocation, Withdrawal, or Non-Consummation.** | 32 |
| ARTICLE XIII Miscellaneous Provisions | | 33 |
| 13.1 | **Payment of Statutory Fees.** | 33 |
| 13.2 | **Section 1146 Exemption.** | 33 |
| 13.3 | **Business Day.** | 33 |
| 13.4 | **Severability.** | 33 |
| 13.5 | **Conflicts.** | 33 |
| 13.6 | **Further Assurances.** | 33 |
| 13.7 | **Filing of Additional Documents.** | 33 |
| 13.8 | **Successors and Assigns.** | 33 |
| 13.9 | **Section Headings.** | ~~33~~34 |
| 13.10 | **Further Information.** | ~~33~~34 |
| 13.11 | **Governing Law.** | ~~33~~34 |
| ARTICLE XIV Jurisdiction | | 34 |
| 14.1 | **Retention of Jurisdiction.** | 34 |

<u>**~~FIRST~~SECOND** AMENDED JOINT PLAN OF LIQUIDATION OF DEBTOR AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>

RAS Data Services, Inc., as debtor and debtor-in-possession and the Official Committee of Unsecured Creditors, hereby submit this *~~First~~Second Amended Joint Plan of Liquidation of Debtor and Official Committee of Unsecured Creditors* (the "**Plan**") pursuant to, *inter alia*, section 1123 of the Bankruptcy Code:

## ARTICLE I
### Definitions

The following terms, when used in the Plan shall, unless the context otherwise requires, have the following meanings, respectively[1]:

1.1    "**503(b)(9) Claims**" means any claims for the sale of goods to the Debtor that were received by the Debtor in the 20-day period prior to the Petition Date that are entitled to Administrative Claim treatment under section 503(b)(9) of the Bankruptcy Code, each of which were subject to the Bar Date Order and the General Bar Date.

1.2    "**Administrative Claim**" means a Claim of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, and includes: (a) any actual and necessary costs and expenses incurred by the Debtor after the Petition Date with respect to preserving the Estate and operating the Debtor's business; (b) any Professional Fee Claims approved by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code; (c) all UST Fees; and (d) 503(b)(9) Claims.

1.3    "**Administrative Claims Bar Date**" means thirty (30) calendar days from the Effective Date, unless such date falls on a day which is not a Business Day, in which case, the Administrative Claims Bar Date means the next successive day which is a Business Day.

1.4    "**Advisory Committee**" means the committee created pursuant to the Liquidating Trust Agreement, which shall provide advice and consultation to the Liquidating Trustee in the manner set forth in the Liquidating Trust Agreement, provided however, that no person who is listed in question 3 or 4 of the SOFA, or who is otherwise subject to a Cause of Action by the Debtor or Liquidating Trustee, as determined in the discretion of the Committee or Liquidating Trustee, as applicable, shall be eligible to serve on the Advisory Committee.

1.5    "**Allowed Claim**" or "**Allowed . . . Claim**" means a Claim, proof of which is filed by the applicable bar date established by the Bar Date Order or this Plan, or that has been, or is hereafter, scheduled by the Debtor as liquidated in amount and not disputed or contingent, and to which no objection to allowance thereof has been filed by the Debtor, Liquidating Trustee, or any party in interest, in each instance, within any applicable period fixed by the Bankruptcy Court, or as to which a Final Order allowing such Claim has been entered.

---

[1] Capitalized terms used within a specific defined term below but not ascribed meaning within such defined term means and refer to the definitions ascribed to them as applicable in the Plan.

1.6     "**Avoidance Actions**" means Causes of Action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced before or after the Confirmation Date to prosecute such Avoidance Actions. For clarity, Avoidance Actions consist of but are not limited to Causes of Action against (a) Persons listed on questions 3 and 4 of the SOFA, or (b) the parties who may be encompassed by the *Global Notes, Statement of Limitations and Specific Disclosures, and Reservation of Rights Regarding Debtor's Schedules and Statement of Financial Affairs*, filed concurrently therewith, as all such documents have been or may be supplemented or amended from time to time.

1.7     "**Ballot**" means the form distributed to each Holder of an impaired Claim who is entitled to vote on the Plan on which the Holder of such Claim is to indicate acceptance or rejection of the Plan.

1.8     "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

1.9     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or any court having jurisdiction over this Case or a proceeding arising in, or arising under or related to this Case.

1.10    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect.

1.11    "**Bar Date Order**" means that certain *Order Granting Motion for Entry of an Order (I) Setting Deadlines for Filing Proofs of Claim and (II) Approving Form, Manner, and Sufficiency of Notice* (Docket No. 159).

1.12    "**Beneficiaries**" means all Holders of Claims (including Professionals) that are to receive: (i) a Distribution from the Liquidating Trust on account of being the Holder of an Allowed Claim; or (ii) disbursement from the Trust of Reserved Cash that is required to be turned over to the Holder of an Erroneous Payment Claim thereof pursuant to a Final Order as set forth in section 5.5 of this Plan, if applicable.

1.13    "**Business Day**" means any day, other than as Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.14    "**Buyer**" means AllTranstek, L.L.C., as purchaser of substantially all of the Debtor's assets as approved pursuant to the Sale Order.

1.15    "**Case**" means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled *In re RAS Data Services, Inc.*, Case No. 25-11837, currently pending before the Bankruptcy Court.

1.16    "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.17    "**Causes of Action**" means any claim, cause of action, chose in action, action, suit, demand, and any other debt, obligation, right, damage, remedy, controversy, agreement, promise,

2

lien, variance, trespass, power, privilege, license, franchise, judgment, third-party claim, subrogation claim, guaranty claim, contribution claim, reimbursement claim, indemnity claim, counterclaim, right of setoff or recoupment, crossclaim, claim objection, defense to claim, and liability whatsoever of any kind or character relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity belonging to the Estate; (b) any claim pursuant to sections 362, 502, and 510 of the Bankruptcy Code and any analogous provisions of applicable state law belonging to the Estate; (c) any claim, right or cause of action related to any and all Avoidance Actions; (d) any claim or defense including, but not limited to fraud, mistake, duress, and usury and any other defenses belonging to the Estate pursuant to section 558 of the Bankruptcy Code; and (e) any claim, right, or cause of action against any Insiders, officers, directors, recipient of a fraudulent transfer, and/or related entities.

1.18   "**Chief Restructuring Officer**" means Sandor Jacobson, appointed on or about July 11, 2025, and includes his capacity as Chief Executive Officer, Secretary, and Treasurer as appointed on the same date.

1.19   "**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.20   "**Class**" means a class of Holders of Claims as described in the Plan.

1.21   "**Committee**" means the Official Committee of Unsecured Creditors appointed in this Case on August 15, 2025, pursuant to section 1102 of the Bankruptcy Code (Docket No. 69).

1.22   "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.23   "**Confirmation Hearing**" means the date on which the Bankruptcy Court holds a hearing pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

1.24   "**Confirmation Order**" means the order confirming this Plan.

1.25   "**De Minimis Distribution**" means any Distribution in an amount less than fifty dollars ($50.00).

1.26   "**Debtor**" means RAS Data Services, Inc., inclusive of its capacity as debtor in possession.

1.27   "**Disclosure Statement**" means the *Disclosure Statement with Respect to First Second Amended Joint Plan of Liquidation of Debtor and Official Committee of Unsecured Creditors* associated with this Plan: (a) filed by the Debtor and the Committee; and (b) approved by the Bankruptcy Court on a preliminary or conditional basis prior to solicitation of acceptances

3

of the Plan, and for which the Debtor will seek approval on a final basis at the Confirmation Hearing.

1.28    "**Disputed Claim**" or "**Disputed . . . Claim**" means:

a Claim that has not been listed by the Debtor in its Schedules or has been listed in the Schedules at zero, or has been listed in the Schedules as contingent, unliquidated or disputed and for which no proof of Claim has been timely filed with the Bankruptcy Court; or

if a proof, or request for payment, of such Claim has been filed: (i) a Claim for which no corresponding Claim is listed on the Debtor's books and records or in its Schedules or (ii) a Claim for which a corresponding Claim is listed in the Debtor's books and records, but the nature or amount of the Claim as asserted in the filed proof of Claim varies from the nature and amount of such Claim as it is listed on in the Debtor's books and records or its Schedules; or

a Claim otherwise subject to a formal objection filed in the Case, a request for estimation filed in the Case, or otherwise disputed (in writing delivered to the Holder of such Claim) by the Debtor, Liquidating Trustee, or any party-in-interest, in accordance with applicable law; and (ii) which such written objection has not been withdrawn, resolved or overruled by a Final Order of the Bankruptcy Court.

For the avoidance of doubt, the Debtor, the Committee and the Liquidating Trustee reserve the right to object to any Claim not otherwise allowed by Final Order of the Court in accordance with the Plan, the Liquidating Trust Agreement, the Bankruptcy Code and the Bankruptcy Rules.

1.29    "**Distribution**" means the Cash or other value distributed to Holders of Allowed Claims or Beneficiaries, as applicable, pursuant to the Plan and/or the Liquidating Trust Agreement.

1.30    "**Effective Date**" means a date selected by the Plan Proponents, which shall be a Business Day after the Confirmation Date on which all conditions specified in Section 10.3 herein have been satisfied (or waived in accordance therewith); provided, however, that if a stay of the Confirmation Order is in effect on such day, then the Effective Date shall be the first day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

1.31    "**Enforcement Proceeding**" means a civil or criminal proceeding brought by the state or federal government against the Debtor, its former chief executive officer, or any individual acting in concert with them based on their pre-Petition Date conduct for which, *inter alia*, restitution or similar compensatory relief is sought for Holders of Claims, including Owners, incurring financial losses resulting from such conduct.

1.32    "**Erroneous Payment Claim Bar Date**" means twenty-one (21) days from the Effective Date, unless such date falls on a day which is not a Business Day, in which case, the Erroneous Payment Claim Bar Date means the next successive day which is a Business Day.

4

1.33    "**Erroneous Payment Claims**" means Claims listed on *Schedule 1.33* attached to this Plan and hereby expressly incorporated herein and made a part hereof. Notwithstanding anything to the contrary in this Plan, the designation of an Erroneous Payment Claim in *Schedule 1.33* does not constitute an admission by the Plan Proponents or an adjudication by the Bankruptcy Court that any funds comprising an Erroneous Payment Claim are not property of the Estate or that such funds were paid in error.

1.34    "**Equity Security**" shall have the meaning provided by section 101(16) of the Bankruptcy Code.

1.35    "**Equity Security Holder**" shall have the meaning provided by section 101(17) of the Bankruptcy Code.

1.36    "**Estate**" means the estate of the Debtor created in this Case pursuant to section 541 of the Bankruptcy Code.

1.37    "**Exculpated Party**" means, collectively, and in each case in its capacity as such: (a) the Debtor and its Estate; (b) the Committee and its individual members; (c) the Debtor's and the Committee's Professionals; (d) the Independent Director; (e) the Chief Restructuring Officer; (f) Livingstone Partners LLC; and (g) with respect to each of the foregoing entities in clauses (a) through (f) each such entity's current and former affiliates, direct and indirect subsidiaries, and direct and indirect equity holders and/or partners, and each of their respective current and former directors, officers, equity holders, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, trustees, investment bankers, and other professional advisors, provided, however, that Michael Calomino is expressly excluded from the definition of Exculpated Party and shall not be deemed to be an Exculpated Party.

1.38    "**Executory Contract**" means an executory contract or unexpired lease, the assumption, rejection and assignment of which are governed by, *inter alia*, section 365 of the Bankruptcy Code.

1.39    "**Final Order**" means an order or judgment as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending, excluding the right to seek relief pursuant to Federal Rule of Civil Procedure 60, as incorporated into the Bankruptcy Rules pursuant to Bankruptcy Rule 9024.

1.40    "**General Bar Date**" means January 5, 2026, the bar date by which a proof of Claim must be filed, except for: (a) claims of governmental units; (b) claims resulting from a subsequent amendment to the Schedules; and (c) claims based on the Debtor's rejection of an Executory Contract, as established by the Bar Date Order.

1.41    "**General Unsecured Claim**" means any Unsecured Claim, arising prior to the Petition Date, that is not a Professional Fee Claim, Other Administrative Claim, Priority Tax Claim, Priority Claim, Infinity Claim, Erroneous Payment Claim, or Interest.

1.42    "**Governmental Bar Date**" means January 29, 2026, the bar date by which a proof of Claim of a governmental unit must be filed, as established by the Bar Date Order.

5

1.43    "**Holder**" means any Person owning or otherwise having a legal or equitable right to assert and enforce a Claim or Interest.

1.44    "**Impaired**" means any Class, or any Claim or Interest in a Class, that is impaired within the meaning of section 1124 of the Bankruptcy Code. Under the Plan, Classes 2, 3, 4, and 5 are Impaired.

1.45    "**Independent Director**" means Michael L. Gesas, who was appointed as the sole independent director of the Debtor on or about July 28, 2025.

1.46    "**Infinity**" means, collectively, Infinity Transportation 2024, LLC, Infinity Transportation 2023, LLC, Infinity Transportation 2022, LLC, Infinity Transportation 2020-1, LLC, Infinity Transportation 2020-2, LLC, Infinity Transportation 2019-1, LLC, Infinity Transportation 2019-2, LLC, Infinity Transportation 2018-1, LLC, Infinity Transportation 2018-2, LLC, Infinity Transportation 2016-1, LLC, Infinity Transportation III LLC, Infinity Rail Canada Portfolio 6, ULC, Infinity Rail Canada Portfolio 7, ULC, Arc Rail 2013-1, LLC, Arc Rail Canada Four, ULC, Arc Rail Canada Sub One, ULC, Arc Rail Canada Two, ULC, Arc Rail Canada Five, ULC, Arc Rail Canada Three, ULC, and Infinity Transportation Equipment Leasing, LLC.

1.47    "**Infinity Adversary Proceeding**" means the adversary proceeding initiated by Infinity against the Debtor pending before the Bankruptcy Court as Adv. No. 25-00244.

1.48    "**Infinity Claims**" means all Claims and Causes of Action of Infinity that were asserted by, or that could have been asserted by, Infinity in the Case, including without limitation all Infinity Trust Claims.

1.49    "**Infinity Contingent Payment**" means the definition ascribed to it in section 5.4.2 of the Plan.

1.50    "**Infinity Fixed Payment**" means the definition ascribed to it in section 5.4.2 of the Plan.

1.51    "**Infinity Remaining Claim**" means the definition ascribed to it in section 5.4.2 of the Plan.

1.52    "**Infinity Trust Claim**" means all claims or Causes of Action of Infinity that have been asserted in, or that could have been asserted in, the Infinity Adversary Proceeding asserting that: (a) the Debtor holds property in trust for the benefit of Infinity and that such property is not property of the Estate; or (b) Infinity is entitled to a constructive trust over property of the Estate; or (c) Infinity is entitled to any Distribution from the Estate greater than that provided by this Plan to Holders of Allowed Class 4 Claims.

1.53    "**Initial Distribution**" shall mean the date that is no later than thirty-five (35) days after the Effective Date, on which the Debtor or Liquidating Trustee, as applicable, shall make a Distribution to all Allowed Claims after allocating for Reserved Cash.

1.54    "**Insider**" shall have the meaning provided by section 101(31) of the Bankruptcy Code.

1.55   "**Interest**" means the legal, equitable, contractual and other rights of the Holders of any Equity Security in the Debtor, including the rights of any entity to purchase or demand the issuance of any Equity Securities, including: (a) conversion, exchange, voting, participation and dividend rights; (b) liquidation preferences; (c) stock options, warrants and put rights; and (d) share-appreciation rights.

1.56   "**Lien**" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.57   "**Liquidating Trust**" means a common law grantor trust to be established pursuant to the Plan, the Liquidating Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the Beneficiaries. The Liquidating Trust shall liquidate and distribute the Liquidating Trust Assets, in accordance with this Plan and the Liquidating Trust Agreement.

1.58   "**Liquidating Trust Agreement**" means the agreement to be executed by no later than the Effective Date among the Debtor, the Committee and the Liquidating Trustee, which shall govern the obligations of the Liquidating Trustee with respect to oversight of the distribution of the Net Trust Proceeds of the Liquidating Trust Assets, as further set forth in the Liquidating Trust Agreement and this Plan.

1.59   "**Liquidating Trust Assets**" means those assets to be transferred to and vested in the Liquidating Trust pursuant to this Plan and the Confirmation Order, plus all proceeds, earnings and replacements arising from or relating to these assets and all other assets acquired by the Liquidating Trust at any time. The Liquidating Trust Assets shall include (but not be limited to): (a) all Cash remaining in the Estate; (b) all Causes of Action, including the right to prosecute same and all proceeds thereof; (c) all pending litigation claims, regardless of venue, in which the Debtor is a plaintiff; (d) all other remaining tangible and intangible personal property of the Debtor; (e) all rights of the Debtor under the Plan, the Confirmation Order and all other orders entered by the Bankruptcy Court in the Case on or prior to the Confirmation Date; and (f) all books and records related to the Estate that are in the Debtor's possession, custody and control as of the Confirmation Date not otherwise sold to the Buyer.

1.60   "**Liquidating Trustee**" means John B. Pidcock of Oxford Restructuring Advisors, or any successor designated by the Advisory Committee, subject to approval by the Bankruptcy Court, to serve as custodian for the Liquidating Trust and to oversee the liquidation and distribution of the Liquidating Trust Assets held therein for the benefit of the Beneficiaries, pursuant to the Plan, the Confirmation Order and the Liquidating Trust Agreement.

1.61   "**Liquidating Trustee's Expenses**" means the reasonable fees, costs and expenses incurred by the Liquidating Trustee and any Professionals retained by him or her in connection with the performance of his or her duties and responsibilities under the Plan and Liquidating Trust Agreement, as well as any other reasonable and necessary costs of administration of the Liquidating Trust, including UST Fees incurred during the post-Confirmation Date period and the reasonable fees, costs and expenses of Debtor and its Professionals for work performed at the direction of the Liquidating Trustee in furtherance of the Plan or to support the efforts of the Liquidating Trustee, all of which may be paid from the Liquidating Trust Assets.

1.62    "**MSA**" means a master services agreement (whether denominated "Master Services Agreement" or otherwise), under which the Debtor agreed to provide management services related to railcars, whether or not such agreement is in existence as of the date of this Plan.

1.63    "**Net Trust Proceeds**" means the Cash proceeds received by the Liquidating Trustee from time to time from the liquidation or other disposition of the Liquidating Trust Assets, net of (a) the reasonable or necessary costs of such sale or other disposition, ~~including reasonable fees and expenses of the Liquidating Trustee's legal counsel and other Professionals incurred in connection therewith~~ (in the initial amount of $200,000.00), and (b) Reserved Cash.

1.64    "**Net Sale Proceeds**" means the Cash proceeds of the Sale.

1.65    "**Original Budget Order**" means that certain *Order Granting Motion of the Debtor to Use Funds to Purse Sale and for Shortened Notice Thereof* entered by the Bankruptcy Court on September 12, 2025 (Docket No. 109).

1.66    "**Other Administrative Claim**" means an Administrative Claim that is not a Professional Fee Claim.

1.67    "**Owner**" means any party to an MSA other than the Debtor.

1.68    "**Owner Trust Claim**" means any Claim or Cause of Action asserted, or that could be asserted, by an Owner other than Infinity, that is substantially similar to the Infinity Trust Claims, including without limitation any Claim or Cause of Action contending that property is not property of the Estate, should be subject to a constructive trust, or should be entitled to a Distribution greater than that provided to Holders of Allowed Class 4 Claims, as a result of an MSA or the course of dealing thereunder.

1.69    "**Person**" shall include an "entity," as defined by section 101(15) of the Bankruptcy Code.

1.70    "**Petition Date**" means the date of the filing of the Debtor's Case, or August 1, 2025.

1.71    "**Plan**" means this *~~First~~Second Amended Plan of Liquidation of Debtor and the Official Committee of Unsecured Creditors* as set forth herein or as it may be modified or amended.

1.72    "**Plan Proponents**" means the Debtor and the Committee.

1.73    "**Pre-Petition-Date Professionals**" means those professional firms employed by the Debtor prior to the Petition Date to provide restructuring advisory and/or legal services, ~~and shall include~~consisting of Adelman & Gettleman Ltd., Plante Moran, PLLC, and Goldstine Skrodzki, Russian, Nemec and Hoff, Ltd.

1.74    "**Priority Claim**" means a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the Bankruptcy Code. With respect to the Claims of employees or former employees of the Debtor, such Claims shall

constitute Priority Claims only to the extent permissible under sections 507(a)(4) and (a)(5) of the Bankruptcy Code or prior order of the Bankruptcy Court.

1.75    "**Priority Tax Claims**" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.76    "**Professional Fee Claims**" means Claims of Professional Persons for compensation for services rendered in this Case prior to the Confirmation Date pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.77    "**Professional**" or "**Professional Persons**" means persons, including attorneys, accountants, investment bankers, financial advisors and other professional advisors retained by the Debtor, the Committee or the Liquidating Trustee, or to be compensated pursuant to, sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.78    "**Pro Rata**" means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included, provided, however, that the calculation of Pro Rata shall take into account any Distributions made, or withheld but allocated, on account of a particular Allowed Claim.

1.79    "**Released Party**" means, collectively, and in each case in its capacity as such: (a) all Professionals; (b) the Pre-Petition-Date Professionals; (c) the Chief Restructuring Officer; and (d) the Independent Director.

1.80    "**Releases**" means the mutual releases more fully described in Section 11.7 of the Plan.

1.81    "**Reserved Cash**" means all Cash remaining in the Estate on the Effective Date that is reserved or earmarked under this Plan for payment of Allowed Administrative Claims, Allowed Priority Tax Claims, the Infinity Fixed Payment, Allowed Erroneous Payment Claims, Disputed Claims, and estimated fees, costs, and expenses (in the initial amount of $200,000.00) of the Liquidating Trust and its Professionals.

1.82    "**Sale**" means the sale of substantially all of the Debtor's assets to Buyer as more fully described in that certain Asset Purchase Agreement by and between Debtor and Buyer dated as of December 23, 2025 and approved pursuant to the Sale Order.

1.83    "**Sale Order**" means that certain *Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Interests Including Liens, Claims, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (Docket No. 169) entered by the Bankruptcy Court on December 23, 2025.

1.84    "**Schedules**" means the Schedules of Assets and Liabilities (Docket No. 80) filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy

Forms of the Bankruptcy Rules including the *Global Notes, Statement of Limitations and Specific Disclosures, and Reservation of Rights Regarding Debtor's Schedules and Statement of Financial Affairs*, filed concurrently therewith, as they have been or may be supplemented or amended from time to time.

1.85    "**Secured Claim**" means any Claim that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or any Claim that is subject to a Lien.[2]

1.86    "**SOFA**" means the Debtor's Statement of Financial Affairs (Docket No. 82) filed in the Case by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules including the *Global Notes, Statement of Limitations and Specific Disclosures, and Reservation of Rights Regarding Debtor's Schedules and Statement of Financial Affairs*, filed concurrently therewith, as they have been or may be supplemented or amended from time to time.

1.87    "**Subsequent Distribution**" means any Distribution made after the Initial Distribution.

1.88    "**Unsecured Claim**" means a Claim not secured by a Lien on property of the Estate or which is otherwise not a Secured Claim (including any Claim that is not subject to a right of setoff against Debtor or its Estate under section 553 of the Bankruptcy Code).

1.89    "**U.S. Trustee**" means the United States Trustee.

1.90    "**UST Fees**" means all fees and charges properly assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.91    "**Victim Recovery Funds**" means any Cash received by the Estate or the Liquidating Trust, or otherwise payable by a governmental unit to the Debtor, the Estate, the Liquidating Trustee, or the Liquidating Trust, pursuant to a court order directing such Cash to be distributed in accordance with the Plan on account of losses suffered by Holders of Claims arising from actions of the Debtor, its former chief executive officer, or any person acting in concert therewith.  For the avoidance of doubt: (a) recoveries obtained by the Debtor, the Committee, or the Liquidating Trustee as a result of the prosecution of Causes of Action pursuant to this Plan and the Liquidating Trust Agreement shall not constitute Victim Recovery Funds, nor shall such Causes of Action constitute Enforcement Proceedings; and (b) nothing contained in this Plan is intended to preclude Holders of Claims from pursuing, enforcing, or collecting on account of their own rights in, an Enforcement Proceeding.

1.92    **Rules of Interpretation and Computation of Time**.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other

---

[2] There are no Secured Claims with conventional Liens in the Case.

agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to any entity as a Holder of a Claim or Interest includes the entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**ARTICLE II**
**Unclassified Claims**

Section 1123(a)(1) of the Bankruptcy Code provides that Administrative Claims and Priority Tax Claims are not to be classified under a plan. Accordingly, Allowed Administrative Claims (consisting of Allowed Professional Fee Claims and Allowed Other Administrative Claims) and Allowed Priority Tax Claims are not classified under the Plan.

**ARTICLE III**
**Designation of Classified Claims and Interests**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Claims and Interests are classified as follows:

3.1    **Class 1 Claims** shall consist of all Allowed Priority Claims.

3.2    **Class 2 Claims** shall consist of all Allowed Infinity Claims.

3.3    **Class 3 Claims** shall consist of all Allowed Erroneous Payment Claims.

3.4    **Class 4 Claims** shall consist of all Allowed General Unsecured Claims.

3.5    **Class 5 Interests** shall consist of the Interests of Equity Security Holders.

**ARTICLE IV**
**Impairment of Classes**

4.1    **Impaired Classes of Claims Entitled to Vote**. Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Classes 2, 3, and 4 are Impaired, and Holders of Allowed Claims in that Class shall be entitled to vote to accept or reject this Plan.

4.2    **Classes Deemed to Accept the Plan**. Class 1 is unimpaired by this Plan and Holders of such Allowed Claims are conclusively presumed to have accepted this Plan pursuant to

11

section 1126(f) of the Bankruptcy Code. The votes of the Holders of these Claims will therefore not be solicited.

4.3    **Classes Deemed to Reject the Plan**. Holders of Interests in Class 5 will not receive or retain any distribution under the Plan on account of their Interests. Pursuant to section 1126(g) of the Bankruptcy Code, Class 5 is Impaired and is conclusively presumed to have rejected this Plan, and the votes of Equity Security Holders holding Class 5 Interests will therefore not be solicited.

4.4    **Cram Down**. The Plan Proponents will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b)(2)(C) of the Bankruptcy Code with respect to Class 5, which is deemed to have rejected the Plan.

4.5    **Elimination of Vacant Classes**. Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V
## Treatment of Claims and Interests

5.1    **Allowed Other Administrative Claims and Allowed Professional Fee Claims.**

5.1.1    **Applications for Administrative Claims**. All Persons requesting allowance and payment of Administrative Claims shall file with the Bankruptcy Court an application, in accordance with section 503(a) of the Bankruptcy Code, for allowance of such Administrative Claim, along with all documentation supporting such claim, no later than the Administrative Claims Bar Date. Objections to such applications for payment (whether by Persons requesting payment of Other Administrative Claims or Professional Persons requesting payment of Professional Fee Claims), if any, must be written, filed with the Bankruptcy Court and served on the applicable parties within twenty-one (21) days after such application is filed. Failure by a Person to timely file a request for allowance of an Other Administrative Claim shall result in such Other Administrative Claim being disallowed and expunged in its entirety, with the affected Holder having been deemed to waive its right to a Distribution from the Estate or the Liquidating Trust. Failure by a Professional to timely file a request for allowance of a Professional Fee Claim, unless otherwise excused by the Court for good cause shown, shall result in such Professional Fee Claim being disallowed and expunged in its entirety, with the affected Professional having been deemed to waive its right to a Distribution from the Estate and the Liquidating Trust.

5.1.2    **Payment**. Each Allowed Administrative Claim (to the extent not already paid pursuant to any order entered by the Bankruptcy Court) shall be paid by the Debtor or the Liquidating Trustee (as applicable): (a) in full, in Cash, in such amount as such Administrative Claim is allowed by the Bankruptcy Court on or before the Effective Date or the date upon which such Administrative Claim is allowed or (b) upon such other terms as may be agreed upon between the Holder of such Administrative Claim and the Debtor or the Liquidating Trustee (as applicable). All UST Fees due and owing shall be paid on the Effective Date. The Liquidating Trust and

Liquidating Trustee shall be liable for the payment of all UST Fees, if any, after the Effective Date. The Liquidating Trust and Liquidating Trustee shall provide the United States Trustee with post-confirmation quarterly reports that shall include all of their respective disbursements for that quarter.

5.2     **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid by the Liquidating Trustee in accordance with the Liquidating Trust Agreement (and in accordance with sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code), either: (a) in full, in Cash, within forty-five (45) days of the Effective Date; or (b) over time in accordance with section 1129(a)(9)(C)(ii) of the Bankruptcy Code, in the Liquidating Trustee's discretion.

5.3     **Class 1 Claims**.

5.3.1   <u>Classification</u>: Class 1 consists of all Allowed Priority Claims against the Debtor.

5.3.2   <u>Treatment</u>: On the later of the date of any Distribution, or the date on which a Priority Claim becomes an Allowed Priority Claim or is otherwise payable, each Holder of an Allowed Priority Claim shall receive (a) Cash in an amount equal to the unpaid portion of the Allowed Priority Claim, or (b) such other treatment as may be agreed to between the Holder of an Allowed Priority Claim and the Debtor.

5.3.3   <u>Voting</u>: Class 1 is unimpaired and is deemed to accept the Plan. Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

5.4     **Class 2 Claims**.

5.4.1   <u>Classification</u>: Class 2 consists of all Allowed Infinity Claims against the Debtor.

5.4.2   <u>Treatment</u>: Infinity shall have an Allowed Claim in the aggregate amount of $10,580,272.00. Notwithstanding that the Debtor will not receive a discharge of its obligations under this Plan, Infinity shall be paid, and will be deemed to have accepted, in full satisfaction of the Allowed Infinity Claims, the following treatment:

(a)     Infinity shall receive Cash in the amount of $5,600,000, payable as follows: (i) within five (5) business days of the Effective Date, an amount equal to $3,000,000; and (ii) upon the Initial Distribution to Allowed Holders of General Unsecured Claims in Class 4 (and if applicable, Class 3 Claims who receive "Treatment A" under section 5.5.3 of this Plan as part of such Initial Distribution), an amount equal to $2,600,000 (payments required under subsections (a)(i) and (a)(ii) of this section 5.4.2 are collectively referred to herein as the "**Infinity Fixed Payment**").

(b)     Subject to and conditioned upon Infinity's receipt of the Infinity Fixed Payment, Infinity shall be deemed to have a remaining Claim in the amount of $4,980,272 (the "**Infinity Remaining Claim**"). On account of the Infinity Remaining Claim, Infinity shall receive Cash at the time of any Distribution, solely on account of its Remaining Claim, payable as follows:  (i) subject to and expressly conditioned upon, and solely to the extent of, Class 3 Claims

13

receiving "Treatment A" under section 5.5.3 of this Plan, Infinity shall be entitled to participate in a Distribution limited to the extent of its Pro Rata share, *pari passu* with Holders of Allowed Class 3 Claims receiving such "Treatment A" and Holders of Allowed Class 4 Claims, relating and limited exclusively to any Cash comprising Erroneous Payment Claims receiving such "Treatment A" and becoming property of the Estate; and (ii) subject to and conditioned upon, and solely to the extent of, any Distribution of Victim Recovery Funds, Infinity shall be entitled to participate in such Distribution or payment, as the case may be, Pro Rata and *pari passu* with Holders of Allowed Class 3 Claims receiving "Treatment A" under section 5.5.3 of this Plan and Holders of Allowed Class 4 Claims, of any Victim Recovery Funds (payments required under subsections (b)(i) and (b)(ii) of this section 5.4.2, if any, are collectively referred to herein as the "**Infinity Contingent Payment**"). No representations have been made by the Debtor, the Committee, or any Professional Persons to Infinity regarding the likelihood of an Infinity Contingent Payment, and Infinity acknowledges such payment may never occur, and in such event, there shall be no Infinity Contingent Payment and this Plan shall remain otherwise effective pursuant to its other terms and conditions.

(c)     The calculation of Pro Rata shares as set forth in section 5.4.2(b) of this Plan shall be based upon and take into account: (i) the amount of the Infinity Remaining Claim; (ii) any payments made to Holders of Allowed Class 3 Claims receiving "Treatment A" under section 5.5.3 of this Plan, or otherwise reserved for such payments; and (iii) any payments made to Holders of Allowed Class 4 Claims or otherwise reserved for such payments;.

(d)     Except for the treatment provided for this section 5.4.2, Infinity shall irrevocably and unconditionally be deemed to have waived the Infinity Claim and the right to any further Distributions from the Estate or the Liquidating Trust, and shall in no event participate in any other Distributions, including but not limited to Distributions made on account of recoveries of Causes of Action.

5.4.3     Release by Infinity: Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, and subject only to receipt by Infinity of the Infinity Fixed Payment and the other distributions and rights to which Infinity is entitled under this Plan, and to the fullest extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the rights and payment to Infinity as set forth in this Plan constitutesconstitute satisfaction in full of the Infinity Claims, and Infinity hereby releases the Debtor, its Estate, the Committee and its members, and the Released Parties from any and all Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, and other rights and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted, based on, relating to, or arising from, the Infinity Claims, the Debtor or the Estate, the conduct of the Debtor's business, the business relationship between the Debtor and Infinity, the conduct of the Pre-Petition-Date Professionals, the formulation, preparation, solicitation, negotiation, filing, or pursuit of confirmation and consummation of the Plan and Disclosure Statement, or the filing and prosecution of the Case; provided, however, that the foregoing provisions of these releases shall not operate to waive or release any rightrights, including without limitation rights of payment, in favor of Infinity expressly set forth in and preserved by the Plan, *i.e.*, the right to participate in Claims receiving "Treatment A" under section 5.5.3 of the Plan and any right to participate in any

14

Victim Recovery Funds. Infinity further acknowledges that any Person coming within the purview of this release may plead release and satisfaction, among other affirmative defenses, as a defense to any action brought by Infinity falling within the terms of this release. This provision does not release the Debtor, the Committee and its members, ~~or~~ the Released Parties, or the Liquidating Trust from their respective obligations under this Plan.

5.4.4    Release by the Debtor, the Estate, the Committee and its Members, and the Released Parties: Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, its Estate, the Committee and its members, and the Released Parties hereby release Infinity, its affiliates, subsidiaries, and its and their parents, officers, directors, employees, agents, and professionals, from any and all Claims, obligations, ~~suit~~suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, and other rights and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted, based on, relating to, or arising from~~,~~: the business and contractual relationship between the Debtor and Infinity~~,~~; the Case; the conduct of Infinity pre- or post-petition vis-à-vis the Debtor ~~or the~~, its Estate, the Committee and its members, or the Released Parties; or the filing or prosecution of the Infinity Claims and the Infinity Adversary Proceeding~~,~~; including, without limitation, all Causes of Action and Avoidance Actions. This provision does not release Infinity from its obligations under the Plan.

5.4.5    Withdrawal of Motion to Convert: If, within five (5) Business Days after the Confirmation Date, the *Infinity Lessors' Motion for Entry of an Order: Converting Debtor's Chapter 11 Case to Case Under Chapter 7; and (b) Approving Shortened Notice*, Docket No. 215, has not yet been denied or withdrawn, Infinity shall file a notice of withdrawal of such motion on the docket of the Case.

5.4.6    Dismissal of Infinity Adversary Proceeding: Within five (5) Business Days after receipt of the Infinity Fixed Payment, Infinity shall take all actions necessary to cause dismissal of the Infinity Adversary Proceeding, with prejudice, with all parties to the Infinity Adversary Proceeding to bear their own costs, expenses, and legal fees.

5.4.7    Release of Restricted Funds. On the Effective Date, this Plan shall constitute and satisfy the requirements of a written agreement between the Debtor, the "Infinity Lessors" (as defined in the Original Budget Order), and the Committee removing all restrictions and prohibitions precluding the Debtor from using or distributing the "Restricted Funds" (as defined in the Original Budget Order) without further act, deed, or order of the Bankruptcy Court.

5.4.8    Bankruptcy Rule 9019 Settlement. The terms of Section 5.4 of this Plan are intended to constitute compromise of a controversy as set forth in sections 7.13 and 11.7 of this Plan.

5.4.9    Payments to Infinity. The Debtor or the Liquidating Trustee (as applicable) shall pay the Infinity Fixed Payment and the Infinity Contingent Payment as lump sums, rather than allocating each such payment among the various entities constituting Infinity. The Infinity

15

Fixed Payment and the Infinity Contingent Payment shall be directed to Infinity Transportation Equipment Leasing, LLC, Attn: Ellen Stewart, Accounting Director, 201 17th Street, Suite 401, Atlanta, GA 30363, or to such other payee or address as Infinity may direct in a written notice to the Debtor or the Liquidating Trustee.

5.4.10  Enforcement Proceeding Rights. Nothing contained in this Plan is intended to preclude Infinity from pursuing, enforcing, or collecting on account of its own rights in, an Enforcement Proceeding.

5.4.11  Voting: Class 2 is impaired. Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

5.5  **Class 3 Claims**.

5.5.1  Classification: Class 3 consists of all Erroneous Payment Claims against the Debtor.

5.5.2  Erroneous Payment Claim Process.  Any Holder of an Erroneous Payment Claim seeking allowance of an Erroneous Payment Claim must file a motion with the Court on or before the Erroneous Payment Claims Bar Date. Said motion shall: (a) provide proper service to all parties of record in the Bankruptcy Case; (b) comply with applicable Bankruptcy Rules and local rules of the Bankruptcy Court; (c) attach as exhibits all documents supporting the Erroneous Payment Claim; and (d) explain in sufficient detail the legal and factual basis for why funds paid to or held by the Estate on account of such Erroneous Payment Claims are not property of the Estate or are otherwise subject to a constructive trust in favor of such Holder, and should receive "Treatment B" as set forth in section 5.5.3 of this Plan. At the initial hearing on such motion, the Bankruptcy Court shall set a briefing schedule thereon, and to the extent appropriate, schedule a trial on the matter. Any party in interest, including the Liquidating Trustee, may oppose such motion and may be heard at any hearings or trials on the matter. Failure by a Holder of an Erroneous Payment Claim to file a motion in compliance with this section 5.5.2 shall be deemed an unconditional and irrevocable waiver of such Holder's right to assert an Erroneous Payment Claim, with such Erroneous Payment Claim being provided "Treatment A" as set forth in section 5.5.3 of this Plan.

5.5.3  Treatment: Cash in an amount equal to each of the Erroneous Payment Claims shall constitute Reserved Cash until such time as a Final Order is entered adjudicating the rights of the applicable Holder of an Erroneous Payment Claim pursuant to section 5.5.2 of this Plan, whereupon the applicable Holder's Erroneous Payment Claim shall receive either "Treatment A" or "Treatment B," as follows:

**Treatment A (Estate/Liquidating Trustee Prevails):** To the extent funds alleged to have been paid erroneously to the Debtor in an Erroneous Payment Claim are deemed by a judgment and Final Order to be property of the Estate; not subject to a constructive trust for the benefit of the Holder of such Erroneous Payment Claim; or not otherwise payable to the Holder of such Erroneous Payment Claim, then in such event, the applicable amount of Reserved Cash shall be deemed property of the Estate without further act or deed, and the Holder of such Erroneous

Payment Claim will be considered to have the equivalent of a General Unsecured Claim in the allowed amount of such Erroneous Payment Claim, if any, and receive Cash, in an amount equal to its Pro Rata share, *pari passu* with the Infinity Contingent Payment and Allowed Class 4 Claims, in accordance with this Plan, from the Net Trust Proceeds, after satisfaction of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, and the Infinity Fixed Payment.

**Treatment B (Holder(s) of Erroneous Payment Claims Prevail):** To the extent funds alleged to have been paid erroneously to the Debtor in an Erroneous Payment Claim are deemed by a judgment and Final Order to be property of the Holder of such Erroneous Payment Claim and not property of the Estate in the Debtor's possession on or after the Petition Date, as applicable, or subject to a constructive trust for the benefit of the Holder of such Erroneous Payment Claim and such funds were in the Debtor's possession on or after the Petition Date, as applicable, the Holder of such Erroneous Payment Claim shall receive Cash in the amount specified in such Final Order within ten (10) Business Days of such Final Order becoming a Final Order.

5.5.4    Voting: Class 3 is impaired. Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

5.6    **Class 4 Claims**.

5.6.1    Classification: Class 4 consists of all Allowed General Unsecured Claims against the Debtor. Reference is also made to Article VIII of this Plan with respect to any Holder of a General Unsecured Claim and Owner Trust Fund Claims.

5.6.2    Treatment: Allowed Class 4 Claims shall be paid Pro Rata, *pari passu* with the Infinity Contingent Payment (if any) and Allowed Class 3 Claims receiving "Treatment A," from the Net Trust Proceeds, after satisfaction of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, the Infinity Fixed Payment, and Allowed Class 3 Claims receiving "Treatment B." For the avoidance of doubt, the Infinity Remaining Claim is only included in Pro Rata Distributions of: (a) funds distributed as a result of Allowed Class 3 Claims receiving "Treatment A," or (b) Victim Recovery Funds.

5.6.3    Voting: Class 4 is impaired. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.7    **Class 5 Interests**.

5.7.1    Classification: Class 5 consists of all Equity Securities held in the Debtor

5.7.2    Treatment: Holders of Class 5 Interests shall not receive a distribution under the Plan, and their Equity Securities shall be canceled and extinguished as of the Effective Date.

5.7.3   Voting: Class 5 is impaired and deemed to reject the Plan. Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

**ARTICLE VI**
**Treatment of Executory Contracts**

6.1   **Contracts Deemed Rejected**. Other than as explicitly set forth herein, each Executory Contract of the Debtor that has not expired by its own terms or been assumed (or assumed and assigned to Buyer) prior to the Confirmation Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Confirmation Date.

6.2   **Bar Date for Rejection Damages**. All proofs of claim with respect to Claims arising from the rejection of Executory Contracts pursuant to Section 6.1 of this Plan shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court by no later than twenty-one (21) days after the Confirmation Date. Claims arising from the rejection of Executory Contracts pursuant to Section 6.1 of this Plan, for which the Holder thereof fails to timely file a proof of claim, shall be released, discharged and forever barred from assertion against the Debtor, its Estate or its property, the Liquidating Trust, or the Liquidating Trust Assets.

6.3   **Insurance Policies**. Notwithstanding anything to the contrary in this Plan or the Confirmation Order, unless any insurance policies have been expressly rejected, or assumed and assigned to Buyer, pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), any insurance policies of the Debtor in which the Debtor is or was an insured party (including any policies covering directors' or officers' conduct), or any related insurance agreement issued prior to the Petition Date, shall continue in effect after the Effective Date pursuant to the respective terms and conditions and shall be treated as if assumed. All rights of the Debtor under any insurance policies shall automatically become vested in the Liquidating Trust without necessity for further approvals or orders. To the extent that any insurance policies or related insurance agreements are deemed executory contracts, then, unless such policies have been rejected pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), notwithstanding anything to the contrary in this Plan, this Plan shall constitute a motion to assume, assume and assign, permit "ride through," or ratify such insurance policies or insurance agreements. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption is in the best interests of the Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed upon by the parties prior to the Effective Date, no payments shall be required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any insurance policy or insurance agreement assumed, or assumed and assigned, pursuant to this Section 6.3. **Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to this Case, this Plan, or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for any insured Claims or Causes of Action.** Without limiting the generality of the foregoing, all directors' and officers' liability insurance policies in effect as of the Confirmation Date shall be deemed assumed and shall not be rejected.

18

## ARTICLE VII
### Objections to Claims; Provisions Governing Distributions

7.1    **Objections to Claims**. The Liquidating Trustee shall have standing to file objections to Claims, even if such Claims were scheduled by the Debtor as undisputed, liquidated, or non-contingent. If the Liquidating Trustee has objected to a Claim, Distributions to the affected Holder will be withheld only with respect to the amount actually in dispute, and such objection shall not affect payments or distributions under the Plan on the undisputed portion of the Claim.

7.2    **Beneficiaries Subject to Avoidance Actions**. The Liquidating Trustee may, as otherwise allowed pursuant to section 502(d) and (h) of the Bankruptcy Code in his or her discretion, withhold Distributions to Beneficiaries who are the subject of: (a) a filed Avoidance Action, or (b) a demand letter threatening initiation of an Avoidance Action, in each case, until such time as the Avoidance Action or demand letter has been fully and finally resolved.

7.3    **Estimation**. The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor, Committee, or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4    **Means of Cash Payment**. Cash payments, made pursuant to the Plan and the Liquidating Trust Agreement, shall be in U.S. dollars and, at the option and in the sole discretion of the Liquidating Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Liquidating Trustee.

7.5    **Delivery of Distributions**. Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules, unless superseded by the address set forth on a timely filed proof of Claim or some other writing filed with the Bankruptcy Court and served upon the Liquidating Trustee and/or the Debtor.

7.6    **Tax Identification Numbers and OFAC Certifications**. Notwithstanding anything in the Plan to the contrary, prior to making Distributions hereunder, the Liquidating Trustee shall require all Holders to furnish to him or her: (a) their Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service on a Form W-9 and (b) a certification that the Holder is not a person or entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control ("**OFAC**") sanctions regulations and/or the list of

Specially Designated Nationals and Blocked Persons (collectively, the "**Pre-Distribution Certifications**"). Pre-Distribution Certification forms will be mailed to the ~~Distribution Address~~address for each Holder (and, if counsel has filed an appearance on behalf of a Holder in the Case, to the address of the Holder's counsel) prior to Distributions being made, and Holders shall have thirty (30) days from the date of mailing to return the executed Pre-Distribution Certifications. **Any Holder that fails to return the executed Pre-Distribution Certifications within such thirty (30) day period shall be deemed to have forfeited its right to receive Distributions and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Liquidating Trustee receiving its executed Pre-Distribution Certifications.** Any Distributions that are forfeited pursuant to this provision will be returned to the Liquidating Trustee and become property of the Liquidating Trust, for redistribution pursuant to this Plan.

### 7.7  Undeliverable Distributions

7.7.1  **Holding of Undeliverable Distributions.** If any Distribution to any Holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable. All Holders ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

7.7.2  **Failure to Claim Undeliverable Distributions. Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Liquidating Trustee within ninety (90) days after the date of the initial Distribution made by the Liquidating Trustee to such Holder, shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against the Debtor, its Estate or the Liquidating Trust.** If, after ninety days, Distributions remain unclaimed, unclaimed Distributions will become forfeited Distributions and such amounts shall be made available for distribution to other Liquidating Trust Beneficiaries or for Liquidating Trustee's Expenses.

7.8  **Withholding and Reporting Requirements**. In connection with the Plan, the Liquidating Trust Agreement and all Distributions thereunder, the Debtor and the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state or local or non-U.S. taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor and the Liquidating Trustee, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution, and (b) the Liquidating Trustee reserves the option, in his or her discretion, to not make a Distribution to or on

behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such tax obligations or has, to the Liquidating Trustee's satisfaction, established an exemption therefrom.

7.9     **Time Bar to Cash Payments**. Checks issued by the Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within forty-five (45) days from and after the date of issuance thereof. Requests for reissuance of any check that has become null and void shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim within sixty (60) days of the check becoming null and void. After such sixty (60) day period has elapsed, all Claims relating to such voided checks shall be discharged and forever barred. In the case of checks issued on account of Allowed Claims but not negotiated within forty-five (45) days of issuance and for which no request for reissuance is made before sixty (60) days after issuance, the amounts at issue shall be considered to be a forfeited Distribution.

7.10     **Interest**. Unless otherwise required by applicable bankruptcy law (or under this Plan), or specifically provided for herein, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim in accordance with section 502(b)(2) of the Bankruptcy Code. The amount of all prepetition Unsecured Claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise explicitly provided in the Plan, in section 506(b) of the Bankruptcy Code, or by Final Order, no Holder of a prepetition Claim shall be entitled to or receive interest or fees relating to such Claim.

7.11     **De Minimis Distributions**. The Liquidating Trustee will not make any De Minimis Distributions, and reserves the right to reserve such De Minimis Distributions until such time as the Holder of such Claim is entitled to a Distribution of at least fifty dollars ($50.00).

7.12     **Setoffs**. Consistent with applicable law, the Liquidating Trustee may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Debtor or its Estate may hold against the Holder of such Allowed Claim, regardless of whether the applicable Claim was designated in the Schedules as subject to setoff; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor, its Estate, or the Liquidating Trust of any such claims, rights, and Causes of Action that the Debtor, its Estate, or the Liquidating Trustee may possess against such Holder. Any setoff alleged by a Holder of a Claim that is opposed by the Debtor, Liquidating Trustee, or party in interest shall be resolved upon objection to such Claim.

7.13     **Settlement of Claims and Controversies**. Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have against the Debtor with respect to any Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of

the Debtor, its Estate, the Liquidating Trust, and Holders of Claims and is fair, equitable and reasonable.

**ARTICLE VIII**
**Owner Trust Claims**

8.1     **Bar and Waiver to Assert Owner Trust Claims.**  Upon the Confirmation Date, each Owner shall absolutely, irrevocably, and unconditionally be forever barred from asserting, and deemed to have waived and forever relinquished its right to assert, an Owner Trust Claim (but not a General Unsecured Claim) on account of any Claim such Owner may have against the Debtor or its Estate, or the Liquidating Trust or Liquidating Trustee, together with any assertion of ownership over, or entitlement to, a constructive trust encompassing any property, including property of the Estate or Liquidating Trust. Funds held by the Debtor prepetition, and by the Estate or the Liquidating Trustee (as applicable) postpetition, are deemed to constitute, and to have constituted at all relevant times, property of the Debtor, the Estate, or the Liquidating Trustee (as applicable). Any Owner Trust Claims filed after the Confirmation Date shall be deemed null and void and may be dismissed summarily by the Bankruptcy Court. This section 8.1 shall have no preclusive effect upon Erroneous Payment Claims or Holders thereof.

8.2     **Acknowledgement of Disallowance of Owner Trust Claims.**  ~~Any~~In addition to, and without limiting, the bar and waiver set forth in the preceding section 8.1, any Holder of an Owner Trust Claim who ~~votes to accept~~accepts a distribution under the Plan ~~expressly acknowledges~~is deemed to have acknowledged that: (a) any Owner Trust Claim it has asserted ~~Prior~~or could have asserted prior to the Confirmation Date, or it may subsequently seek to assert, whether through a proof of claim, motion, adversary proceeding, or otherwise, shall be deemed disallowed to the extent it asserts an Owner Trust Claim (without bearing upon its claim as a Class 4 General Unsecured Creditor); (b) it accepts a Pro Rata, *pari passu*, Distribution as treatment of its Claim as a Class 4 General Unsecured Claim under this Plan to the extent such Claim is allowed; and (c) it has irrevocably relinquished and waived any assertion of ownership over, or entitlement to, a constructive trust encompassing any property currently in the possession of the Debtor or to be transferred to the Liquidating Trust under the Plan.

8.3     **Debtor's Reservation of Rights.** In the event an Owner Trust Claim is filed (whether by proof of claim, motion, adversary proceeding, or otherwise) prior to the Confirmation Date, the Plan Proponents reserve all rights to, but shall not be obligated to, withdraw this Plan and, upon proper notice, seek confirmation of the original plan of liquidation filed by them as Docket No. 251, as it may be modified in whole or in part. In such case, all terms and conditions of this Plan, including but not limited to the settlement with Infinity set forth in section 5.4 of this Plan, shall be null and void, and Distributions under any subsequent plan of liquidation may be suspended for an unknown period of time subject to ongoing litigation and appeals.

**ARTICLE IX**
**Means of Implementation of the Plan**

9.1     **Liquidating Trust**. The Liquidating Trust shall be established as of the Effective Date for the benefit of all Beneficiaries and shall be governed by the Liquidating Trust Agreement. John B. Pidcock shall be designated as Liquidating Trustee. The Liquidating Trustee will owe a

22

fiduciary duty, consistent with the duties of trustees under Illinois law, to beneficiaries of the Liquidating Trust.

9.2     **Vesting of Assets**. On the Effective Date, all assets of the Debtor and its Estate (including the Liquidating Trust Assets) shall be transferred to and vest in the Liquidating Trust and be deemed contributed thereto, subject to the terms of the Plan. For the avoidance of doubt, all Liquidating Trust Assets shall be held by the Liquidating Trust solely in trust for the benefit of the Beneficiaries and shall not be deemed property of the Debtor. Nothing in the Plan, however, shall preclude payment of: (a) UST Fees to the extent unpaid on the Confirmation Date; and (b) the Liquidating Trustee's Expenses in accordance with this Plan and the Liquidating Trust Agreement from any other assets held by the Liquidating Trust. The Debtor is hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of its property to the Liquidating Trust, subject to oversight from the Liquidating Trustee, as applicable.

9.3     **[Intentionally Deleted]**

9.4     **Liquidating Trust Asset Administration**. The Liquidating Trustee, with advice and consultation from the Advisory Committee, shall administer the Liquidating Trust Assets pursuant to the Plan and the Liquidating Trust Agreement from and after the Effective Date. As more fully set forth in the Liquidating Trust Agreement, the Liquidating Trustee shall be responsible for, *inter alia*, liquidating the Liquidating Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Causes of Action, making distributions of the Net Trust Proceeds to the Beneficiaries of the Liquidating Trust in accordance with the Plan, maintaining and administering reserves for Disputed Claims and Claims of Holders that may be the subject of Avoidance Actions, paying Liquidating Trustee's Expenses, preparing and filing post-Effective Date operating reports, filing post-Effective Date tax returns (with all funding required for the preparation and filing of such returns to be pre-paid by the Debtor prior to the Effective Date) and all other activities typically related to trust administration.

9.5     **Case Administration**. From and after the Effective Date and continuing through the date that a final decree closing the Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidating Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Case. In addition to the foregoing, for all matters arising in, arising under or related to the Case, the Liquidating Trustee shall: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Debtor (including, without limitation, bank statements, cancelled checks, invoices, proofs of delivery, and other documents necessary to conduct due diligence on, and prosecute, Avoidance Actions); (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (e) have exclusive standing (including derivative standing to pursue Causes of Action on behalf of the Debtor) to commence Causes of Action, and to continue prosecuting and resolving, as successor-in-interest to the Debtor, any other Causes of Action that were pending as of the Effective Date, regardless of venue; (f) be entitled to request the Bankruptcy Court to enter a final decree closing the Case; and (g) be entitled to receive

notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in this Case.

9.6    **Advisory Committee**. For purposes of implementation of the Plan, the Advisory Committee shall be created on the Confirmation Date and consist of up to three (3) Persons eligible to serve on the Advisory Committee. The Advisory Committee shall exercise such rights and duties as are set forth in the Liquidating Trust Agreement. Each member of the Advisory Committee shall serve until the earlier of: (a) his or her death or resignation; (b) his or her removal pursuant to the Liquidating Trust Agreement; and (c) the termination of the Liquidating Trust.

9.7    **Liquidating Trustee's Professionals**. Upon the acceptance by the Liquidating Trustee of his or her appointment in accordance with this Plan and the Liquidating Trust Agreement, the Liquidating Trustee may, without the need for Bankruptcy Court approval, retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary, with advice and consultation with the Advisory Committee, in accordance with the Liquidating Trust Agreement, to aid in the performance of his or her responsibilities pursuant to the terms of the Plan and the Liquidating Trust Agreement, including, without limitation, the liquidation and distribution of assets of the Liquidating Trust. The Professionals retained by the Liquidating Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in this Case, and the Liquidating Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity.

9.8    **Quarterly Reports and Tax Returns**. The Liquidating Trustee shall prepare and file, on a quarterly basis, reports using UST Form 11-PCR, until the entry of a final decree closing the Case. The Liquidating Trustee shall also cause the filing of all applicable tax returns for the Debtor commencing with tax year 2025 and through the year in which the Case is closed.

9.9    **Transfer, Prosecution, Preservation, and Resolution of Causes of Action.**

9.9.1    **Transfer of Causes of Action**. On the Effective Date, the Debtor shall transfer to the Liquidating Trust, and the Liquidating Trustee shall hold and retain, all rights of the Debtor to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtor's Case). Potential Causes of Action may, but need not be, pursued by the Debtor prior to the Effective Date and by the Liquidating Trustee after the Effective Date. All Causes of Action, defenses, and counterclaims not expressly and specifically released in connection with the Plan, the Confirmation Order, or in any settlement agreement approved during the Case, or as otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, shall be transferred to and vest with the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Causes of Action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and prior to the Effective Date, the Debtor shall not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estate, except those Claims and Causes of Action

24

expressly released in this Plan: (a) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense or counterclaim filed a Proof of Claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing preservation of rights, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a Cause of Action, defense, or counterclaim, or potential Cause of Action, defense, or counterclaim, in the Plan, the Disclosure Statement, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Liquidating Trustee's right to commence, prosecute, defend against, settle, and realize upon any Causes of Action, defenses, or counterclaims that the Debtor had immediately prior to the Effective Date, or that the Liquidating Trust has as of the Effective Date. The Liquidating Trustee may commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in his or her sole discretion, upon consultation with the Advisory Committee, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the Liquidating Trust.

9.9.2    **Preservation of Right to Conduct Investigations.** The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

9.9.3    **Preservation of Causes of Action.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust: (a) shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtor or the Debtor's Estate, whether arising before or after the Petition Date, including, but not limited to, any Causes of Action specifically enumerated in Appendix A to the Disclosure Statement, and the Liquidating Trust's right to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date; and (b) expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action ~~upon, after, or~~ as a consequence of the ~~Confirmation~~confirmation of the Plan or the occurrence of the Effective Date. The Liquidating Trust may pursue Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against such Entity as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against such Person. The Liquidating Trust expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan or in a Bankruptcy Court order. For

the avoidance of doubt, the Plan does not release any Causes of Action that the Plan Proponents or the Liquidating Trust have or may have ~~now or~~ in the future against any Person, except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or in a Final Order, the Liquidating Trust reserves and shall retain Causes of Action notwithstanding the assumption or rejection of any Executory Contract during the Case or pursuant to the Plan to the fullest extent permitted by law. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Person that is not released under the Plan or a separate settlement approved by Final Order shall vest in the Liquidating Trust, which shall retain and may exclusively enforce any and all such Causes of Action. The Liquidating Trust has the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court, provided however, the Liquidating Trustee must seek approval of the Bankruptcy Court to compromise any controversy in which a Claim, or Cause of Action asserted by the Liquidating Trustee, is equal to or greater than $500,000.00.

9.10    **Officers and Directors of the Debtor**. Upon the Effective Date, all officers and directors of the Debtor, including the Independent Director and the Chief Restructuring Officer, shall be automatically deemed to have resigned from such positions, without further act, notice, deed or court order. To the extent required under applicable non-bankruptcy law, the Liquidating Trustee shall be deemed an officer and/or director of the Debtor.

9.11    **Dissolution of the Debtor**. Upon the Effective Date, the Liquidating Trustee shall be authorized and empowered, in his or her reasonable discretion, to file a certificate of dissolution or other documents, if any, memorializing the Debtor's dissolution with the office of the secretary of state of Illinois, or may allow the secretary of state to involuntarily dissolve the Debtor. In the event of a dissolution (whether voluntary or involuntary), the Liquidating Trustee shall thereafter have and retain standing to assert claims or pursue matters on behalf of the Debtor to the extent necessary to preserve, protect and liquidate the Liquidating Trust Assets or otherwise necessary to administer the Liquidating Trust.

9.12    **Termination of Committee**. The Committee shall terminate automatically upon the acceptance by the Liquidating Trustee of his or her appointment in accordance with this Plan and the Liquidating Trust Agreement following the Confirmation Date. Upon termination of the Committee, the Committee shall be dissolved and its members shall be deemed released of their duties and responsibilities in connection with the Case or the Plan and its implementation, and the retention or employment of the Committee's counsel shall terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

9.13    **Filing of Additional Documents**. On or before the Confirmation Date of the Plan, the Plan Proponents shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, without limitation, the final Liquidating Trust Agreement.

9.14    **Notices**. Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight delivery service, freight prepaid, addressed to the following:

The Debtor:

> RAS Data Services
> c/o Plante Moran PLLC
> Attn: Sandor Jacobson
> 10 S Riverside Plaza; 9th Floor
> Chicago, IL 60606
> Phone: (312) 928-5387
> E-Mail: sandor.jacobson@plantemoran.com

With a copy to:

> Adam P. Silverman
> Alexander F. Brougham
> Tevin D. Bowens
> Adelman & Gettleman, Ltd.
> 53 W. Jackson Blvd., Suite 1050
> Chicago, Illinois 60604
> Phone: (312) 435-1050
> E-mail: asilverman@ag-ltd.com
> abrougham@ag-ltd.com
> tbowens@ag-ltd.com

> *Counsel for the Debtor*

The Committee:

> Thomas R. Fawkes
> Brian J. Jackiw
> Jason J. Ben
> Tucker Ellis LLP
> 233 S. Wacker Dr., Suite 6950
> Chicago, Illinois 60606
> Phone: (312) 624-6300
> E-mail: thomas.fawkes@tuckerellis.com
> brian.jackiw@tuckerellis.com
> jason.ben@tuckerellis.com

> *Counsel for the Committee*

The Liquidating Trustee:

> John B. Pidcock

27

Oxford Restructuring Advisors
4520 Cooper Road, Suite 203
Cincinnati, OH 45242
Phone: (513) 235-0164
E-mail: jpidcock@oxfordrestructuring.com

9.15 **Cancellation of Notes, Instruments, and Debentures**. On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtor shall be deemed canceled, terminated, and surrendered (regardless of whether such notes, instruments, debentures, certificates or other documents are in fact surrendered for cancellation to the appropriate indenture trustee or other such Person). On the Effective Date, any indentures to which the Debtor is a party shall be deemed canceled as permitted by section 1123(a)(5) of the Bankruptcy Code.

9.16 **Insurance Preservation**. Nothing in the Plan, including any Releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other Person.

9.17 **Plan Implementation Transactions.** Debtor and the Liquidating Trustee, as appropriate, will be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

## ARTICLE X
### Conditions Precedent to Confirmation and Effective Date

10.1 **Acceptance or Rejection of the Plan**

10.1.1 **Acceptance by Impaired Classes**. Classes 2, 3, and 4 each will have accepted the Plan if the Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class actually voting have voted to accept the Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

10.1.2 **Elimination of Classes**. Any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, will be deemed not included in the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

10.1.3 **Nonconsensual Confirmation**. The Bankruptcy Court may confirm the Plan over the rejection by any Impaired Class if all of the requirements for consensual confirmation under section 1129(a) of the Bankruptcy Code, other than subsection 1129(a)(8) and for nonconsensual confirmation under subsection 1129(b) of the Bankruptcy Code, have been satisfied. Since Class 5, the Impaired Class of Interests, is deemed to reject the Plan, the Plan Proponents shall be deemed to have sought that the Bankruptcy Court confirm the Plan in accordance with section 1129(b)(2)(C)(ii) of the Bankruptcy Code.

10.2    **Conditions Precedent to Confirmation Date of the Plan**. The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

10.2.1  The entry of the Confirmation Order in form and substance satisfactory to the Plan Proponents; and

10.2.2  The Debtor being authorized to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with the Plan.

10.3    **Conditions Precedent to the Effective Date of the Plan**. The occurrence of the Effective Date and the consummation of the Plan are subject to satisfaction of the following conditions precedent:

10.3.1 **Confirmation Order**. The Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect, in form and substance reasonably satisfactory to the Plan Proponents.

10.3.2 **Liquidating Trust Agreement**. The Liquidating Trust Agreement shall be acceptable to the Plan Proponents in form and substance, and shall have been executed by the Debtor, the Committee and the Liquidating Trustee.

10.3.3 **UST Fees**. All UST Fees owed to the U.S. Trustee through the Effective Date shall either have been paid in their entirety, or Cash in an amount sufficient to pay such UST Fees shall be Reserved Cash.

10.3.4 **Owner Trust Claims**. No Owner Trust Claims shall have been filed in derogation of the terms and conditions of this Plan; provided, however, that this condition may be waived upon the unanimous consent of the Plan Proponents.

10.3.5 **Sufficient Reserves**. The Estate shall have Reserved Cash in an amount sufficient to consummate this Plan.

10.4    **The Confirmation Order**. If the Confirmation Order is vacated for whatever reason, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor.

## ARTICLE XI
### Effect of Plan Confirmation

11.1    **Binding Effect**. From and after the Confirmation Date, but subject to the occurrence of the Effective Date, this Plan shall be binding and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns. The provisions of the Plan, the Confirmation Order, and any associated findings of fact or conclusions of law shall bind the Debtor, any entity acquiring property under the Plan, and any

Holder of a Claim, whether or not the Claim of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

11.2    **No Discharge of Claims**. The Debtor will not receive a discharge under the Plan in accordance with section 1141(d)(3)(A), 1141(d)(3)(B), and 1141(d)(3)(C) of the Bankruptcy Code.

11.3    **Injunction**

11.3.1  **Except as otherwise expressly provided in the Plan, all Persons that receive Distributions under the Plan or payment under the Sale Order and that have held, hold, or may hold Claims against or Interests in the Debtor are enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor, its Estate, Professional Persons, the Committee, the Liquidating Trust, the Liquidating Trustee, or any of their respective property on account of any Claims or Causes of Action arising from events prior to the Effective Date in any manner, that does not comply with or is inconsistent with the provisions of the Plan: (a) commencing or continuing in any manner any action or other proceeding of any kind, including any Owner Trust Claim; (b) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (d) other than with respect to resolution of a Claim, asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation, debt or liability due to the Debtor (but in any event, no such defense or right of setoff, subrogation, or recoupment of any kind may be asserted that would be deemed to constitute an Owner Trust Claim).**

11.3.2  **By accepting Distributions pursuant to the Plan or payment under the Sale Order, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.**

11.3.3  **Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed.**

11.4    **Terms of Existing Injunctions or Stays**. **Unless otherwise provided in the Plan, all injunctions or stays provided for in the Case pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case has been closed. The Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan.**

11.5    **Exculpation. No Exculpated Party shall be subject to or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, or liability for any claim in connection with or arising out of the administration of the Case; the negotiation and pursuit**

of the transactions approved by the Sale Order, the Disclosure Statement, or this Plan, or the solicitation of votes for, or confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan; the Distribution of property under the Plan; any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan ~~or the Case~~; or the transactions in furtherance of any of the foregoing; provided, however, that no Exculpated Party shall be released and exculpated for willful misconduct or gross negligence (but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan). Notwithstanding the foregoing, no Exculpated Party shall have liability for willful misconduct or gross negligence except as determined by a Final Order of a court of competent jurisdiction. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court with regard to the solicitation of this Plan and, therefore, are not, and on account of such solicitations shall not be, liable at any time for the violation of any applicable law, rule, order, or regulation governing the solicitation of acceptances or rejections of this Plan or such Distributions or payments made pursuant to this Plan. Nothing in this Section 11.5 shall be construed as a release of any Causes of Action against the Debtor's former or current Insiders for events occurring prior to the Petition Date.

11.6 **Injunction Related to Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities enjoined, exculpated, or otherwise limited or prohibited pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, and Causes of Action against any Exculpated Party that are described in Section 11.5 of this Plan.

11.7 **Debtor Release.** NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR AND THE ESTATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, AND OTHER RIGHTS AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR AVOIDANCE CLAIMS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED, OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, DIRECTLY OR INDIRECTLY ON BEHALF OF, THE DEBTOR OR ITS ESTATE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED ON BEHALF OF THE DEBTOR OR THE ESTATE DIRECTLY OR DERIVATIVELY, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR OR THE ESTATE, THE CONDUCT OF THE DEBTOR'S

**BUSINESS, THE CONDUCT OF THE PRE-PETITION-DATE PROFESSIONALS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN AND DISCLOSURE STATEMENT OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE PLAN, THE DISCLOSURE STATEMENT, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR OR THE ESTATE, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THESE RELEASES SHALL NOT OPERATE TO WAIVE OR RELEASE: (A) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THIS PLAN AND THE DISCLOSURE STATEMENT; (B) ANY CAUSES OF ACTION AGAINST ANY PERSON OR ENTITY THAT IS NOT A RELEASED PARTY; OR (C) THE RIGHT OF THE DEBTOR OR THE LIQUIDATING TRUSTEE TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR ASSUMED PURSUANT TO A FINAL ORDER.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES SET FORTH IN THIS SECTION 11.7, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT SUCH RELEASES ARE: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS SECTION 11.7; (C) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO ANY ENTITY SUBJECT TO SUCH RELEASES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED BY THIS SECTION 11.7.**

## ARTICLE XII
### Modification, Revocation or Withdrawal of the Plan

12.1    **Modification of Plan**. The Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, in their discretion, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. Upon entry of the Confirmation Order, the Plan Proponents may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the

purpose and intent of the Plan. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified Plan.

12.2    **Revocation, Withdrawal, or Non-Consummation**. The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of liquidation. If the Plan Proponents revoke or withdraw the Plan, or if the Confirmation Order confirming the Plan shall not be entered or become a Final Order, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (2) prejudice in any manner the rights of the Debtor or the Committee, (3) constitute an admission of any sort by the Debtor or the Committee, or (4) constitute a release of any Causes of Action possessed or maintained by the Debtor.

**ARTICLE XIII**
**Miscellaneous Provisions**

13.1    **Payment of Statutory Fees**. All UST Fees shall be paid by the Debtor to the extent required by applicable law.

13.2    **Section 1146 Exemption**. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

13.3    **Business Day**. If a payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day and shall be deemed to have been completed or complied with as of the required date.

13.4    **Severability**. The provisions of this Plan shall not be severable unless such severance is agreed to by the Plan Proponents and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

13.5    **Conflicts**. To the extent that any provision of the Disclosure Statement, the Liquidating Trust Agreement, or any exhibits or schedules thereto, conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

13.6    **Further Assurances**. The Debtor, the Committee, the Liquidating Trustee, all Holders of Claims receiving Distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

33

13.7    **Filing of Additional Documents**. On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.8    **Successors and Assigns.** The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

13.9    **Section Headings**. The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

13.10   **Further Information**. Requests for further information regarding the Debtor's Case or the Plan may be directed to counsel to the Debtor or the Committee, at the contact information set forth in section 9.14 above.

13.11   **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Disclosure Statement and the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to any conflicts of law principles.

## ARTICLE XIV
### Jurisdiction

14.1    **Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, unless explicitly set forth herein to the contrary, the Bankruptcy Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Case, the Plan or the Liquidating Trust, or that relates to the following, in each case to the greatest extent permitted by applicable law:

14.1.1  to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

14.1.2  to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee after the Effective Date; provided, however, that the Liquidating Trustee shall reserve the right to commence collection actions, actions to recover receivables, adversary proceedings against any Holder of a Claim, and other similar actions in all appropriate jurisdictions, and the jurisdiction of the Bankruptcy Court over such matters shall be nonexclusive;

14.1.3  to hear and determine any timely objections to Administrative Claims, Priority Tax Claims, Priority Claims, Infinity Claims, Owner Trust Claims, Erroneous Payment Claims, General Unsecured Claims, or to proofs of Claim and Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

14.1.4  to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

14.1.5  to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

14.1.6  to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

14.1.7  to hear and determine all applications for awards of Professional Fee Claims;

14.1.8  to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan, or the extent of any Person's obligations incurred in connection with or released or exculpated under the Plan;

14.1.9  to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan;

14.1.10 to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement to be executed in connection with the Plan;

14.1.11 to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.1.12 to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

14.1.13 to enter a final decree closing the Case.

Dated this 618th day of May, 2026.

**RAS DATA SERVICES, INC.**

By:____/s/ Adam P. Silverman_____
        One of Its Attorneys

**OFFICIAL COMMITTEE OF
UNSECORS CREDITORS OF RAS
DATA SERVICES, INC.**

By:____/s/ Thomas R. Fawkes_____
        One of Its Attorneys

Document comparison by Workshare 10.0 on Sunday, May 17, 2026 8:33:25 PM

| Input: | |
|---|---|
| Document 1 ID | iManage://INTERWOVEN/worksite/1464070/7 |
| Description | #1464070v7<worksite> - RAS Data Services Inc - Plan of Liquidation - Filed Version |
| Document 2 ID | file://C:\NRPortbl\worksite\AFB\1476328_1.docx |
| Description | 1476328_1 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 57 |
| Deletions | 50 |
| Moved from | 1 |
| Moved to | 1 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 109 |